# THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CELEC EP,

        Plaintiff,

v.

PROGEN INDUSTRIES, LLC; GENERTEK POWER CORP.; GENERTEK POWER INDUSTRIES, LLC; JOHN B. MANNING; W. WADE MANNING; ANDREW S. WILLIAMSON; ASTROBRYXA, S.A.; AP INSPECTIONS LATINOAMERICA, S.A.; A.P. INSPECTIONS LLC; and DOES 1-99,

        Defendants.

Case No. 8:25-cv-03433

Judge Jung

## PLAINTIFF CELEC'S RESPONSE TO PROGEN DEFENDANTS' MOTION FOR PROTECTIVE ORDER

Plaintiff, CELEC EP ("CELEC"), responds in opposition to the Motion for Protective Order [DE 67] ("Motion") filed on March 20, 2026 by Progen Industries, LLC ("Progen"), Genertek Power Corp., Genertek Power Industries, LLC, John B. Manning, W. Wade Manning, and Andrew S. Williamson (collectively, the "Progen Defendants"), and states as follows:

### INTRODUCTION

This litigation is not the narrow two-contract dispute that the Progen Defendants attempt to portray in their Motion. This is a complex, high-stakes, multi-

defendant fraud, RICO, conversion, contract, and conspiracy case involving the alleged theft of nearly $110 million from CELEC, an Ecuadorian state-owned electric utility. The financial trail of those funds is central to every claim in this lawsuit. The Progen Defendants now seek to obstruct that inquiry by blocking two targeted third-party subpoenas directed to the Federal Reserve Bank of New York (the "Federal Reserve") and the Clearing House Payments Company LLC ("CHIPS")—the very interbank clearing institutions through which those stolen funds flowed.

At the outset, CELEC notes the Progen Defendants' clear intent to frustrate CELEC's investigative efforts, and to prevent any transparency and accountability into the use and whereabouts of the nearly $110 million that they took from CELEC. Despite repeated email requests by CELEC's counsel, the Progen Defendants' attorneys have failed to respond or provide any explanation as to the use and whereabouts of the funds. A copy of this correspondence is attached to this Response as Exhibit A.

Further, the limited discovery that CELEC has obtained to date causes grave concern. None of the Defendants have—to date—provided a single page of discovery. The only discovery that CELEC has obtained is from two third parties: (1) Lakeland Electric and (2) Regions Banks.

Lakeland Electric, one of the companies that Progen used in its bids to CELEC to attempt to show experience in building and installing generators, responded with documents showing it never (a) had a business relationship of any kind with, (b) bought anything from, or (c) made any business-related payments to any of the Progen Defendants. Relevant documents produced by Lakeland Electric are attached to this Response as <u>Exhibit B</u>. Critically, there are no records of anyone working at Lakeland Electric with the name of the person that supposedly signed the "certificate" that Progen provided to CELEC. [*See* DE 1 (Complaint) at ¶¶ 25, 34, 59, 72, 76, 82, 87, 91 & Ex. A (Forged Certificate) & Ex. K (Email Confirming Forgery).] Therefore, the only evidence adduced so far reflects that Progen forged the Lakeland Electric "certificate" it provided to CELEC to induce CELEC into awarding Progen the two contracts.

Regions Bank, where Progen held the account into which CELEC paid, has also produced some discovery. Although Regions Bank's production is not yet complete—the information revealed to date is just the tip of the spear. It shows wire transfers and checks from Progen to dozens of parties, both inside and outside the United States, including in China and Ecuador. The Progen Defendants would rather force CELEC to obtain discovery from these dozens of parties domestically and internationally, rather than obtaining it from the two single, comprehensive sources that keep all records of international and domestic transfers: the Federal Reserve and

CHIPS.  What the Regions Bank documents do show, however, is seriously concerning:

- As of January 30, 2026, the balance of Progen's account is $0.  Progen has entirely depleted it.  Relevant discovery produced by Regions Bank showing this $0 balance is attached to this Response as <u>Exhibit C</u>.

