**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CELEC EP,

     Plaintiff,

v.

PROGEN INDUSTRIES, LLC;
GENERTEK POWER CORP.;
GENERTEK POWER INDUSTRIES,
LLC; JOHN B. MANNING; W. WADE
MANNING; ANDREW S.
WILLIAMSON; ASTROBRYXA, S.A.;
AP INSPECTIONS
LATINOAMERICA, S.A.; A.P.
INSPECTIONS LLC; and DOES 1-99,

     Defendants.

_____

PROGEN INDUSTRIES, LLC,

     Counter-Plaintiff,

v.

CELEC EP,

     Counter-Defendant;

_____/

Case No. 8:25-cv-3433-WFJ-SPF

### PROGEN DEFENDANTS' MOTION FOR PROTECTIVE ORDER REGARDING NOTICE OF INTENT TO SERVE SUBPOENAS ON TWENTY-FOUR NON-PARTIES

Pursuant to Federal Rule of Civil Procedure 26(c), Defendants Progen

Industries, LLC; Genertek Power Corp.; Genertek Power Industries, LLC; John B.

Manning; W. Wade Manning; and Andrew S. Williamson (collectively, the "Progen

Defendants") move for a protective order precluding Plaintiff CELEC EP's ("CELEC" or "Plaintiff") service or enforcement of twenty-four subpoenas on non-parties noticed on April 23, 2026 (the "24 Subpoenas") and from seeking further irrelevant financial and business information from non-parties. The Progen Defendants further request that this Motion be heard at the hearing before Magistrate Judge Sean P. Flynn scheduled for May 7, 2026, noticed on April 29, 2026.

## INTRODUCTION

This litigation is CELEC's attempt to deflect blame and delay having to answer to Ecuadorians for its own failures—including energy infrastructure issues, its interference with Progen's performance, its mismanagement of the Contracts it entered with Progen, and its wrongful termination of both Contracts after Progen delivered forty-six generators to Ecuador. CELEC began its campaign to scapegoat Progen in the Ecuadorian media. (D.E. 58, Answer ¶ 77). It then brought this litigation to satisfy its Ecuadorian constituents' frustrations with the government. *See*, e.g., **Exhibit A**, President Daniel Noboa's, President of Ecuador, post on X dated December 16, 2025 ("I instructed the Ecuadorian Government to sue PROGEN in the United States [...] I know this matter has caused concern among many Ecuadorians. That is why you can count on my resolve and determination to pursue this matter through all available channels until the country receives full

2

reparation.") (original text in Spanish).[1]

The barrage of non-party discovery is consistent with CELEC's scapegoating and harassing strategy that led it to this litigation. CELEC has now served or noticed subpoenas on at least twenty-nine non-parties. The documents non-parties have produced, are already all over the Ecuadorian media, CELEC's target audience. (*see* D.E. No. 80). Twenty-four of those subpoenas, filled with irrelevant, overbroad, and disproportionate requests, were served while the Progen Defendants' prior Motion for Protective Order (Dkt. No. 67) remains pending. These 24 Subpoenas are an effort to circumvent the Court's oversight and harass the Progen Defendants and their business relationships by rifling through financial, business, and personal records in search of *anything* to support CELEC's narrative in Ecuador and this litigation. This is precisely the conduct Rule 26(c) is designed to prevent. The 24 subpoenas are abusive. The Progen Defendants request a protective order precluding Plaintiff from serving or enforcing the 24 Subpoenas and from seeking additional irrelevant financial and business information from non-parties.

---

[1] The oddity of the President of Ecuador, who is also on the Board of Directors of CELEC, resorting to legal proceedings in the United States as opposed to its own courts on a government contract further demonstrates how much CELEC wants to avoid scrutiny.

