# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA, DIVISION

CELEC EP,

§
§
§
§

*Plaintiff,*

§
§
§

v.

§
§
§

PROGEN INDUSTRIES, LLC; GENERTEK POWER CORP.; GENERTEK POWER INDUSTRIES, LLC; JOHN B. MANNING; W. WADE MANNING; ANDREW S. WILLIAMSON; ASTROBRYXA, S.A.; ASTROBRYXA, LLC, AP INSPECTIONS LATINOAMERICA, S.A.; A.P. INSPECTIONS LLC; H&S INDUSTRY, LLC; TWO LIONS HOLDINGS, LLC; AOT HOLDING AG; GESTORES INMOBILIARIOS LIGHTBLUE, S.A., and DOES 1-99,

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

**CASE NO. 8:25-cv-03433-WFJ-SPF**

*Defendants.*

§
§

## DEFENDANT ASTROBRYXA, S.A.'S ANSWER AND AFFIRMATIVE DEFENSES TO PLAINTIFF'S AMENDED COMPLAINT (DE 128) AND COUNTERCLAIMS

Defendant, Astrobryxa, S.A. ("Astrobryxa" or "Defendant"), by and through undersigned counsel, hereby files its Answer and Affirmative Defenses to the Amended Complaint and Demand for Jury Trial (DE 128) filed by Plaintiff CELEC

EP ("CELEC" or "Plaintiff") and dated June 2, 2026 (the "Amended Complaint") and asserts its Counterclaims.

## ANSWER TO ALLEGATIONS

1. Astrobryxa denies the allegations in Paragraph 1 of Plaintiff's Amended Complaint.

2. Astrobryxa denies the allegations in the first two sentences of Paragraph 2 of Plaintiff's Amended Complaint. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in the last sentence of Paragraph 3, and the same are therefore denied.

3. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 3, and the same are therefore denied.

4. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 4, and the same are therefore denied.

5. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 5, and the same are therefore denied.

6. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 6, and the same are therefore denied.

7. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 7, and the same are therefore denied.

8. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 8, and the same are therefore denied.

9. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 9, and the same are therefore denied.

10. Astrobryxa admits the allegations in Paragraph 10.

11. Astrobryxa admits the allegations in Paragraph 11. Astrobryxa denies any allegation, express or implied, that it was involved in, participated in, or had any knowledge of any purported conspiracy, fraudulent scheme, or improper transfer of funds. Astrobryxa expressly disclaims any role in the alleged conduct and denies that it acted as a co-conspirator or in concert with any of the individuals or entities referenced.

12. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 12, and the same are therefore denied.

13. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 13, and the same are therefore denied.

14. Astrobryxa denies the allegations in Paragraph 14 of Plaintiff's Amended Complaint.

15. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 15, and the same are therefore denied.

16. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 16, and the same are therefore denied.

17. Astrobryxa admits the allegations in Paragraph 17.

18. Astrobryxa admits the allegations in Paragraph 18.

19. Astrobryxa admits the allegations in Paragraph 19.

20. Astrobryxa denies that this Court has personal jurisdiction over it (see Astrobryxa's Motion to Dismiss [Doc. 24]). Astrobryxa further denies that it conspired to and engaged in tortious conduct in and related to Florida, pursuant to Fla. Stat. § 48.193(1)(a) or otherwise engaged in substantial and not isolated activity within the state. Astrobryxa further denies that the Court may exercise specific jurisdiction over each Defendant pursuant to Fla. Stat. § 48.193, 18 U.S.C. § 1965(d), Federal Rules of Civil Procedure 4(k)(1)(A), 4(k)(1)(B), or, in the alternative, 4(k)(2). Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 20, and the same are therefore denied.

21. Astrobryxa denies that it is subject to personal jurisdiction in this Court. Astrobryxa admits the remaining allegations in Paragraph 21.

22. Astrobryxa admits the allegations in Paragraph 22.

23. Astrobryxa admits the allegations in Paragraph 23.

24. Astrobryxa denies the allegations in Paragraph 24.

25. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 25, and the same are therefore denied.

26. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 26, and the same are therefore denied.

27. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 27, and the same are therefore denied.

28. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 28, and the same are therefore denied.

29. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 29, and the same are therefore denied.

30. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 30, and the same are therefore denied.

31. Astrobryxa admits that Plaintiff and Progen appear to have signed the contract attached as Exhibit B to Plaintiff's Amended Complaint. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 31, and the same are therefore denied.

32. The Quevedo Contract referenced in Paragraph 32 speaks for itself. Otherwise, denied.

33. The Quevedo Contract referenced in Paragraph 33 and its amendments speak for themselves. Otherwise, denied.

34. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 34, and the same are therefore denied.

35. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 35, and the same are therefore denied.

36. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 36, and the same are therefore denied.

37. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 37, and the same are therefore denied.

38. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 38, and the same are therefore denied.

39. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 39, and the same are therefore denied.

40. Astrobryxa admits that Plaintiff and Progen appear to have signed the contract, attached as Exhibit E to Plaintiff's Amended Complaint. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the remaining allegations in Paragraph 40, and the same are therefore denied.

41. The Salitral Contract referenced in Paragraph 41 speaks for itself. Otherwise, denied.

42. The Salitral Contract referenced in Paragraph 42 speaks for itself. Otherwise, denied.

43. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 43, and the same are therefore denied.

44. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 44, and the same are therefore denied.

45. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 45, and the same are therefore denied.

46. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 46, and the same are therefore denied.

47. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 47, and the same are therefore denied.

48. Astrobryxa denies the allegations in Paragraph 48.

49. Astrobryxa denies the allegations in Paragraph 49.

50. Astrobryxa denies the allegations in Paragraph 50.

51. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 51, and the same are therefore denied.

52. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 52, and the same are therefore denied.

53. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 53, and the same are therefore denied.

54. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 54, and the same are therefore denied.

55. Astrobryxa denies the allegations in Paragraph 55.

56. Astrobryxa denies the allegations in Paragraph 56.

57. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 57, and the same are therefore denied.

58. Astrobryxa denies the allegations in Paragraph 58.

59. Astrobryxa denies the allegations in Paragraph 59.

60. Astrobryxa denies the allegations in Paragraph 60.

61. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 61, and the same are therefore denied.

62. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 62, and the same are therefore denied.

63. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 63, and the same are therefore denied.

64. Astrobryxa denies the allegations in Paragraph 64.

65. Astrobryxa denies the allegations in Paragraph 65.

66. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 66, and the same are therefore denied.

67. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 67, and the same are therefore denied.

68. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 68, and the same are therefore denied.

69. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 69, and the same are therefore denied.

70. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 70, and the same are therefore denied.

71. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 71, and the same are therefore denied.

72. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 72, and the same are therefore denied.

73. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 73, and the same are therefore denied.

74. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 74, and the same are therefore denied.

75. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 75, and the same are therefore denied.

Astrobryxa further denies any allegation, express or implied, that it was involved in, participated in, or had any knowledge of any purported conspiracy, fraudulent scheme, or improper transfer of funds as described in Paragraph 75. Astrobryxa expressly disclaims any role in the alleged conduct and denies that it acted as a co-conspirator or in concert with any of the individuals or entities referenced.

76. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 76, and the same are therefore denied.

77. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 77, and the same are therefore denied.

78. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 78, and the same are therefore denied.

79. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 79, and the same are therefore denied.

80. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 80, and the same are therefore denied.

81. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 81, and the same are therefore denied.

82. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 82, and the same are therefore denied.

83. Paragraph 83 requires no response; however, to the extent one is required, Astrobryxa denies the allegations.

84. Astrobryxa admits that the RICO statute may be found at 18 U.S.C. § 1961 *et seq.* and that the words "any person injured in his business or property by reason of a violation of" appear in the statute. Astrobryxa denies the remaining allegations in Paragraph 84.

85. Astrobryxa denies the allegations in Paragraph 85.

86. Astrobryxa denies the allegations in Paragraph 86.

87. Astrobryxa denies the allegations in Paragraph 87.

88. Astrobryxa denies the allegations in Paragraph 88.

89. Astrobryxa denies the allegations in Paragraph 89.

90. Astrobryxa denies the allegations in Paragraph 90, including all sub-parts.

91. Astrobryxa denies the allegations in Paragraph 91.

92. Astrobryxa denies the allegations in Paragraph 92.

93. Astrobryxa denies the allegations in Paragraph 93.

94. Astrobryxa denies the allegations in Paragraph 94.

95. Astrobryxa denies the allegations in Paragraph 95.

96. Astrobryxa denies the allegations in Paragraph 96.

97. Paragraph 97 requires no response; however, to the extent one is required, Astrobryxa denies the allegations.

98. Astrobryxa denies the allegations in Paragraph 98.

99. Astrobryxa denies the allegations in Paragraph 99.

100. Astrobryxa denies the allegations in Paragraph 100, including all sub-parts.

101. Astrobryxa denies the allegations in Paragraph 101.

102. Astrobryxa denies the allegations in Paragraph 102.

With respect to the paragraph beginning with "WHEREFORE," Astrobryxa denies that Plaintiff is entitled to a judgment for damages, including actual losses, consequential damages, lost profits, treble damages, pre- or post-judgment interest, Plaintiff's costs and attorneys' fees, or any other relief.

