**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

CELEC EP,

      Plaintiff,

v.                                                                    Case No. 8:25-cv-3433-WFJ-SPF

PROGEN INDUSTRIES, LLC;
GENERTEK POWER CORP.;
GENERTEK POWER INDUSTRIES,
LLC; JOHN B. MANNING; W. WADE
MANNING; ANDREW S. WILLIAMSON;
ASTROBRYXA, S.A.; ASTROBYXA, LLC;
AP INSPECTIONS LATINOAMERICA, S.A.;
A.P. INSPECTIONS LLC; H&S INDUSTRY, LLC;
TWO LIONS HOLDING, LLC; AOT HOLDINGS
AG; GESTORES INMOBILIARIOS
LIGHTBLUE, S.A.; and DOES 1-95,

      Defendants.

_____

PROGEN INDUSTRIES, LLC,

      Counter-Plaintiff,

v.

CELEC EP,

      Counter-Defendant;

_____/

**PROGEN DEFENDANTS' MOTION FOR PROTECTIVE ORDER
REGARDING PLAINTIFF'S NOTICE OF INTENT TO SERVE SUBPOENAS
ON NINE ADDITIONAL NON-PARTIES AND SUBPOENA PROGRAM**

Pursuant to Federal Rule of Civil Procedure 26(c), Defendants Progen

Industries, LLC ("Progen"), Genertek Power Corp., Genertek Power Industries,

LLC, John B. Manning, W. Wade Manning, Andrew S. Williamson and Two Lions Holdings, LLC (collectively, the "Progen Defendants") move for a protective order precluding Plaintiff CELEC EP's ("CELEC" or "Plaintiff") enforcement of subpoenas on nine additional non-parties noticed on June 5, 2026, and from seeking further irrelevant financial and business information from non-parties that harm Progen's business.

## **INTRODUCTION**

CELEC has served forty-one (41) subpoenas in just four months—a relentless campaign of discovery abuse that must end. What began as a subpoena to Regions Bank for Progen Industries, LLC's ("Progen") accounts has metastasized into an unprecedented fishing expedition spanning financial institutions, clearing houses, the Federal Reserve Bank of New York, and dozens of third-party businesses, including many with no connection whatsoever to the matters disputed in this litigation. CELEC's conduct is not discovery, it is harassment designed to cripple the Progen Defendants' business operations while feeding a political agenda thousands of miles away.

Progen Defendants do not base this Motion on the grounds that Plaintiff may not conduct discovery to trace funds they incorrectly allege were wrongfully dissipated. Plaintiff has already done that. Through the Regions Bank subpoena alone, CELEC can see precisely where every dollar flowed from the account to which Progen received payment from CELEC for performance of the Contracts at

issue. Through additional subpoenas, CELEC has obtained records from Andrew Williamson's accounts, Astrobryxa's accounts, and others through over 35 other subpoenas. Yet, CELEC refuses to stop at the bounds of permissible discovery. It continues to serve subpoenas on entity after entity (nine, this time around), not because CELEC needs more information to litigate this case, but because each new subpoena generates material for CELEC's political campaign in Ecuador.

These nine additional subpoenas seek irrelevant information, are harming the Progen Defendants, and are not proportional to the needs of the case.

First, CELEC is blindly subpoenaing entities, including Progen's clients, which have no relation to this litigation. Second, CELEC's conduct is causing concrete, irreparable harm to the Progen Defendants' business operations. Subpoenaed third parties, many of which are Progen's clients or providers, are questioning whether they should continue doing business with Progen because CELEC is burdening them with subpoenas simply because they conducted legitimate business with Progen. CELEC has placed years of carefully cultivated commercial relationships at risk.

Third, CELEC is exploiting American discovery mechanisms, not to resolve the dispute before this Court, but to advance its political scapegoating campaign and criminal prosecution of Ecuadorian citizens and officials in Ecuador. This litigation has always been CELEC's attempt to deflect blame for its own failures:

its troubled energy sector, its interference with Progen's contract performance, its mismanagement of the Contracts, its top management's admitted corruption in concert with Astrobryxa, and its wrongful termination of both Contracts after Progen delivered forty-six generators to Ecuador. Following orders of the Ecuadorian President himself, CELEC brought this litigation to appease its constituents' frustrations with Ecuador's government. *See*, e.g., **Exhibit A**, President Daniel Noboa's post on X dated December 16, 2025.