- Progen spent the money in multiple ways, but the highlights include: (i) nearly $1.5 million to pay Defendant Andrew Williamson's American Express bills; (ii) approximately $1.1 million wired directly to Defendant John Manning; (iii) approximately $330,000 wired directly to Jose David Trujillo, a former CELEC official; (iv) nearly $50,000 wired directly to Karla Saud Calero (the co-owner of Astrobryxa and a relative of the former CELEC general manager who awarded the contracts to Progen); (v) approximately $350,000 wired directly to Defendant Genertek Power; (vi) $1,450,000 wired directly to a company called Two Lions Holdings, which appears to be a vehicle owned by Defendant Andrew Williamson; (vii) approximately $50,000 to Defendant W. Wade Manning; (viii) approximately $5,000 in child support payments to Puerto Rico, Texas, and Florida; and (viii) nearly $4 million to ostensibly sham companies with no public records of any meaningful operations (SBM Constructions, Inter Fab Services, and Rayk Holdings).  *See* <u>Exhibit C</u>.

Against this backdrop, the Progen Defendants' Motion fails for multiple, independent reasons:  <u>First</u>, the Progen Defendants lack standing to challenge these non-party subpoenas on the grounds they assert.  The Federal Reserve and CHIPS—the actual responding parties—have not refused production, nor have they expressed the same hyperbolic concerns raised by the Progen Defendants in this Motion.  CHIPS has not objected at all and their time to do so has passed.  And the Federal Reserve raised only minor, boilerplate objections, otherwise agreeing to produce all documents in its possession from January 1, 2024, onwards.  <u>Second</u>, even setting aside standing, the subpoenas to the Federal Reserve and CHIPS (the "Subpoenas") seek directly relevant, proportional, and non-duplicative information that is essential to CELEC's RICO, wire fraud, conversion, conspiracy, and breach of contract claims.  <u>Third</u>, the mere possibility that some financial information could theoretically be obtained from the Progen Defendants directly provides no basis to prohibit permissible independent third-party discovery—particularly given that the Progen Defendants have not produced a single document in this case despite requests to do so.  <u>Fourth</u>, even if the Court were inclined to afford the Progen Defendants some measure of relief—which it should not—far less drastic remedies exist under Rule 26(c) than the wholesale prohibition the Progen Defendants seek.

For all of these reasons, the Motion should be **denied**.

**FACTUAL BACKGROUND**

1. This lawsuit arises from two contracts entered into between CELEC and Progen: (1) the Quevedo Contract and (2) the Salitral Contract (collectively "the Contracts"). In reliance on Progen's representations and submissions in bidding for the Contracts, CELEC paid Progen approximately $110 million. The generators delivered by Progen were used, defective, or non-functional—in direct breach of the Contracts' specifications which required Progen to build, deliver and install new and fully-functional generators. Further, Defendants submitted forged documents to obtain the Contracts and the substantial payments thereunder.

2. Additionally, rather than using CELEC's funds to build and install new generators, Progen and its co-conspirators—including Genertek Power Corp., Genertek Power Industries, LLC, John B. Manning, W. Wade Manning, Andrew S. Williamson, Astrobryxa, S.A., AP Inspections Latinoamerica, S.A., and A.P. Inspections, LLC—diverted CELEC's funds to themselves and to third parties as part of a coordinated scheme to defraud the Government and People of Ecuador. Progen has admitted, for example, that it transferred $20 million of CELEC's funds to Defendant Astrobryxa, S.A.

3. On February 13, 2026, in pursuit of discoverable, relevant information that supports its claims, CELEC served a Notice of Intent to Serve Subpoena on non-

party Regions Bank, seeking financial records relating to the bank account where Progen received CELEC's funds.

4. On March 5, 2026, CELEC served two additional Notices of Intent to Serve Subpoenas on non-parties: (1) a subpoena directed to the Federal Reserve, and (2) a subpoena directed to CHIPS (collectively, the "Subpoenas"). These Subpoenas seek additional information regarding the transfer of funds between Defendants— alleged co-conspirators to CELEC's claims. Both Subpoenas commanded production by March 23, 2026. Following conferral with the Progen Defendants, CELEC agreed to limit the temporal scope of both Subpoenas to January 1, 2024, through the present. Critically, **neither the Federal Reserve nor CHIPS has raised concerns regarding the Subpoenas or refused to produce the requested information,** and **the time for them to do so has since passed**. *See* Fed. R. Civ. P. 45(d)(2)(B) (requiring objections within 14 days of service or before date of production, whichever is sooner).

5. On March 20, 2026, the Progen Defendants filed the instant Motion asking that this Court to totally prohibit discovery under the Subpoenas.

### LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." The scope of discovery is

intentionally broad.  The Federal Rules "strongly favor full discovery whenever possible," *Farnsworth v. Proctor & Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir. 1985), and "[r]elevancy is to be broadly construed for discovery purposes," *Barry B. Roseman, D.M.D., M.D., Profit Sharing Plan v. Sports & Recreation, Inc.*, 165 F.R.D. 108, 110 (M.D. Fla. 1996). Information sought in discovery "need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).

Under Rule 26(c)(1), a court may, for good cause, "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).  The burden of establishing good cause rests with the party seeking the protective order.  *United States v. Physician Partners, LLC*, 2024 WL 810878, at *4 (M.D. Fla. Feb. 27, 2024).

With respect to non-party subpoenas issued under Rule 45, a party's ability to seek a protective order challenging such subpoenas is limited.  Standing exists pursuant to Rule 26 only where the challenging party can demonstrate a "personal right or privilege" with respect to the subpoenaed information. *See Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005).  A party generally does not have standing to challenge a non-party subpoena on grounds of oppression or undue burden where the oppression or burden falls on the non-party. *See id.*

**ARGUMENT**

## I.    The Progen Defendants Lack Standing.

As a threshold matter, the Motion should be denied because the Progen Defendants lack standing to challenge the Subpoenas on the grounds asserted.

Rule 45 expressly contemplates that it is the responding party—not a party to the underlying litigation—that may object to a non-party subpoena. *See* Fed. R. Civ. P. 45(d)(2)(B) (providing that "[a] person commanded to produce documents . . . may serve on the party . . . a written objection").  Here, the responding parties are the Federal Reserve and CHIPS.  Neither has raised the level of concern voiced here by the Progen Defendants.  Indeed, CHIPS has not objected at all to the Subpoenas.  And its time to do so has long since passed.  *See* Fed. R. Civ. P. 45(d)(2)(B).  And the Federal Reserve did nothing more than raise boilerplate objections but has otherwise agreed to produce all documents it has from January 1, 2024 onwards.  The Progen Defendants cannot assert objections or raise heightened concerns on the Federal Reserve's or CHIPS's behalf.  Those institutions' silence speaks for itself.

The Progen Defendants apparently recognize that Rule 45 reserves objections for the responding party and therefore seek relief under Rule 26(c) instead.  *See* Motion at 1 (styling the Motion as being brought "[p]ursuant to Federal Rule of Civil Procedure 26(c)").  But Rule 26(c) does not provide the relief they seek either.

Rule 26(c)(1) authorizes a court to issue a protective order only "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). The Progen Defendants are not the responding parties to the Subpoenas. They will bear no burden and incur no expense in connection with the Federal Reserve's or CHIPS' responses. Their Motion therefore cannot be sustained on grounds of undue burden or expense—those are concerns for the Federal Reserve and CHIPS to raise, and they have chosen not to do so.

The Progen Defendants' own Motion confirms the point. In arguing overbreadth, they complain that "[t]he Subpoenas require the Federal Reserve and CHIPS to search for and produce records of every transfer or transaction that merely references any of the thirteen listed names." Motion at 4. Okay. But that concern, if legitimate, belongs to the Federal Reserve and CHIPS—who have voiced no complaints on these grounds whatsoever.

This leaves the Progen Defendants with only two potentially available grounds to challenge the Subpoenas under Rule 26(c): "annoyance" and "embarrassment." But neither word appears anywhere in the Motion. The Motion does not describe the Subpoenas as invasive, does not assert that the information is confidential or private, and does not articulate in any respect how the Subpoenas would cause the Progen Defendants embarrassment or annoyance. Instead, the Motion attacks relevance and proportionality by arguing that the information is

10

available from other sources.  Rule 26(c) does not authorize a protective order on those grounds under its plain text.

The Progen Defendants attempt to sidestep the standing problem by citing to *Auto-Owners Ins. Co. v. Se. Floating Docks, Inc.*, 231 F.R.D. 426 (M.D. Fla. 2005) for the broad proposition that party defendants have general standing to challenge non-party subpoenas.  But that is not what *Auto-Owners* says.  *Auto-Owners* expressly found that the defendants did "not have standing . . . on the grounds of oppression and undue burden placed upon the third parties where the non-parties have not objected on those grounds." *Id.* at 429.  The court permitted the defendant there a *very* narrow challenge to the non-party subpoenas, after first establishing that "standing exists" where "the party alleges a 'personal right or privilege' with respect to the subpoenas." *Id.* at 429.  It was only after this threshold predicate was satisfied that the court proceeded in allowing a non-party subpoena challenge at all.