3

## FACTUAL BACKGROUND

1.      As further set forth in the Complaint (D.E. No. 1) and the Counterclaim (D.E. 58), this action arises out of two contracts between CELEC and Defendant Progen Industries, LLC ("Progen"): (a) the Quevedo Contract, for the supply and installation of 20 power generators, and (b) the Salitral Contract, for the supply and installation of 29 power generators (collectively, the "Contracts"). The issues before this Court are, at their core: (i) whether Progen performed under the Contracts and received payments from CELEC as earned compensation for goods and services actually delivered under the Contracts, not as proceeds of theft; (ii) whether Progen made material misrepresentations or forged documents to obtain the Contracts; (iii) whether Progen conspired with other Defendants, including the principals of Astrobryxa, who had undisclosed familial ties to CELEC officials, or whether those principals acted as CELEC's agents to induce Progen; and (iv) whether CELEC interfered with and sabotaged Progen's performance and scapegoated Progen for its own failures (the "Central Issues"). None of these issues require, or is advanced by, sweeping subpoenas to twenty-four nonparties, the overwhelming majority of which have played no role in the events alleged in the Complaint or the Counterclaim.

2.      On April 23, 2026, Plaintiff served on the Progen Defendants a notice of intent to serve subpoenas on twenty-four non-party entities and individuals. **Exhibit B**, Plaintiff's notice of intent to serve the 24 Subpoenas dated April 23,

4

2026. Each Subpoena commands production of responsive documents by May 11, 2026. The twenty-four subpoenaed non-parties are: (1) ABB Inc.; (2) American Express Company; (3) Apollo Electric Inc. of Texas; (4) A.R. Savage & Son LLC; (5) Bank of America Corporation; (6) Click Capital Group LLC; (7) Enerset Electric Ltd; (8) Five Star Leasing LLC; (9) H&S Industry LLC; (10) Hilliard Enterprises, Inc.; (11) Industrial Surplus Inc.; (12) Instafunders LLC; (13) InterFab Services LLC; (14) Lucky 8 Ventures; (15) Mid-America Engine; (16) My Box Inc.; (17) Rayk Holdings LLC; (18) Raymond Kuntz; (19) Resa Power LLC; (20) SBM Construction Services LLC; (21) Simple Management Group Inc.; (22) Spirit Specialty Alloy & Metals; (23) Swift Funding Source Inc.; and (24) Two Lions' Holdings LLC.

3.     The 24 Subpoenas fall into two categories. The first category consists of subpoenas directed to two financial institutions: Bank of America Corporation and American Express Company (collectively, the "Financial Institution Subpoenas"). The second category consists of subpoenas directed to the remaining twenty-two non-party entities and an individual (collectively, "the Business Entity Subpoenas").

4.     The Financial Institution Subpoenas seek sweeping financial records. The Bank of America subpoena seeks all wire transfer records, deposit and withdrawal records, checks, ACH transfers, or "any other transaction" involving any Defendant. The American Express subpoena seeks all account statements, transaction records, cardholder agreements, credit applications, compliance

reviews, and records of any holds or restrictions for accounts held by Defendant, Andrew S. Williamson.

5.     The Business Entity Subpoenas each seek documents reflecting or relating to: (i) any contract or agreement between any Defendant and CELEC; (ii) any payment made to or received from any Defendant; and (iii) the ownership, management, or control of the subpoenaed entity.

6.     Plaintiff previously served a subpoena on Regions Bank on February 13, 2026, requesting voluminous financial records relating to the Progen Defendants, including all account statements, wire transfer records, and loan applications. Regions Bank produced documents responsive to that subpoena. Additionally, Plaintiff served notices of intent to serve subpoenas on the Federal Reserve Bank of New York and the Clearing House Payments Company L.L.C. on March 5, 2026, which are the subject of the Progen Defendants' prior Motion for Protective Order (D.E. No. 67), currently pending before this Court and set for hearing on May 7, 2026.