103. Paragraph 103 requires no response; however, to the extent one is required, Astrobryxa denies the allegations.

104. Astrobryxa admits the allegations in Paragraph 104.

105. Astrobryxa denies the allegations in Paragraph 105, including all sub-parts.

106. Astrobryxa denies the allegations in Paragraph 106.

107. Astrobryxa denies the allegations in Paragraph 107.

With respect to the paragraph beginning with "WHEREFORE," Astrobryxa denies that Plaintiff is entitled to a judgment for damages, including Plaintiff's actual damages, pre- and post-judgment interest, Plaintiff's costs and attorneys' fees, or any other relief.

108. Paragraph 108 requires no response; however, to the extent one is required, Astrobryxa denies the allegations.

109. Astrobryxa denies the allegations in Paragraph 109, including all sub-parts.

110. Astrobryxa denies the allegations in Paragraph 110.

111. Astrobryxa denies the allegations in Paragraph 111.

112. Astrobryxa denies the allegations in Paragraph 112.

With respect to the paragraph beginning with "WHEREFORE," Astrobryxa denies that Plaintiff is entitled to a judgment for damages, including actual losses, consequential damages, lost profits, pre- and post-judgment interest, Plaintiff's costs, attorneys' fees if available, or any other relief.

113. Paragraph 113 requires no response; however, to the extent one is required, Astrobryxa denies the allegations.

114. The allegations in Count V of the Complaint are directed solely against Progen and not against Astrobryxa; therefore, no answer is required by Astrobryxa. Out of an abundance of caution, however, Astrobryxa pleads that it lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 114, and the same are therefore denied.

115. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 115, and the same are therefore denied.

With respect to the paragraph beginning with "WHEREFORE," Astrobryxa denies that Plaintiff is entitled to a judgment for a constructive trust over Progen's assets and bank accounts, an award of Plaintiff's costs, and such other relief as may be necessary under the circumstances.

116. Paragraph 116 requires no response; however, to the extent one is required, Astrobryxa denies the allegations.

117. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 117, and the same are therefore denied.

118. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 118, and the same are therefore denied.

119. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 119, and the same are therefore denied.

120. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 120, and the same are therefore denied. Astrobryxa further denies any allegation, express or implied, that it was involved in, participated in, or had any knowledge of any purported conspiracy, fraudulent scheme, or improper transfer of funds as described in Paragraph 120. Astrobryxa expressly disclaims any role in the alleged conduct and denies that it acted as a co-conspirator or in concert with any of the individuals or entities referenced.

121. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 121, including all sub-parts, and the same are therefore denied.

122. Astrobryxa denies the allegations in Paragraph 122, including all sub-parts.

123. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 123, and the same are therefore denied.

Astrobryxa further denies any allegation, express or implied, that it was involved in, participated in, or had any knowledge of any purported conspiracy, fraudulent scheme, or improper transfer of funds as described in Paragraph 123. Astrobryxa expressly disclaims any role in the alleged conduct and denies that it acted as a co-conspirator or in concert with any of the individuals or entities referenced.

124. Astrobryxa lacks knowledge or information sufficient to form a belief about the truth of the allegations in Paragraph 124, and the same are therefore denied.

With respect to the paragraph beginning with "WHEREFORE," Astrobryxa denies that Plaintiff is entitled to the requested relief, including but not limited to any temporary or permanent injunctive relief restraining the alleged dissipation of funds or assets, entry of judgment for avoidance of purported fraudulent transfers, or any award of damages, interest, costs, or other legal and/or equitable relief. Astrobryxa further denies that Plaintiff is entitled to any judgment against it under the allegations set forth and denies any liability whatsoever in connection with the claims asserted.

WHEREFORE, having asserted its Answer to the Amended Complaint, Astrobryxa demands judgment in its favor and against CELEC, that CELEC take nothing by this action, and that the Court order any further relief that is reasonable and just.

**AFFIRMATIVE DEFENSES**

As and for its affirmative defenses to the Amended Complaint, Astrobryxa avers as follows:

## I.      FIRST AFFIRMATIVE DEFENSE

CELEC'S claims should be dismissed under Fed. R. Civ. P. 12(b)(5) for insufficient service of process for the reasons stated in Astrobryxa's Motion to Dismiss [Doc. 24], which is incorporated herein by reference.