According to CELEC's counsel, and as publicized in Ecuadorian media, CELEC has engaged in a "subpoena program." **Exhibit B**, Screenshot of video published by Ecuavisa displaying publicly disclosed report prepared by Greenberg Traurig. CELEC's "subpoena program" has permitted it to: "identify principal downstream recipients of the funds Progen received from CELEC, the secondary recipients of the funds Astrobryxa received from Progen, and a preliminary inventory of identifiable real property assets held by certain Defendants." Ex. B. And yet, CELEC's counsel has "additional subpoena targets." Ex. B. A senior Ecuadorian government official published details of information obtained through CELEC's "subpoena program" on his social media platforms. He promised his Ecuadorian constituents to continue these "investigations" to hold those involved accountable "nationally and internationally." **Exhibit C**, Automated Translation of Transcript of video posted by Jose Julio Neira on X.

The abusive "subpoena program" to obtain information for promotion of the government of Ecuador's campaign must end. CELEC's discovery abuse is harming the Progen Defendants' business relationships, serves no legitimate litigation purpose, and violates the fundamental purpose of Rule 26(c). The Progen Defendants respectfully request that this Court enter a protective order (i) prohibiting enforcement of the subpoenas noticed on June 5, 2026; (ii) prohibiting Plaintiff from serving additional subpoenas seeking irrelevant information from third parties without leave of court; and (iii) prohibiting the use of information obtained through subpoenas already issued for any purpose other than the advancement of this litigation.

## **FACTUAL BACKGROUND**

1.      This action arises out of two contracts between CELEC and Defendant Progen Industries, LLC ("Progen"): (a) the Quevedo Contract, for the supply and installation of 20 power generators, and (b) the Salitral Contract, for the supply and installation of 29 power generators (collectively, the "Contracts"). The issues before this Court are, at their core: (i) whether Progen performed under the Contracts and received payments from CELEC as earned compensation for goods and services actually delivered under the Contracts, not as proceeds of theft; (ii) whether Progen made material misrepresentations or forged documents to obtain the Contracts; (iii) whether Progen conspired with other Defendants, including the

principals of Astrobryxa, who had undisclosed familial ties to CELEC officials, or whether those principals acted as CELEC's agents to induce Progen; and (iv) whether CELEC interfered with and sabotaged Progen's performance and scapegoated Progen for its own failures. None of these issues require, or is advanced by, CELEC's "subpoena program", served on many non-parties who have played no role in the events alleged in the Amended Complaint or the Counterclaim.

2.     On February 13, 2026, Plaintiff served on the Progen Defendants a notice of intent to serve subpoenas on Regions Bank. On March 3, 2026, Plaintiff served notices of intent to serve subpoenas on Lakeland Electric and Pacific Gas & Electric Company. The Progen Defendants did not object. Additionally, on March 5, 2026, Plaintiff served notices of intent to serve subpoenas on the Federal Reserve Bank of New York and the Clearing House Payments Company L.L.C. On April 23, 2026, Plaintiff served on the Progen Defendants a notice of intent to serve subpoenas on twenty-four non-party entities and individuals. Progen filed a Motion for Protective Order based on the excessive and abusive subpoenas. The motion was denied and CELEC has continued its "subpoena program." On June 5, 2026, Plaintiff served another notice of intent to serve subpoenas on nine individuals, financial institutions, and business entities. **Exhibit D,** CELEC's Notice of Intent to Serve Subpoenas dated June 5, 2026.

6

3.      The nine Subpoenas noticed on June 5, 2026 (the "Additional Subpoenas") target two financial institutions (Standard Chartered Bank and Edward D Jones and Company, L.P.), five business entities (Renewable Investment Corp., Via Energy Solutions LLC, Kronos Saashr, Inc., Accent Financial Corporation, and Wonderland Escrow, Inc. Trust Account), and two Progen employees (Garrett K. Williamson and Shane Lawlor). The Additional Subpoenas seek, among other items, all account statements, financial records, cardholder agreements, transaction records, credit applications, compliance reviews, and records of any holds or restrictions for accounts held by any Defendant or the principals of Astrobryxa. They also seek documents reflecting or relating to: (i) any contract or agreement between any Defendant and CELEC; (ii) any payment made to or received from any Defendant; and (iii) the ownership, membership, management, or control of the subpoenaed entity. In addition to the categories sought from business entities, the Individual Subpoena to Garrett Williamson seeks: all documents reflecting any employment or consulting relationship with Progen; documents supporting any claim that payments from Progen were legitimate; all communications since December 16, 2025 relating to this lawsuit or any payment; and documents showing the source of funds used to purchase residences. Garret Williamson and Shane Lawlor objected to the subpoenas.