Here, that predicate has not been met.  Neither the words "right" nor "privilege" appear anywhere in the Motion.  The Motion nowhere characterizes the subpoenaed information as confidential or sensitive.  Nor could the Progen Defendants credibly do so.  "[A]lthough the Florida courts have recognized a right of privacy in financial records, if those records are relevant to the issues in [a] case, they are discoverable." *Inglis v. Wells Fargo Bank, N.A.*, 2016 WL 2854204, at *3 (M.D. Fla. May 16, 2016).  As set forth below, the financial records sought by the

11

Subpoenas are directly relevant to the claims in this case. Without establishing a personal right or privilege, the Progen Defendants have no standing.

At a minimum—even if the Court were to find that the Progen Defendants have some standing with respect to discovery requests touching on their financial information—the Court should deny the Motion in its entirety as to all seven entities and individuals named in the Subpoenas that are not owned or operated by the Progen Defendants and which have not filed any motion for protection: (1) Astrobryxa, S.A.; (2) A.P. Inspections Latinoamerica, S.A.; (3) A.P. Inspections, LLC; (4) Karla Saud-Calero; (5) Jose W. Manrique; (6) Pamela Joanna Dillon-Yepez; and (7) Edison Vinicio Izurieta-Sanchez. The Progen Defendants advance no argument whatsoever, and have no cognizable basis, to assert any personal right or privilege over financial records relating to these seven separate entities and individuals. The Motion is entirely silent on this point, and the Court should not enter a blanket protective order that shields financial discovery pertaining to third parties in whom the Progen Defendants have no legally cognizable interest.

## II. The Subpoenas Do Not Run Afoul of Rule 26.

Even setting aside the standing deficiencies—which independently require denial of the Motion—the Progen Defendants' arguments on the merits fail also.

### A. The Subpoenas Are Relevant.

The threshold for relevance in discovery is very low. Information "need not be admissible in evidence to be discoverable," Fed. R. Civ. P. 26(b)(1), and courts in this Circuit "strongly favor full discovery whenever possible." *Farnsworth*, 758 F.2d at 1547. "[R]elevancy is to be broadly construed for discovery purposes." *Roseman*, 165 F.R.D. at 110; *see also State Farm Mut. Auto. Ins. Co. v. Complete Care Centers, LLC*, 2023 WL 4854725, at \*3 (M.D. Fla. Jan. 10, 2023) ("The Federal Rules of Evidence set a very low bar for relevance.").

The Progen Defendants attempt to rebrand this lawsuit as simple contract dispute involving a handful of already-admitted wire transfers. *See* Motion at 6–7. That characterization is both strategically motivated and flatly wrong. This is a complex, multi-defendant fraud, RICO, conversion, and conspiracy case involving the theft of nearly $110 million from the Government of Ecuador through a coordinated pattern of fraudulent misrepresentation, forged documents, and the delivery of used, defective, or non-functional equipment. The financial trail of those funds is not merely relevant—it is central to virtually every claim asserted.

CELEC's civil RICO claims under federal law and Florida law are premised on a pattern of wire fraud, and the wire transfer records from the Federal Reserve and CHIPS would confirm the specific transactions constituting the predicate acts, identify all financial intermediaries involved in the movement of CELEC's funds,

13

and establish the domestic nexus for the RICO claims—a point the Progen Defendants themselves have placed in controversy through their own affirmative defenses. *See* Progen Defendants' First Affirmative Defense. [DE 58.] CELEC's conversion and constructive trust claims similarly require tracing funds from the Central Bank of Ecuador through the international wire system to Progen's account and onward to all subsequent transfers—including the $20 million Progen has admitted sending to Astrobryxa, S.A.—and the Federal Reserve and CHIPS, which operate at the interbank clearing and settlement level, are uniquely positioned to provide that data. The records are also relevant to defining the full scope of the RICO enterprise, to identifying additional co-conspirators, and to evaluating Progen's own counterclaim damages.

Simply put, tracking where the funds went after they left CELEC's hands—who received them, in what amounts, through what intermediaries, and at what times—is critical to establishing the pattern of racketeering activity underlying the RICO claims, the tracing of funds required for the conversion and constructive trust claims, and the web of financial relationships in the criminal enterprise.

The Progen Defendants' suggestion that only transfers directly to and from Progen are relevant, *see* Motion at 7, fundamentally misapprehends the nature of CELEC's claims. The Subpoenas seek exactly the information needed to prove those claims; the low relevance requirement is easily satisfied.