## LEGAL STANDARD

A party may move for a protective order to challenge non-party subpoenas that seek irrelevant information and prevent the production of documents responsive to abusive non-party subpoenas.[2] *See Auto-Owners Ins. Co. v.*

---

[2] In its Response to the Progen Defendants' previous Motion for Protective Order (D.E. No. 70), CELEC sought to confuse the issues by attacking the Progen Defendants' purported lack of standing to challenge to non-party subpoenas under Federal Rule of Civil Procedure Rule 45. However, the Progen Defendants

*Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla.) (Glazebrook, M.J.) ("As parties, Defendants clearly have standing to move for a protective order if the subpoenas seek irrelevant information."); *Cluck-U Chicken, Inc. v. Cluck-U, Corp.*, Case No.: 8:15-CV-2274, 2017 WL 10275958, at *2 (M.D. Fla. Jan. 3, 2017). Under Rule 26(c), "the court where the action is pending [...] may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."  Fed. R. Civ. P. 26(c)(1).  This protection extends to discovery requests that seek irrelevant information and are disproportionate to the needs of the case. *Grayson v. No Labels, Inc.*, No. 6:20-CV-1824-PGB-LRH, 2021 WL 8199893, at *4 (M.D. Fla. Oct. 15, 2021), *aff'd*, No. 6:20-CV-1824-PGB-LRH, 2021 WL 8199894 (M.D. Fla. Nov. 17, 2021) ("[P]arties have standing to move for a protective order if a subpoena seeks irrelevant information.") (internal citations ommitted); *JWD Auto., Inc. v. DJM Advisory Grp. LLC*, 317 F.R.D. 587, 588–589 (M.D. Fla. 2016) ("Defendants may properly interpose objections on relevance and proportionality grounds to the discovery Plaintiff seeks to obtain from [a third

---

moved for a protective order under Rule 26(c). (D.E. No. 67). Here too, the Progen Defendants move for a protective order under Rule 26(c)—not a motion to quash under Rule 45. Courts in this District have consistently recognized the distinction. *See Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 430 (M.D. Fla.) (holding that although parties lacked standing to bring a motion to quash non-party subpoenas pursuant to Rule 45, the defendants, as parties, had standing to challenge the non-party subpoenas because they sought irrelevant, overbroad information, finding "good cause to prevent the overbroad discovery of the non-parties' finances and enter[ing] a protective order as to the financial information sought by the subpoenas"); *See also Grayson v. No Labels, Inc.*, No. 6:20-CV-1824-PGB-LRH, 2021 WL 8199893, at *4 (M.D. Fla. Oct. 15, 2021), *aff'd*, No. 6:20-CV-1824-PGB-LRH, 2021 WL 8199894 (M.D. Fla. Nov. 17, 2021) ("As an initial matter, Plaintiff's argument that Defendants lack standing to quash third-party subpoenas misses the mark. Although Defendants may have limited standing to quash third-party subpoenas, Defendants' motion is one for a protective order under Federal Rule of Civil Procedure 26 based on relevance.").

party] by subpoena."). Requested discovery of documents unrelated and irrelevant to the claims or defenses, but in exclusive aid of execution of a judgment that has not yet been entered, warrants a protective order. *Auto-Owners Ins. Co.*, 231 F.R.D. at 430.

Further, even if a discovery request seeks only relevant information, the Court must protect parties or persons from any "unreasonably cumulative or duplicative" request or any request for documents obtainable "from some other source that is more convenient, less burdensome, or less expensive." Rule 26(b)(2)(C)(i); *See Mchale v. Crown Equipment Corporation*, Case No. 8:19-cv-707, 2020 WL 8224617 at *1 (M.D. Fla. Aug. 1, 2020) (Flynn, M.J.) ("[A]lthough broad, the scope of discovery is not without limits.").

A motion for protective order is timely if it is filed before "the date the discovery material was to be produced. *Grethaka Solutions OÜ v. Click Labs, Inc.*, Case No. 8:22-cv-1341, 2023 WL 2681907 at *3 (M.D. Fla. Feb. 14, 2023) (Flynn, M.J.). Here, the Subpoenas command production by May 11, 2026, and this motion is filed in advance of that deadline.

## ARGUMENT

The 24 Subpoenas represent a continuation of Plaintiff's harassment of the Progen Defendants and the latest escalation of Plaintiff's already-objectionable strategy of conducting sweeping, invasive, and untailored discovery from non-parties. The timing of these 24 Subpoenas—served while the Progen Defendants'

prior Motion for Protective Order (D.E. No. 67) remains pending—strongly suggests that Plaintiff is seeking to circumvent this Court's oversight by rapidly expanding the scope of its non-party discovery before the Court has had the opportunity to rule on the propriety of Plaintiff's subpoena practice.