## II.      SECOND AFFIRMATIVE DEFENSE

CELEC'S claims should be dismissed under Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction for the reasons stated in Astrobryxa's Motion to Dismiss [Doc. 24], which is incorporated herein by reference.

## III.      THIRD AFFIRMATIVE DEFENSE

Count I and Count II of CELEC's Complaint fail to state causes of action. CELEC has failed to allege a "domestic injury," required to maintain a private cause of action under RICO. *See RJR Nabisco, Inc. v. European Cmty.,* 579 U.S. 325, 354 (2016). In its Complaint, CELEC alleges:

1. CELEC is an Ecuadorian strategic public service "responsible for the generation, transmission, and distribution of electricity in Ecuador." (Compl. ¶ 3).

2. CELEC solicited bids from American companies in Ecuador. (Compl. ¶ 20).

3. The equipment under the Quevedo and Salitral Contracts (the "Contracts") were shipped to Ecuador. (Compl. ¶¶ 54-55).

4. CELEC discovered the alleged defective products delivered under the Quevedo and Salitral Contracts in Ecuador. (Compl. ¶¶ 58-60).

All these factual allegations by CELEC suggest that any injury CELEC claims to have suffered was suffered in Ecuador, not the United States. *Worldspan Marine Inc. v. Comerica Bank,* No. 18-21924-CIV, 2020 WL 1238732, at *7 (S.D. Fla. Feb. 27, 2020). The Contracts at issue in this case are governed by Ecuadorian law and subject to Ecuadorian government contracting rules and regulations. CELEC has not alleged a domestic injury to its business or property and, therefore, cannot sustain its claims in Counts I and II.

## IV. FOURTH AFFIRMATIVE DEFENSE

Astrobryxa did not forge any documents submitted to CELEC. If any documents were forged, which allegation Astrobryxa denies, they were prepared, approved, and submitted by Progen or persons or entities not affiliated with, or under the control of, Astrobryxa.

## V. FIFTH AFFIRMATIVE DEFENSE

CELEC's conversion claim fails because CELEC bases its conversion claim on a general obligation to pay money. Florida courts have consistently held that a claim for conversion cannot be based on a general obligation to pay money or a breach of contract. Money is only capable of being converted if it is a specific fund capable of separate identification, such as money delivered at one time, by one act, and in one mass, or where the deposit is special and the identical money is to be kept for the party making the deposit. *Futch v. Head*, 511 So. 2d 314, 320 (Fla. 1st DCA 1987).

## VI. SIXTH AFFIRMATIVE DEFENSE

Any money damages found to be due to CELEC should be reduced or offset in the amount of any money or other compensation CELEC has received or will receive from Seguros Confianza S.A., which reimbursed CELEC for the amounts it is now claiming in this lawsuit.

## VII. SEVENTH AFFIRMATIVE DEFENSE

CELEC'S claims are barred in whole or in part by CELEC's failure to mitigate its damages.

## VIII. EIGHTH AFFIRMATIVE DEFENSE

CELEC's claims are barred in whole or in part by the doctrine of unclean hands. CELEC actively sabotaged the projects by, among other things, conspiring with Progen to lure Astrobryxa into working on the projects and multiple changes in personnel, including three different CEOs, three Contract Administrators, and three Ministers of Energy, during the relevant period. Each transition caused delays while new CELEC officials and personnel were brought up to speed on the projects. CELEC also imposed various extra-contractual obligations and refused to make required payments timely.

CELEC's claims are further barred, in whole or in part, by the doctrine of unclean hands because it:

- concealed material geotechnical information;
- made false representations regarding site conditions; and

- induced the Salitral project to proceed under materially false assumptions.

## IX.    NINTH AFFIRMATIVE DEFENSE

CELEC's damages were caused, in whole or in part, by the acts or omissions of others for which Astrobryxa has no legal responsibility. Specifically, CELEC's damages were caused by the acts or omissions of Progen or its principals, AP Inspections or its principals, or other persons or entities. CELEC's damages were also caused by the acts and omissions of CELEC's own employees, executives, and agents, including without limitation their interference with and delay in completing the projects.

## X.    TENTH AFFIRMATIVE DEFENSE

CELEC's claims are barred in whole or in part because Ecuadorian law applies to the parties' relationship.

## XI.    ELEVENTH AFFIRMATIVE DEFENSE

Any alleged obligations or performance by Astrobryxa were induced by CELEC's fraud, misrepresentation, and concealment, precluding CELEC from recovery. Astrobryxa incorporates by reference paragraphs 1–24 of the Counterclaim.