## <u>LEGAL STANDARD</u>

A party may move for a protective order to challenge non-party subpoenas that seek irrelevant information and prevent the production of documents responsive to abusive non-party subpoenas. *See Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla.) (Glazebrook, M.J.) ("As parties, Defendants clearly have standing to move for a protective order if the subpoenas seek irrelevant information."); *Cluck-U Chicken, Inc. v. Cluck-U, Corp.*, Case No.: 8:15-CV-2274, 2017 WL 10275958, at *2 (M.D. Fla. Jan. 3, 2017). Under Rule 26(c), "the court where the action is pending [...] may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1).

This protection extends to discovery requests that seek irrelevant information and are disproportionate to the needs of the case. *Grayson v. No Labels, Inc.*, No. 6:20-CV-1824-PGB-LRH, 2021 WL 8199893, at *4 (M.D. Fla. Oct. 15, 2021), *aff'd*, No. 6:20-CV-1824-PGB-LRH, 2021 WL 8199894 (M.D. Fla. Nov. 17, 2021) ("[P]arties have standing to move for a protective order if a subpoena seeks irrelevant information.") (internal citations ommitted); *JWD Auto., Inc. v. DJM Advisory Grp. LLC*, 317 F.R.D. 587, 588–589 (M.D. Fla. 2016) ("Defendants may properly interpose objections on relevance and proportionality grounds to the discovery Plaintiff seeks to obtain from [a third party] by subpoena."). Discovery sought for purposes other than the litigation at hand is improper. *In re*

*Sanomedics, Inc.*, 583 B.R. 796, 797 (Bankr. S.D. Fla. 2018). A court evaluating discovery may consider the purpose for which a party seeks information, and when the purpose is to gather information for use in proceedings other than the pending suit, discovery is properly denied. *Id.* at 800.

A motion for protective order is timely if it is filed before "the date the discovery material was to be produced. *Grethaka Solutions OÜ v. Click Labs, Inc.*, Case No. 8:22-cv-1341, 2023 WL 2681907 at *3 (M.D. Fla. Feb. 14, 2023) (Flynn, M.J.).  Here, the Additional Subpoenas command production by July 6, 2026, and this motion is filed in advance of that deadline.

## **ARGUMENT**

CELEC's "subpoena program" is an extension of CELEC's campaign of harassment against the Progen Defendants and their business partners. CELEC is not using these Subpoenas to advance the resolution of this dispute—it is using them to generate material for a political and media campaign in Ecuador. In its careless process, it is causing concrete harm to the Progen Defendants' business relationships. Each of the Additional Subpoenas exceeds the bounds of permissible discovery under Rule 26 and warrants a protective order.

### I. The Subpoenas Seek Irrelevant Information from Entities with No Connection to the Contracts at Issue.

As part of its scattershot "subpoena program," CELEC has issued discovery demands to Progen's customers, service providers, and business partners—entities with no involvement in any events relevant to this litigation. Given their

irrelevance to this litigation, a protective order is warranted. *JWD Auto. Inc.*, 317 F.R.D. at 588–589.

CELEC subpoenaed, for example, Via Energy Solutions LLC, an entity that became Progen's customer ***after*** CELEC terminated the Contracts. To Progen Defendants' knowledge, Via Energy never participated in nor possesses any knowledge of the Contracts or any matter at issue in this litigation. CELEC also subpoenaed lenders such as Renewable Investment Corp. and Swift Funding Source Inc., both of which provided financing to Progen that was entirely unrelated to the Contracts. Indeed, Swift Funding's loan came after CELEC terminated the Contracts; the only arguable, remote, connection is that Progen's need for financing resulted from CELEC's own mismanagement of the Contracts.

The broad scope of CELEC's requests underscores their irrelevance. CELEC seeks "[a]ll documents, communications, or records reflecting or relating to any payment made to or received from any Defendants/Subject Entity" from entities like Via Energy—a customer with no connection to the Contracts or any issue in dispute. No payment transaction between Progen Defendants and Via Energy is relevant to this dispute because Via Energy plays no part in the issues in dispute. As for Renewable Investment Corp., the fact that Progen repaid an unrelated loan from an account that also received CELEC payments is already evident from the Regions Bank statements CELEC has obtained. Subpoenaing Renewable Investment Corp. directly will not advance any issue in this case—it will merely

confirm what CELEC already knows. Rule 26(b)(2)(C)(i) (the Court must protect parties or persons from any "unreasonably cumulative or duplicative" request); *See Mchale v. Crown Equipment Corporation*, Case No. 8:19-cv-707, 2020 WL 8224617 at *1 (M.D. Fla. Aug. 1, 2020) (Flynn, M.J.) ("[A]lthough broad, the scope of discovery is not without limits.").