**B.    The Subpoenas Are Proportional to the Needs of This Case.**

The Progen Defendants' challenge to the breadth of the Subpoenas also fails. As an initial matter, as discussed in Section 1 above, the Progen Defendants lack standing to challenge the breadth of subpoenas directed to non-parties, and the Federal Reserve and CHIPS have voiced no concerns regarding scope or burden.

Moreover, the Progen Defendants mischaracterize the scope of the Subpoenas to this Court.  The Motion complains that the Subpoenas request records covering "over eight years."  *See* Motion at 7. But as the Progen Defendants themselves acknowledge in an earlier portion of the same Motion, following conferral, CELEC agreed to limit the temporal scope of the Subpoenas to January 1, 2024 through the present following its realization of its error in including such a broad time range. *See* Motion at 3 ("Plaintiff has agreed to limit its request in the Subpoenas to January 1, 2024, through the present.").  The Progen Defendants cannot simultaneously acknowledge that agreed-upon limitation and then misrepresent the scope of the Subpoenas as spanning eight years.  As limited, the Subpoenas cover approximately two years – the period during which the alleged fraud occurred.

Within that two-year period, the Subpoenas seek only wire transfer records referencing entities and individuals that are themselves identified as Defendants or related parties in this litigation.  There is no known, more targeted way to identify relevant financial flows from interbank clearing systems—the search terms are the

15

names of the very parties whose financial conduct is at the heart of this lawsuit. This guardrail is sufficient, and the discovery sought cannot be characterized as a fishing expedition when it is directly and narrowly tied to the claims and parties at issue.

### C. The Subpoenas Are Not Duplicative of Other Discovery.

The Progen Defendants' contention that the Subpoenas are duplicative of the Regions Bank subpoena likewise fails, for several independent reasons.

First, the Regions Bank subpoena is necessarily limited to records of Progen's accounts held ***at Regions Bank***. It will capture only transfers into and out of accounts that Progen maintained at **that specific institution**. It cannot—and will not—capture wire transfer data flowing through *other* financial institutions that Defendants or their co-conspirators may have used to route, receive, or further transfer funds. The Federal Reserve and CHIPS, by contrast, operate at the interbank clearing and settlement level and capture wire transfer data across multiple financial institutions and international jurisdictions. If any of the Defendants or their alleged co-conspirators used other banks (which is a very likely scenario)—or if funds were routed through multiple correspondent banks before reaching or departing from Regions Bank—that information would not be visible in the Regions Bank production alone. A single correspondent bank simply cannot provide the same visibility as the interbank clearing infrastructure.

Second, the Regions Bank subpoena is limited to accounts held in the name of Progen and its principals. The Federal Reserve and CHIPS Subpoenas are broader in an important respect—they seek records referencing not only the Progen Defendants, but also Astrobryxa, S.A., the AP Inspections entities, and several individual alleged co-conspirators identified in the Complaint. Only certain defendants banked at Regions Bank. The Subpoenas directed to the Federal Reserve and CHIPS are designed to capture the universe of transfers involving all identified participants in the alleged scheme.

Third, it is premature to characterize the Federal Reserve and CHIPS Subpoenas as duplicative when Regions Bank has not yet fully completed its production. There is no basis to assume that Regions Bank's eventual full production will be comprehensive, or that it will render the Federal Reserve and CHIPS records unnecessary. Information is not cumulative or duplicative where it has not—and, as a practical matter, cannot—be obtained from an alternative source. CELEC is entitled to pursue discovery from all available sources to build a complete and accurate picture of the financial transactions at the center of this case.

## III. CELEC is Entitled to Obtain Discovery from All Available Sources.

In the alternative, the Progen Defendants argue their Motion should be granted since the information could be "less intrusively obtained from the Progen Defendants themselves." Motion at 9.

Even if the information sought by the Subpoenas could theoretically be obtained from the Progen Defendants through party discovery—which CELEC does not concede—that would not provide grounds to prohibit third-party discovery under Subpoenas. A party is entitled to seek discovery from all available sources and is not required to rely exclusively on an opposing party's voluntary production.