Each of the 24 Subpoenas exceeds the bounds of permissible discovery under Rule 26, and this Court should prohibit their enforcement. First, the Subpoenas are irrelevant to the Central Issues in this litigation. Second, the information sought (to the extent any of it is relevant) is more conveniently and less intrusively obtainable from the Progen Defendants themselves.

I. **The Financial Institution Subpoenas to Bank of America and American Express seek irrelevant, duplicative, and disproportionate financial records.**

   a. *The Bank of America Subpoena is Overbroad, Irrelevant, and Duplicative*

First, Defendants' Bank of America records are irrelevant. CELEC has placed CELEC's transfer of $110 million to Progen in dispute. (D.E. No. 1, Compl. ¶¶ 1-2). CELEC transferred $37,790,000 under the Quevedo Contract and $69,580,000 under the Salitral Contract to Progen's Regions Bank account. (*See* D.E. No. 58 at ¶¶ 29, 37, 49, 52, 72(vii), 72(viii), and 82(vii)). CELEC boldly asserts that "Defendants wrongfully and intentionally transferred and/or removed funds that were not earned by Defendants." (D.E. No. 1, Compl., ¶ 91). This allegation is flatly false. Defendants had no ability to "transfer[] and/or remove[] funds" from CELEC, and CELEC has proffered no evidence to support this allegation. Instead,

CELEC knowingly entered two Contracts by which it agreed, in Clause 7 of those Contracts, to pay the full contract value in installments to Progen's Regions Bank account as Progen performed its obligations. (*See* D.E. No. 1-7 at 26-29; D.E. 1-2 at 21-24). Progen performed the first portions of its contractual obligations and CELEC made payments to Progen's Regions Bank Account in accordance with Progen's performance until CELEC interfered with Progen's ability to perform. (D.E. 58, Answer ¶¶ 43, 70-77).

In compliance with Clause 7.4 of the Contracts, all payments under the Contracts were made to Progen's Regions Bank account - not Bank of America. (*See* D.E. No. 1-7 at 28-29; D.E. 1-2 at 23-24). Regions Bank has already produced comprehensive records showing every inflow and outflow from Progen's accounts. *See Oasis Capital, LLC v. Nason, Yeager, Gerson, Harris & Fumero, P.A.*, Case No. 22-CV-81913, 2024 WL 1934597, at *3 (S.D. Fla. Apr. 3, 2024) (finding documents not relevant, obtainable from other sources, or disproportionate to the needs of the case need not be produced under Rule 26).

The request for every transfer of Defendants recorded in Bank of America is abusive and wholly irrelevant to each of CELEC's claims:

First, CELEC's RICO and FDUPTA claims (Counts I-III) are predicated on alleged fraud in the form of false documents and misrepresentations that induced CELEC to pay Progen, not on what happened to funds after they left Progen's possession. The personal banking records of Defendants and the "Subject

10

Individuals and Entities" at an unrelated financial institution have no bearing on whether such predicate acts occurred.

Second, CELEC's conversion claim (Count IV) similarly turns on whether Defendants transferred or retained funds that CELEC paid to Progen - none of which involve Bank of America, as all of CELEC's payments flowed through Progen's Regions Bank account.

Third, CELEC's constructive trust claim (Count V) seeks to impose a trust over "Progen's assets and bank accounts" which CELEC knows is "located at Regions Bank at which CELEC delivered nearly $110 million" — not over funds held by third parties at Bank of America. (D.E. No. 1, Compl., ¶ 96). In any event, even if Bank of America held Progen's relevant assets, discovery relevant only to an improbable judgment, such as securing a constructive trust over Progen's assets in Bank of America, is impermissible at this stage. Discovery must be relevant to the claims and defenses in the litigation, not to matters that might be useful for post-judgment collection. *See Auto-Owners Ins. Co.*, 231 F.R.D. at 430. ("Defendants argue that Plaintiff's discovery is irrelevant because it does not relate to a claim or defense by the parties, but is in aid of execution of a judgment that has not yet been entered. The Court agrees that such discovery prior to the entry of judgment is improper.").