## XII.    TWELTH AFFIRMATIVE DEFENSE

CELEC's claims are barred because any alleged wrongdoing arose from conduct in which CELEC was an equal or greater participant, including misleading the contracting chain regarding constructability.

### XIII.  THIRTEENTH AFFIRMATIVE DEFENSE

Any recovery by CELEC must be reduced by: 1) the value of labor and work performed by Astrobryxa; 2) additional work necessitated by undisclosed soil conditions.

### XIV.  FOURTEENTH AFFIRMATIVE DEFENSE

CELEC's tort claims are barred to the extent they attempt to recover for purely economic losses arising from contractual expectations.

### XV.   FIFTEENTH AFFIRMATIVE DEFENSE

Astrobryxa asserts the defense of arbitration. Although Astrobryxa is not a signatory to either the Quevedo Contract or Salitral Contract, it has a right to compel arbitration under the doctrine of equitable estoppel. Specifically, and as fully described in Astrobryxa's Motion to Compel Arbitration [Doc. 78] and its Reply to CELEC's Response [Doc. 103], the underlying contracts contain arbitration clauses. CELEC must rely on the terms of the underlying contracts in asserting its claims because the gravamen of the claims relates to Progen's and Astrobryxa's alleged failures (as a result of an alleged conspiracy) to deliver generators in accordance with the underlying contracts. CELEC has alleged that (1) "none of the 29 power generators under the Salitral Contract were new, let alone compliant with any of the Contract's requirements"; (2) "Progen and its co-conspirators [Astrobryxa] used the sham inspection reports to get Progen paid nearly $40 million" under the contracts; and (3) "[N]one of the 20 power generators under the Quevedo Contract were new, let alone compliant with any of the Contract's requirements".

Further, CELEC has alleged substantially interdependent and concerted misconduct by the signatories (Progen) and non-signatories (Astrobryxa), and the misconduct is founded in or intimately connected with the obligations of the underlying agreement. CELEC's Complaint is rife with allegations that Progen and its "co-conspirators"—i.e., Astrobryxa—conspired to provide equipment and services that violate the underlying agreements, including, for example: (1) "Progen did not deliver to CELEC a single new power generator under the Quevedo Contract[.]"; (2) "Progen did not deliver … under the Salitral Contract[.]"; (3) "Progen retained [Astrobryxa] to act as its subcontractor installing the power generators under the Quevedo and Salitral Contract."; and (4) "[N]either Progen nor Astrobryxa intended to deliver the power generators."

Accordingly, CELEC cannot avoid arbitration solely on the basis of Astrobryxa's status as a non-signatory. On the contrary, estoppel gives Astrobryxa the right to enforce the arbitration agreement by precluding CELEC from taking inconsistent positions—i.e., that Progen and Astrobryxa conspired to defraud CELEC of millions by failing to deliver goods and services in accordance with Salitral and Quevedo Contracts but also that Astrobryxa cannot invoke the arbitration provision of those very contracts.

For these reasons, Astrobryxa asks the Court to compel the parties to arbitrate in accordance with Salitral and Quevedo Contracts.

WHEREFORE, having asserted its Affirmative Defenses to the Amended Complaint, Astrobryxa demands judgment in its favor and against CELEC, that

CELEC take nothing by this action, and that the Court order any further relief that is reasonable and just.

**COUNTERCLAIMS**

Pursuant to Fed. R. Civ. P. 13, Defendant/Counter-Plaintiff, Astrobryxa, S.A. ("Astrobryxa"), by and through undersigned counsel, files its Counterclaims against Plaintiff/Counter-Defendant, CELEC EP ("CELEC" or "Plaintiff"), and avers as follows:

**General Allegations**

1. Astrobryxa is an Ecuadorian corporation engaged in civil engineering and construction services.

2. Defendant Progen Industries, LLC ("Progen") retained Astrobryxa as its subcontractor to perform civil engineering services, including the design and construction of foundations necessary for the installation of power generators at the Quevedo and Salitral generation plants (the "Civil Engineering Contract").

3. Astrobryxa performed such work in furtherance of the Quevedo and Salitral contracts between Progen and CELEC.

4. Prior to publishing its Requests for Proposals ("RFPs") for the Salitral project, and prior to the execution of the Salitral contract, incorporating the technical specifications set forth in those RFPs, CELEC possessed a geotechnical study identifying adverse subsurface soil conditions at the Salitral plant site.

5. That geotechnical study established that substantial soil improvement measures were required to support the installation of the specified generators within the timelines prescribed in the Salitral contract.