By way of further example, CELEC also subpoenaed Kronos Saashr, Inc., Progen's payroll service provider. Neither Progen's contract with Kronos Saashr nor any transactions between them is relevant. Ordinary payroll records—routine wages, hours, and withholdings for Progen's rank-and-file employees—bear on none of the issues in this case and cannot make any element of CELEC's fraud, RICO, FDUTPA, conversion, constructive-trust, or fraudulent-transfer claims more or less probable. The fraudulent transfer claim is confined to transfers to the named Transferee Defendants—not legitimate employee compensation paid in the ordinary course of business.

CELEC further requests documents reflecting or relating to the "ownership, membership, management or control" of the subpoenaed entities. The internal management structures of Renewable Investment Corp., Via Energy Solutions LLC, Kronos Saashr, and Progen's other customers and service providers, have no bearing on any issue in this litigation—not CELEC's tracing of Progen's funds, not whether the Contracts were procured through fraud, not allegations of non-

11

performance, not whether inspections were properly issued, and not whether Progen dissipated funds to insiders and related entities.

Because these subpoenaed entities had nothing to do with the Contracts or any fact at issue in this dispute, all information sought from them is entirely irrelevant, and a protective order is warranted. *See Grayson,* 2021 WL 8199893, at *4 ("[P]arties have standing to move for a protective order if a subpoena seeks irrelevant information.").

## II. The Subpoenas Are Oppressive and Burdensome Because They Disrupt the Progen Defendants' Business Relationships.

Rule 26(c) authorizes protective orders to shield parties from "annoyance, embarrassment, oppression, or undue burden." Fed. R. Civ. P. 26(c)(1). CELEC's Subpoenas are inflicting precisely this type of harm. Progen Defendants have received complaints from their business partners, legitimate customers and service providers, demanding to know why they are being dragged into this litigation. These entities contracted with Progen for legitimate business purposes and are now being led to believe, incorrectly, that Progen is a problematic business partner. As a result, these third parties are questioning whether they can continue their relationships with Progen.

Moreover, CELEC's targeting of Progen employees with subpoenas is creating a disruptive environment that undermines Progen's business operations. The subpoena directed to Garrett K. Williamson seeks highly personal

12

information, including documents showing the source of funds used to purchase a residence—invasive discovery that has no relevance to the issues in dispute. Subpoenas issued to Progen Defendants' employees also create an unpleasant work environment for valuable personnel and distract them from their responsibilities.

CELEC is succeeding at annoying, burdening, and oppressing Progen's operations and Progen needs the Court's protection.

### III.   The "Subpoena Program" is Not Proportional to the Needs of This Case Because They Serve CELEC's Political Campaign in Ecuador, Not the Resolution of This Dispute.

Rule 26(b)(1) limits discovery to matters "proportional to the needs of the case, considering [...] the importance of the discovery in resolving the issues..." Fed. R. Civ. P. 26(b)(1); *See Future Metals LLC v. Lazzara*, No. 8:20-cv-2899-CEH-SPF, 2021 WL 1920396, at *3 (M.D. Fla. Apr. 5, 2021) (granting protective order where discovery was "disproportionate"). The Additional Subpoenas, and CELEC's "subpoena program," fail this test. They are not designed to resolve this dispute. They are designed to advance CELEC's political objectives in Ecuador. *See In re Sanomedics, Inc., 583 B.R. at 800* (finding that when the purpose of discovery is to gather information for use other than in the pending suit, discovery is properly denied).

The handling of CELEC's 41 subpoenas is clear evidence of CELEC's true intentions. The Ecuadorian Press reported that on June 17, 2026, Jose Julio Neira,

13

the General Secretary for Public Administration and a member of CELEC's Board of Directors, publicly temporarily posted on his social media platform a detailed report prepared by Greenberg Traurig summarizing the subpoenas CELEC has issued in this case and the information obtained from them, along with an accompanying video. Ex. C; **Exhibit E,** Automated Translation of Transcript of video posted by Ecuavisa Noticias on June 17, 2026. Ecuadorian media seized upon this disclosure of information allegedly meant for use in this litigation alone and downloaded the Greenberg Traurig report. *See* **Ex. E,** minute 0:01:20 to 0:01:26; *See* e.g. **Composite Exhibit F**, Sample of news articles covering Jose Julio Neira's post.