Courts in this District have consistently affirmed this principle. *See Wellness Brands, LLC v. Doe 1*, 2023 WL 3276071, at *2 (M.D. Fla. May 5, 2023) ("Through the Federal Rules of Civil Procedure, a party may subpoena documents or information from a non-party to litigation."); *Aaron v. Trump Org., Inc.*, 2011 WL 13141513, at *2 (M.D. Fla. June 2, 2011) ("Plaintiffs may pursue any non-privileged information they seek through any appropriate discovery methods."); *Sec'y of Lab. v. Caring First, Inc.*, 2017 WL 4764350, at *3 (M.D. Fla. Oct. 20, 2017) ("[T]he broad scope of discovery allowed by Rule 26 does not limit any party from seeking information from multiple sources regarding the same issue.").

The Progen Defendants' suggestion that CELEC should instead seek this information from the Progen Defendants themselves is particularly unavailing given the current state of discovery in this case. To date, the Progen Defendants have not produced a single document in response to CELEC's First Request for Production, which was served more than a month ago. While some of the Progen Defendants served responses and objections on March 16, 2026—and others served responses

and objections on April 1, 2026—those responses are replete with objections, and the Progen Defendants have not committed to any timeframe for actual production despite CELEC's repeated requests that they do so. Under these circumstances, CELEC cannot and should not be required to forgo independent third-party discovery from the Federal Reserve and CHIPS in favor of relying exclusively on the Progen Defendants' eventual, and as yet unscheduled, voluntary production.

## IV. Less Drastic Remedies Are Available.

Should the Court be inclined to afford the Progen Defendants any measure of relief, it should do so through the least restrictive means available under Rule 26(c), rather than through the wholesale prohibition the Progen Defendants seek.

Rule 26(c)(1) provides courts with a range of graduated options to calibrate the protection afforded in the discovery context. In addition to outright prohibition under Rule 26(c)(1)(A), the Rule expressly authorizes courts to, among other things: specify terms—including time and place or the allocation of expenses—for the disclosure or discovery; prescribe a discovery method other than the one selected by the requesting party; forbid inquiry into certain matters or limit the scope of disclosure to certain matters; or require that confidential information be disclosed only in a specified way. *See* Fed. R. Civ. P. 26(c)(1)(B)-(H). These options exist precisely because blanket prohibition of discovery is a drastic remedy—one that courts reserve for exceptional circumstances not present here.

Should the Court conclude that some limitation on the Subpoenas is warranted despite CELEC's arguments to the contrary, CELEC respectfully requests that the Court consider these existing alternatives rather than prohibiting enforcement of the Subpoenas altogether.[1]

**CONCLUSION**

For all of the foregoing reasons, CELEC respectfully requests this Court **deny** the Progen Defendants' Motion for Protective Order in its entirety and permit the Subpoenas to the Federal Reserve and CHIPS to proceed. The Progen Defendants lack standing to challenge these non-party subpoenas on the grounds they assert, and the Federal Reserve and CHIPS—the actual responding parties—have raised no similiar objections of their own.

Even on the merits, the Subpoenas seek directly relevant, proportional, and non-duplicative information that is essential to CELEC's prosecution of this complex fraud, contract, and RICO case. The Motion is, at bottom, an effort to obstruct legitimate financial discovery into the trail of nearly $110 million that CELEC alleges was fraudulently obtained and diverted by Defendants and their co-conspirators. That effort should be rejected.

---

[1] The parties are negotiating an agreed-upon protective order that will govern the exchange of sensitive and confidential discovery throughout this litigation.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 3, 2026, I electronically served the foregoing **Plaintiff CELEC's Response to Progen Defendants' Motion for Protective Order** on all counsel of record.

By: /s/ *Courtney M. Keller*
  Courtney M. Keller, Esquire
  Florida Bar No. 28668
  Meredith P. Yates, Esquire
  Florida Bar No. 1058373

  **GREENBERG TRAURIG, P.A.**
  450 South Orange Avenue, Suite 650
  Orlando, Florida 32801
  Telephone: (407) 420-1000
  Facsimile: (407) 420-5909
  Email: kellerc@gtlaw.com
     Meredith.yates@gtlaw.com
     Nef-iws@gtlaw.com
     ORLLitDock@gtlaw.com

  Daniel Pulecio-Beck, Esquire
  (admitted *pro hac vice*)
  Michael Pusateri, Esquire
  (admitted *pro hac vice*)

  **GREENBERG TRAURIG, P.A.**
  2101 L Street, N.W., Suite 1000
  Washington, D.C. 20037
  Telephone: (202) 331-3117
  Email: pulecioboekd@gtlaw.com
     pusaterim@gtlaw.com

  *Counsel for Plaintiff*