CELEC does not seek records of accounts through which CELEC's funds flowed; it seeks private financial records of individuals and entities at institutions

unrelated to its claims.  It engages in an invasive fishing expedition in hopes of finding anything at all that will aid its narrative to its Ecuadorian constituents and in this litigation. *See Future Metals LLC v. Ruggerio*, Case No. 21-CIV-60114, 2021 WL 1920396 (S.D. Fla. May 12, 2021) (Although the scope of discovery is broad, it is not without limits. Courts should not grant discovery requests based on pure speculation that amount to nothing more than a 'fishing expedition' into actions ... not related to the alleged claims or defenses." (internal quotations omitted)).

Further, CELEC does not allege it transferred funds to any Defendant besides Progen. Accordingly, the Subpoenas' requests for financial records of Genertek Power Corp., Genertek Power Industries, LLC, John B. Manning, W. Wade Manning, Andrew S. Williamson, and the "Subject Individuals and Entities"[3] (none of whom are alleged to have received funds from CELEC) are overbroad, irrelevant, and disproportionate to the needs of this litigation. *See Continuum on South Beach Condo. v. QBE Ins. Corp.*, 338 F.R.D. 668, 670-71 (S.D. Fla. 2021) (granting motion for protective order where the subpoenas were overbroad, unduly burdensome and bore no relevance to Plaintiff's claim or Defendant's available defenses).

---

[3] "'Subject Individuals and Entities' refers to JOSE MANRIQUE SUAREZ; KARLA SAUD; ASTROBRYXA LLC; HS INDUSTRY, LLC; INTERFAB SERVICES, LLC; APOLLO ELECTRIC; MY BOX, INC.; LUCKY 8 VENTURES; and TWO LIONS HOLDINGS, LLC, individually and collectively." Exhibit B, at 15.

b. *The American Express Subpoena is an impermissible invasion of privacy that seeks irrelevant personal financial records.*

The American Express subpoena seeks all account statements, transaction records, cardholder agreements, credit applications, compliance reviews, and records of holds or restrictions for any account held by Andrew S. Williamson, one of the Progen Defendants that CELEC has chosen to single out for additional harassment. This subpoena seeks the complete personal credit card history of an individual defendant—every charge, every payment, every cash advance—without any limitation to transactions related to the Contracts or this litigation. Not coincidentally, the Ecuadorian government has initiated criminal investigations against Mr. Williamson in Ecuador. CELEC is already using this litigation to advance its general strategy of scapegoating Progen in Ecuador. (D.E. 58, Answer, ¶¶ 77-78). A protective order is necessary to prevent CELEC from further abusing this litigation to undermine Mr. Williamson's civil rights in a foreign criminal proceeding and advance its criminal investigation through discovery channels that, under Federal Rule of Civil Procedure 26(b)(1), are reserved exclusively for matters relevant to the parties' claims and defenses in the action before this Court.

Mr. Williamson's personal American Express charges have no relevance whatsoever and are disproportionate to any of the Central Issues, including, for purposes of its conversion claim, how Progen used funds it received from CELEC as consideration for its contractual performance. Even considering CELEC's

13

position that Progen made payments from the Regions Bank account to Mr. Williamson's (i.e. its employee's) American Express bills (D.E. 70 at 4), that information is already available from the Regions Bank production and duplicative production that will expose private irrelevant information is unwarranted.

Further, CELEC's RICO and FDUTPA claims require proof of predicate acts of mail and wire fraud through forged documents and material misrepresentations that allegedly induced CELEC to enter into the Contracts—not evidence of how an individual Defendant spent personal funds or what credit card expenses Progen paid. CELEC's constructive trust claim seeks to impose a trust over "Progen's assets and bank accounts," not over funds held in Mr. Williamson's personal credit accounts. The spending habits of Mr. Williamson have no bearing on the claims or defenses in this case and would serve only to embarrass and harass an individual Defendant. The Court should not permit this invasive fishing expedition into an individual's personal spending habits. *See Future Metals,* 2021 WL 1920396 at 3.