6. The subsurface soil conditions were material to the constructability, cost, and schedule of the Salitral project.

7. CELEC failed to disclose this geotechnical study or its findings at any time prior to the execution of the Salitral contract, including omitting it from the publicly available RFP materials.

8. Under Ecuadorian law, CELEC was required to include the geotechnical study of the Salitral plant site in the corresponding RFP.

9. CELEC knew that bidders and their subcontractors would rely on the completeness and accuracy of the information provided in the RFP.

10. In August 2024, during a site visit at the Salitral plant site in Ecuador attended by representatives of CELEC and project participants, including representatives of Astrobryxa, CELEC—through its agents, employees, and/or representatives that worked at the plant—represented that no geotechnical study had been conducted for the project site.

11. During that same site visit, CELEC—through the same representatives—affirmatively stated that previously-installed heavy equipment at the site, including a turbine significantly heavier than the generators contemplated under the contracts, had been successfully installed without foundation or soil-related issues.

12. These representations were materially false and CELEC knew the statements were false or misleading when made.

13. At the time the statements were made, CELEC had in its possession a geotechnical study identifying adverse subsurface conditions at the Salitral plant requiring substantial soil improvement, and CELEC knew that prior installation attempts involving heavy equipment had experienced foundation failures or had not been successfully completed due to soil conditions.

14. CELEC made these statements directly to project participants, including Astrobryxa representatives, for the purpose of inducing continued performance under the contracts despite the undisclosed subsurface conditions.

15. In addition to the site visit statements, CELEC omitted from the publicly available RFPs—published in or about June 2024—and from all pre-contract communications, the existence of the geotechnical study and the adverse conclusions contained therein, despite knowing that contractors and subcontractors would rely on the accuracy and completeness of the RFP information.

16. Astrobryxa, through its representatives present at the site visit, reasonably relied on CELEC's affirmative misrepresentations and omissions in proceeding with performance under the Civil Engineering Contract.

17. CELEC possessed superior and exclusive knowledge of subsurface conditions.

18. By issuing the RFPs and making partial disclosures, CELEC assumed a duty to disclose material facts.

19. Astrobryxa reasonably relied on CELEC's omissions and representations.

20. As later confirmed by geotechnical analysis and expert evaluation, the actual soil conditions materially differed from those represented or implied by CELEC and required substantial additional work.

21. Those conditions caused delays, increased costs, and non-performance issues.

22. Astrobryxa performed additional, unplanned work.

23. Astrobryxa has not been fully compensated.

24. Astrobryxa suffered damages as a result.

Additional Allegations (Defamation / Improper Conduct)

25. After Astrobryxa served its initial disclosures in this action identifying individuals with knowledge of relevant facts, CELEC, through its attorneys and agents, directly contacted certain of those identified individuals.

26. CELEC's communications were sent to third parties, including individuals with business relationships with Astrobryxa.

27. These communications began as purported inquiries but included statements and implications regarding alleged "fraud against CELEC."

**De:** pulecioboekd@gtlaw.com <pulecioboekd@gtlaw.com>
**Enviado:** miércoles, marzo 18, 2026 3:53:11 a. m.
**Para:** edgar.manrique@outlook.es <edgar.manrique@outlook.es>
**Asunto:** Celec v. Progen and Astrobryxa

Edgar:

We represent CELEC against Progen, Astrobryxa and several other parties.

Astrobryxa recently listed you as a person with possible knowledge regarding the case. See attached.

Please let me know when we can have a call.

We are considering fraudulent transfer claims against anyone who received funds in connection with the fraud against CELEC. Your cooperation in this matter will be noted.

Regards,

Daniel

**Daniel Pulecio-Boek**
Shareholder
Chair Washington DC Cross-Border Disputes Group

28. Specifically, CELEC stated: "We are considering fraudulent transfer claims against anyone who received funds in connection with the fraud against CELEC. Your cooperation in this matter will be noted."

29. CELEC's email implicates Astrobryxa in "fraud against CELEC." And it threatens any potential witness who does not "cooperate" with legal action.

30. CELEC's email published to third parties, including business partners and potential customers of Astrobryxa, contained a false statement of material fact (i.e., that Astrobryxa committed fraud) that was either knowing, reckless, or negligent, and, in doing so, CELEC caused Astrobryxa to suffer actual damages, including damages to Astrobryxa's credit, property, and business.

31. The statements were made outside the confines of formal judicial proceedings.

32. The statements were false, misleading, and not privileged.

33. CELEC knew or should have known that such statements would be communicated to third parties and would harm Astrobryxa's reputation.