In his video, Mr. Neira described precisely CELEC's use of American discovery as a tool in ongoing Ecuadorian "investigations." He told Ecuadorian citizens:

> *"because we [Ecuadorian citizens] all want to know who took the money from the Progen contracts, we [the Ecuadorian government] **have not stopped pursuing investigations both in Ecuador and abroad.** Today, Ecuadorians, we bring answers that we all need. **Thanks to international cooperation with the United States of America and the application of the RICO Act**, the government of President Daniel Noboa is moving forward with firm steps toward the recovery of what appears to be one of the greatest heists that caused the worst energy crisis in recent times."*

Exhibit C, minutes 0:00:20 to 0:00:40 (*emphasis added*)

Mr. Neira then detailed specific transfers between Ecuadorian citizens, information CELEC obtained through its "subpoena program" via this litigation

and used for the media campaign in Ecuador.

Mr. Neira's promise to the Ecuadorian public was telling: "***we will not
stop***." Ex. C, minute 0:03:29 (*emphasis added*).

He continued detailing the real intended use of information obtained
through these subpoenas in Ecuador:

> *"**I have directed the General Secretariat of Public Integrity
> to analyze the measures within the scope of its authority** to
> prevent these acts of corruption from going unpunished nationally
> and internationally."*
>
> *"Likewise, **the available information has been brought to the
> attention of UAFE [Ecuador's Financial and Economic
> Analysis Unit]** so that, in the exercise of its legal and technical
> powers, it may analyze the possible existence of unusual or unjustified
> operations and **consider the adoption of the measure** of freezing
> funds."*

Exhibit C, minute 0:03:58 (<em>emphasis added</em>)

CELEC is using American discovery as a tool to prosecute Ecuadorian
citizens in Ecuador—not to advance the contract dispute before this Court.
CELEC's Director is publicly boasting to Ecuadorians that they "will not stop" with
their "subpoena program" and the Ecuadorian Press has amplified this messaging.
Ex. B; *see* Ex. E.

Discovery weaponized for foreign political objectives rather than resolution
of the dispute before this Court cannot satisfy Rule 26(b)(1)'s proportionality
requirement. *See JWD Auto., Inc.,* 317 F.R.D. at 587, 588–589 (parties may object
to discovery on proportionality grounds). **CELEC was given latitude to**

15

**conduct non-party discovery, and it has abused that latitude. This Court should not permit its processes to be hijacked for foreign political gains.**

## CONCLUSION

The Additional Subpoenas are irrelevant, oppressive to Progen defendants, and not proportional to the needs of the case. CELEC is not using its "subpoena program" (now encompassing forty-one subpoenas, with more "subpoena targets" promised), to obtain relevant information and advance the resolution of this dispute. *See* Ex. B. This abuse of this Courts' discovery processes is causing concrete harm to the Progen Defendants' business relationships. The Progen Defendants need protection.

WHEREFORE, the Progen Defendants respectfully request that this Court enter a protective order: (i) prohibiting enforcement of the Additional Subpoenas noticed on June 5, 2026; (ii) prohibiting Plaintiff from serving additional subpoenas seeking irrelevant information from third parties without leave of court; and (iii) prohibiting the use of information obtained through subpoenas already issued for any purpose other than the advancement of this litigation.

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Pursuant to Local Rule 3.01(g), the Progen Defendants' counsel conferred with Plaintiff's counsel on July 1, 2026, via video conference, and Plaintiff's counsel opposes the relief sought herein.

Dated: July 2, 2026

Respectfully submitted,

*/s/ Adolfo E. Jiménez*
Adolfo E. Jiménez
Florida Bar No. 869295
Email: Adolfo.Jimenez@hklaw.com
Gabriella A. Lanzas
Florida Bar No. 1059806
Email: Gabriella.Lanzas@hklaw.com
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799

and

Jason H. Baruch
Florida Bar No. 10280
Jason.baruch@hklaw.com
Anne Colbert
Florida Bar No. 1026226
anne.colbert@hklaw.com
Allison M. Powers
Florida Bar No. 1025549
allison.powers@hklaw.com
HOLLAND & KNIGHT LLP
100 N. Tampa Street, Suite 4100
Tampa, FL 33602
Telephone: (813) 227-8500
Facsimile: (813) 229-0134 (fax)

*Attorneys for Defendants Progen
Industries, LLC; Genertek Power Corp.;
Genertek Power Industries, LLC; John B.
Manning; W. Wade Manning; and
Andrew S. Williamson*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 2, 2026, I electronically served Progen Defendants' Motion for Protective Order Regarding Notice of Intent to Serve Subpoenas on Nine Additional Non-Parties and Subpoena Program on all counsel of record.

*/s/Adolfo E. Jiménez*
Adolfo E. Jiménez