## II. The Business Entity Subpoenas to twenty-two non-parties are overbroad, irrelevant, and not proportional to the needs of the case.

The remaining twenty-two subpoenas are directed to an array of non-party businesses and an individual, nineteen of whom are not even identified in CELEC's pleadings. These subpoenas each seek three categories of documents: (1) contracts or agreements between the subpoenaed entity and any Defendant or CELEC; (2) payment records reflecting payments to or from any Defendant; and (3) records of

ownership, membership, management, or control of the subpoenaed entity. Ex. B.

### a. *The contractual information requested is beyond the scope of this litigation.*

The breadth and volume of these requests is staggering. CELEC is seeking to subpoena business entities that *may* have had any commercial relationship with any of nine Defendants—and not just for "***any contract or agreement*** involving the supply, sale, lease, installation, maintenance, or servicing of generators" (which is overbroad and disproportionate in itself), but also for any contract involving "***any other goods or services*** provided by or through any Defendant." Ex. B (emphasis added). This language sweeps in every conceivable business transaction between the twenty-two subpoenaed business entities and any Defendant, regardless of whether such transaction has any connection to this litigation.

CELEC mentions only three of the twenty-two subpoenaed parties in its pleadings: H&S Industry LLC (Compl. ¶ 21); Apollo Electric (Compl. ¶ 49), and InterFab Services (Compl. ¶ 52). The remaining nineteen subpoenaed non-parties are not mentioned anywhere in CELEC's pleadings because they are wholly irrelevant to its claims. The Progen Defendants can only presume that CELEC selected these entities solely because they appear as recipients of transactions in Progen's Regions Bank account statements. CELEC made no effort to confirm whether these entities had any actual involvement in any allegation made in this

action. This leap from pure speculation to the issuance of twenty-two third-party subpoenas is unjustified; contracts for unrelated goods or services with these entities shed no light on the Central Issues. This is precisely the type of wide-ranging investigation into a party's business relationships that courts have held exceeds the scope of permissible discovery. *See Mchale*, 2020 WL 8224617, at *2 (granting protective order because documents sought in third-party subpoenas were "not related to Plaintiffs' claims or defenses and do not meet Rule 26(b)(1)'s relevancy requirements.").

b. *The ownership and control requests are irrelevant and constitute a fishing expedition.*

Documents "reflecting or relating to the ownership, membership, management, or control" of the twenty-one subpoenaed entities (Ex. B) have no connection to any claim or defense in this case. CELEC's pleadings do not allege that any of these twenty-one entities played any role in the bidding process, the execution of the Contracts, or the alleged forgery of documents, nor does it allege that the Progen Defendants or its principals own or control any of the 21 subpoenaed entities. It also does not explain the relevance of the subpoenaed individual, Raymond Kutz, to this litigation.

CELEC's apparent strategy is to use these subpoenas to investigate the Progen Defendants' broader business activities and relationships—information that has nothing to do with the claims or defenses at issue. Since CELEC's own

16

failures led to delays in the Contracts, it has scapegoated Progen and all other parties involved—except, of course, itself. The only conceivable purpose of these overbroad subpoenas investigating the ownership structure of twenty-one entities is to identify additional parties to blame while continuing to harass and disrupt Progen's business relationships. (*See* D.E. 58, Answer ¶ 77). These requests are not proportional to the needs of the case and amount to nothing more than an impermissible fishing expedition into the Progen Defendants' broader business dealings. *See Future Metals*, 2021 WL 1920396 at 3.

c. *The payment requests are overbroad and duplicative of existing discovery.*

The Business Entity Subpoenas also seek "[a]ll documents, communications, or records reflecting or relating to any payment made to or received from any Defendant." Ex. B. This request is not limited to payments related to the Contracts. It sweeps in every payment of any kind between the subpoenaed entity (nineteen of which are not mentioned anywhere in CELEC's pleadings) and any of nine Defendants, regardless of whether such payment has any connection to this litigation.