34. The statements were made with malice or reckless disregard for the truth.

35. The statements were published to third parties, including business partners and potential customers of Astrobryxa.

36. As a result, Astrobryxa suffered reputational harm and economic damages.

37. For example, Astrobryxa entered into a contract with a Spanish firm under which it would perform services valued at approximately €19,400,000 (the "Spain Contract").

38. Following dissemination of CELEC's statements, including through media and public channels, the Spanish firm became aware of the allegations.

39. The Spanish firm terminated its contract with Astrobryxa as a result of the negative publicity.

40. CELEC's statements were a substantial factor causing that termination.

41. CELEC's conduct was intentional and designed to pressure third parties and harm Astrobryxa.

42. The threat implicit in the email is clear to any layperson. CELEC's attorney took CELEC's allegations outside this judicial proceeding and inferred potential reprisals if witnesses did not "cooperate." The statement—that last sentence—was made with malice and with the intent to injure Astrobryxa. Although the email began innocently enough as an apparent attempt to speak with potential witnesses, it ended with a scare tactic—help CELEC take down Astrobryxa, or else.

The email fell well outside the boundaries of this litigation, and, as described above, it was effective in achieving its intent.

## COUNT I: Fraudulent Concealment

43. Astrobryxa incorporates by reference paragraphs 1–24.

44. CELEC concealed or failed to disclose material facts regarding subsurface soil conditions at the Salitral plant site.

45. CELEC knew or should have known that these material facts should not be concealed and were necessary to prevent its disclosures from being misleading.

46. CELEC acted in bad faith by withholding the geotechnical study and related information.

47. CELEC knew that by concealing these facts, contractors and subcontractors, including Astrobryxa, would be induced to undertake and perform work under materially false assumptions.

48. CELEC had a duty to disclose these facts based on Ecuadorian law as well as its superior knowledge, its partial disclosures, and its affirmative representations regarding site conditions.

49. Astrobryxa reasonably relied on CELEC's omissions and representations in performing civil engineering and foundation works.

50. Astrobryxa suffered damages as a direct and proximate result of CELEC's omissions and representations.

## COUNT II: Fraud By Omission

51. Astrobryxa incorporates by reference paragraphs 1–24.

52. CELEC concealed or failed to disclose material facts regarding subsurface soil conditions despite having:

- superior and exclusive knowledge of those conditions,

- possession of the geotechnical study, and

- undertaken to provide project information through the RFP and related communications.

53. CELEC knew or should have known that such information was necessary to make its disclosures not misleading.

54. CELEC knew and intended that contractors and subcontractors, including Astrobryxa, would rely on the incomplete information.

55. Astrobryxa detrimentally relied on CELEC's omissions in executing the Civil Engineering Contract and performing its work.

56. As a direct and proximate result, Astrobryxa incurred substantial additional costs and damages.

**COUNT III: Negligent Misrepresentation (Alternative)**

57. Astrobryxa incorporates by reference paragraphs 1–24.

58. CELEC supplied incomplete information regarding site conditions in the RFP and subsequent communications, by omitting material information regarding adverse subsurface soil conditions at the Salitral plant.

59. CELEC was negligent in making these representations because it knew or should have known, based on its geotechnical study and prior site conditions, that the information was incomplete or inaccurate.

60. CELEC intended that contractors and subcontractors would rely on this information.

61. Astrobryxa justifiably relied on these representations in executing the Civil Engineering Contract and performing its work.

62. Astrobryxa suffered damages as a result.

## COUNT IV: Violation Of Florida Deceptive & Unfair Trade Practices Act (FDUTPA)

63. Astrobryxa incorporates by reference paragraphs 1–42.

64. CELEC engaged in trade or commerce by issuing a publicly available RFP and procuring contractors for the Salitral project.

65. CELEC engaged in deceptive and unfair acts or practices, including:

- omitting material geotechnical information from the RFP;

- misrepresenting the absence of geotechnical constraints;

- providing misleading information regarding subsurface conditions and prior installations.

66. These acts were likely to mislead reasonable contractors and subcontractors and were unethical, oppressive, and substantially injurious.

67. CELEC's conduct caused Astrobryxa to incur substantial economic damages, including increased costs and uncompensated work.

68. Astrobryxa is entitled to recover actual damages and all relief available under Fla. Stat. § 501.211. Astrobryxa is also entitled to its reasonable attorneys' fees under Fla. Stat. § 501.2105.

## COUNT V: Defamation

69. Astrobryxa incorporates by reference paragraphs 25-42.

70. CELEC published statements to third parties accusing or implying that Astrobryxa engaged in fraud.

71. These statements were false statements of material fact.

72. CELEC made these statements knowingly, recklessly, or negligently.

73. The statements were not privileged because they were made outside the scope of judicial proceedings and to third parties not necessary to the litigation.