Moreover, this information is duplicative of the Regions Bank production. Regions Bank has already produced hundreds of pages of documents showing wire transfers and checks to and from the Progen Defendants. The funds at issue in this litigation are the $110 million that CELEC transferred to Progen's Regions Bank account. (D.E. No. 1, Compl., ¶¶ 1-2). Any subsequent transfer by Progen of those

funds, including transfers to any of the twenty-two entities and the individual subpoenaed, is already fully documented in the Regions Bank production. Duplicative production requests warrant a protective order. *See* Rule 26(b)(2)(C)(i).

### III.    The information sought is more readily available from the Progen Defendants themselves.

Even if any portion of the information sought by the April 23 Subpoenas is deemed relevant (it is not), a motion for protective order should be issued because the information is more conveniently and less intrusively obtained from the Progen Defendants themselves. Rule 26(b)(2)(C)(i) directs courts to limit discovery that "can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Consistent with this principle, courts grant protective orders when a party seeks information from a non-party that could readily be obtained from an opposing party. *See Meide v. Pulse Evolution Corp.*, No. 3:18-CV-1037-J-34MCR, 2019 WL 1518959, at *7 (M.D. Fla. Apr. 8, 2019) (Richardson, M.J.) (issuing a protective order because "it is unclear why Plaintiff is attempting to obtain any information [. . .] from the shareholders, when he can potentially obtain such information directly from the [Defendant].").

CELEC could obtain all the documents it requested from third parties (to the

18

extent they exist), from the Progen Defendants.[4] The Progen Defendants possess their own records of contracts, transactions, and business dealings, and CELEC has already served Requests for Production seeking such information. For this additional and independent reason, the Court should grant the Progen Defendants' motion for protective order.

## CONCLUSION

The 24 Subpoenas seek irrelevant, duplicative, and disproportionate discovery from non-parties while circumventing this Court's pending review of Plaintiff's prior subpoena practice. For the foregoing reasons, a protective order is warranted.

WHEREFORE, the Progen Defendants respectfully request that this Court grant a protective order prohibiting enforcement of the 24 Subpoenas, as well as any additional attempt by Plaintiff to seek irrelevant information from third parties, as set forth above. The Progen Defendants further request that this Motion be heard at the hearing before Magistrate Judge Sean P. Flynn scheduled for May 7, 2026, at 1:00 p.m., noticed on April 29, 2026.

---

[4] The only documentation requested in the Business Entities Subpoenas, that CELEC could not seek to obtain from the Progen Defendants, is the ownership structure of each business entity. However, as established above, ownership structures of the 21 subpoenaed unrelated entities are wholly irrelevant to this litigation.

## **LOCAL RULE 3.01(g) CERTIFICATION**

Pursuant to Local Rule 3.01(g), the Progen Defendants' counsel conferred with Plaintiff's counsel on April 30, 2026, via telephone, and Plaintiff's counsel opposes the relief sought herein.

Dated: April 30, 2026

Respectfully submitted,

*/s/ Adolfo E. Jiménez*
Adolfo E. Jiménez
Florida Bar No. 869295
Email: Adolfo.Jimenez@hklaw.com
Gabriella A. Lanzas
Florida Bar No. 1059806
Email: Gabriella.Lanzas@hklaw.com
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799

and

Jason H. Baruch
Florida Bar No. 10280
Jason.baruch@hklaw.com
Anne Colbert
Florida Bar No. 1026226
anne.colbert@hklaw.com
Allison M. Powers
Florida Bar No. 1025549
allison.powers@hklaw.com
HOLLAND & KNIGHT LLP
100 N. Tampa Street, Suite 4100
Tampa, FL 33602
Telephone: (813) 227-8500
Facsimile: (813) 229-0134 (fax)

20

*Attorneys for Defendants Progen Industries, LLC; Genertek Power Corp.; Genertek Power Industries, LLC; John B. Manning; W. Wade Manning; and Andrew S. Williamson*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 30, 2026, I electronically served Progen Defendants' Motion for Protective Order Regarding Notice of Intent to Serve Subpoenas on Twenty-Four Non-parties on all counsel of record.

*/s/Adolfo E. Jímenez*
Adolfo E. Jiménez