74. CELEC intended or reasonably should have expected that the statements would harm Astrobryxa's reputation and business relationships.

75. Third parties, including business partners, relied on or were influenced by the statements.

76. Astrobryxa suffered damages, including:

- loss of business opportunities;

- termination of the Spain Contract;

- reputational damage;

- other consequential losses.

77. CELEC acted with express malice, entitling Astrobryxa to all available damages.

**COUNT VI: Business/Commercial Disparagement**

78. Astrobryxa incorporates by reference paragraphs 25–42.

79. CELEC, through its agent, disparaged Astrobryxa.

80. CELEC published or communicated a falsehood to a third party—specifically, that Astrobryxa committed fraud against CELEC.

81. CELEC knew or reasonably should have known that publishing the falsehood would likely result in inducing others not to deal with Astrobryxa. In fact, the falsehood has played a material and substantial role in inducing others not to deal with Astrobryxa.

82. As a proximate cause of the published falsehood, Astrobryxa has suffered special damages.

83. For example, Astrobryxa had signed a contract with a Spanish firm. In exchange for its services—remodeling 52 properties—Astrobryxa would be paid approximately €19,400,000. However, CELEC's email was disseminated to the public and was covered in the local news media and on social media. The Spanish firm saw the media coverage, including coverage related to the email, and terminated the contract. The Spanish firm stated that the termination of the contract was due to the negative media coverage related to the email.

**COUNT VII: Tortious Interference with Contractual and Business Relationships**

84. Astrobryxa incorporates by reference paragraphs 25–42.

85. CELEC's email constitutes tortious interference with Astrobryxa's existing contractual relationships.

86. CELEC's email was an intentional and unjustified interference with the existing relationships. The purpose of the email was clearly to intimidate potential witnesses into "cooperating" with CELEC, an arm of the Ecuadorian government. Some of those potential witnesses had business relationships with Astrobryxa. And, due to local media coverage surrounding this litigation, other business partners of Astrobryxa learned about the email and terminated their partnerships. CELEC's email not only sought to intimidate but to cast aspersions on Astrobryxa.

87. Because of CELEC's conduct, Astrobryxa has suffered damage as a result of the breach of the relationships.

88. It is believed CELEC (and, by extension, its attorneys) likely knew of these business relationships.

89. CELEC's email messaging was an intentional and unjustified interference with Astrobryxa's business relationships.

90. CELEC's conduct caused Astrobryxa to suffer damages in the form of lost business relationships and the revenue and other pecuniary benefits that came along with those relationships (including, for example, referrals of new business). For example, Astrobryxa had signed a contract with a Spanish firm. In exchange for its services—remodeling 52 properties—Astrobryxa would be paid approximately €19,400,000. However, CELEC's email was disseminated to the public and was covered in the local news media and on social media. The Spanish firm saw the media

coverage, including coverage related to the email, and terminated the contract. The Spanish firm stated that the termination of the contract was due to the negative media coverage related to the email.

**PRAYER**

WHEREFORE, having asserted its Counterclaims, Astrobryxa demands judgment for damages in its favor and against CELEC, that it be awarded its taxable costs, and reasonable attorneys' fees pursuant to Fla. Stat. § 501.2015. Astrobryxa also reserves the right to request punitive damages as to its Counterclaims.

**Dated:** **June 16, 2026**

Respectfully submitted,

FERGUSON BRASWELL FRASER KUBASTA PC

*/s/ Enrique A. Jaramillo Vargas*
**Enrique A. Jaramillo Vargas\***
Texas Bar No. 24132917
*Admitted Pro Hac Vice*
ejaramillo@fbfk.law
**Kenneth H. Holt**
Texas Bar No. 00793012
*Admitted Pro Hac Vice*
kholt@fbfk.law
3200 Southwest Freeway, Suite 3200
Houston, Texas 77027
T: (713) 403-4200
F: (713) 403-4201

\*Designated Lead Counsel
(L.R. 2.02(a))
*-and-*

PRUSASKI-LAW, P.A.

**Christopher W. Prusaski**
Florida Bar No. 121525
7879 Red River Road
West Palm Beach, Florida 33411
Telephone: (561) 310-6680
Email: chris@prusaski-law.com

*Attorneys for Defendant Astrobryxa, S.A.*

## CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2026, a true and correct copy of the foregoing Answer was served on all parties of record, via the Court's CM/ECF system.

/s/     *Enrique A. Jaramillo Vargas*
**Enrique A. Jaramillo Vargas**