## THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

CELEC EP,

        Plaintiff,

v.

PROGEN INDUSTRIES, LLC, et. al.,

        Defendants.

Case No. 8:25-cv-03433-WFJ-SPF

## PLAINTIFF CELEC EP'S MOTION TO DISMISS
## ASTROBRYXA, S.A.'S AMENDED COUNTERCLAIMS

Plaintiff and Counter-Defendant CELEC EP ("CELEC"), respectfully moves to dismiss Defendant/Counter-Plaintiff Astrobryxa, S.A.'s ("Astrobryxa") Amended Counterclaims [DE 154] (the "Counterclaims") with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(6), and in support states as follows:

## INTRODUCTION

Astrobryxa's Amended Counterclaims (DE 154) are not a good-faith plea for relief; they are a litigation counterpunch meant to retaliate against CELEC for pursuing accountability for a nearly $110 million international fraud scheme arising from Ecuador's 2024 energy-crisis. But Rule 12(b)(6) requires plausible, fact-based claims—not conclusions. Astrobryxa offers only conclusions, inviting the Court to infer duties that do not exist, reliance that is not alleged, causation that is speculative, malice that is intoned but not pled, and damages that are unmoored from CELEC's conduct. The pleading standard demands more; the Counterclaims deliver far less.

Astrobryxa's first theory seeks to convert a private dispute under a subcontract between Astrobryxa and Progen Industries, LLC ("Progen") into tort liability against CELEC, which is not a party to that subcontract. The law does not allow a nonparty to be drafted into another's bargain by the alchemy of conclusory tort labels. The Counterclaims cite no factual allegations that CELEC assumed any duty arising from, interfered with, or otherwise inserted itself into the Astrobryxa–Progen subcontract, nor do they plausibly plead that any CELEC act caused Astrobryxa's alleged subcontract injuries. Instead, Astrobryxa asks the Court to bridge the gap with conjecture. Rule 12(b)(6) bars that leap.

Astrobryxa's second theory fares no better. It targets a single email sent by CELEC's counsel to unrepresented witnesses whom Astrobryxa itself identified in its Rule 26(a)(1) initial disclosures. There is nothing actionable in counsel contacting disclosed witnesses. From this solitary and facially routine communication, Astrobryxa attempts to spin claims sounding in duty, malice, and damages. But labels do not substitute for allegations, and the absence of factual detail is dispositive.

This Court need not—and under Rule 12(b)(6), should not—permit counterclaims to proceed on such attenuated and conclusory premises. Because neither the subcontract dispute to which CELEC is a stranger nor the single email states a plausible claim for relief, the Amended Counterclaims should be dismissed with prejudice.

## BACKGROUND

This action arises from Defendants' fraudulent scheme to obtain nearly $110 million from CELEC, the Ecuadorian state-owned electric utility, in connection with an

emergency procurement of thermal power generators during Ecuador's 2024 energy crisis

*See* DE 128.  Defendant Progen falsified bid documents, orchestrated sham inspection

reports, and failed to deliver a single functional generator under either the Quevedo

Contract (valued at $49,700,000) or the Salitral Contract (valued at $99,400,000).  *Id.*

Astrobryxa is an Ecuadorian entity that served as Progen's subcontractor on these

projects. *See* DE 154 ¶ 2.  Astrobryxa is not a party to, nor named in, either the Quevedo

Contract or the Salitral Contract between CELEC and Progen. *See* DE 128 at Exs. B, E.

## ARGUMENT

To survive a motion to dismiss, a complaint "must contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v.*

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570

(2007)); *see* Fed. R. Civ. P. 12(b)(6).  Claims sounding in fraud are subject to the

heightened pleading standard of Rule 9(b), which requires a party to "state with

particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

**I.**     **Counterclaims I–III fail because Astrobryxa cannot plead the essential elements
of these fraud-based claims and because they do not meet Rule 9(b)'s heightened
pleading standards.**

Counterclaims I–III (Fraudulent Concealment, Fraud by Omission, and Negligent

Misrepresentation) all arise from Astrobryxa's civil engineering subcontract with *Progen—*

<u>not</u> CELEC.[1]  Each of these three counts is premised on the same theory: that CELEC

---

[1] Although Astrobryxa does not attach it to its Counterclaims, Astrobryxa has produced the subcontract
to CELEC during discovery.  Because Astrobryxa has designated it as Confidential and declined CELEC's
request for consent to file it, CELEC is unable to file it publicly in support of its Motion.  *See* DE 135 &

allegedly failed to disclose a geotechnical study identifying adverse subsurface soil conditions at the Salitral plant site before executing the Salitral contract with Progen, and that this omission (together with related site-visit statements by CELEC personnel to project participants) induced Astrobryxa to contract with Progen under materially false assumptions. *See gen.* DE 154 ¶¶ 4–20.

As discussed below, these claims fail for several reasons, the primary one being that Astrobryxa was neither a party to, nor an intended third-party beneficiary of, the Salitral contract (or any other agreement with CELEC). Rather, Astrobryxa is a downstream subcontractor that was engaged by Progen to supposedly perform civil engineering work in furtherance of Progen's contracts with CELEC. *Id.* ¶¶ 2–3.

Astrobryxa's theory of liability is legally untenable. Astrobryxa does not allege that it contracted with CELEC, submitted a bid to CELEC, negotiated with CELEC, or otherwise participated in CELEC's procurement process. Nor does it plausibly allege that CELEC undertook to provide information directly to Astrobryxa or assumed any legal duty to disclose information to Astrobryxa independent of its dealings with Progen. Instead, Astrobryxa seeks to recover purely economic losses arising from its subcontract with Progen by recasting alleged pre-contract omissions and statements directed to another party as torts against CELEC. Florida law does not permit such an expansion of tort liability. Accordingly, and as discussed below, Counts I–III should be dismissed.

---

138 (Confidentiality Agreement). CELEC will separately seek leave of Court to file it under seal as Exhibit A in support of its Motion to Dismiss.

A.    **Counts I, II and III fail because CELEC owed no duty of disclosure to Astrobryxa.**

To state a claim for fraudulent concealment under Florida law, a plaintiff must plead: (1) a material misrepresentation or suppression of truth; (2) that the defendant knew, should have known, or recklessly disregarded the falsity of the misrepresentation; (3) that the defendant intended to induce reliance; (4) that the plaintiff justifiably relied on the representation or omission; and (5) resulting damages. *Dugas v. 3M Co.*, 101 F. Supp. 3d 1246, 1253–1254 (M.D. Fla. 2015); G*rills v. Philip Morris USA, Inc.*, 654 F. Supp. 2d 1107, 1119 (M.D. Fla. 2009)); *Jones v. Gen. Motors Corp.*, 24 F. Supp. 2d 1335, 1339 (M.D. Fla. 1998).

To state a claim for fraud by omission under Florida law, a plaintiff must allege: (1) a false statement or omission of material fact; (2) knowledge of the falsity of the statement; (3) intent to induce reliance; and (4) injury resulting from the plaintiff's reliance. *Drilling Consultants, Inc. v. First Montauk Sec. Corp.*, 806 F. Supp. 2d 1228, 1236 (M.D. Fla. 2011); *Ward v. Atl. Sec. Ban*k, 777 So. 2d 1144, 1146 (Fla. 3d DCA 2001). Fraud may be predicated on the "intentional omission of a material fact." *Ward*, 777 So. 2d at 1146.

To state a cause of action for negligent misrepresentation under Florida law, a plaintiff must plead: (1) that the defendant made a misrepresentation of material fact that he believed to be true but which was in fact false; (2) that the defendant was negligent in making the statement because he should have known the representation was false; (3) that the defendant intended to induce the plaintiff to rely on the misrepresentation; and (4)

5

that injury resulted to the plaintiff acting in justifiable reliance on the misrepresentation. *Specialty Marine & Indus. Supplies, Inc. v. Venus*, 66 So. 3d 306, 309 (Fla. 1st DCA 2011); *Simon v. Celebration Co.*, 883 So. 2d 826, 832 (Fla. 5th DCA 2004).

Common to each claim, the plaintiff must also allege the defendant owed it a duty to disclose. Here, Counts I, II and III fail because CELEC owed no duty of disclosure to Astrobryxa.

Under Florida law, a cause of action does not lie for fraudulent concealment or non-disclosure except where there is a "duty to disclose." *See Williams v. Dresser Indus., Inc.*, 120 F.3d 1163, 1174 (11th Cir. 1997) ("In establishing a claim for fraudulent concealment, a plaintiff must prove that the defendant had a duty to disclose the concealed facts."); *TransPetrol, Ltd. v. Radulovic*, 764 So. 2d 878, 879–80 (Fla. 4th DCA 2000) ("A defendant's knowing concealment or non-disclosure of a material fact may only support an action for fraud where there is a duty to disclose."). A duty to disclose exists only where there is a "special relationship" between contracting parties. *Greenberg v. Miami Children's Hosp. Rsch. Inst., Inc.*, 264 F. Supp. 2d 1064, 1073 (S.D. Fla. 2003) ("Allegations of fraudulent concealment by silence must be accompanied by allegations of a special relationship that gives rise to a duty to speak."); *see TransPetrol*, 764 So. 2d at 880 (explaining a complaint must contain "allegations to support a relationship which would give rise to a duty to disclose").

Fraud by omission and negligent misrepresentation similarly require a duty to disclose. *See MidAmerica C2L Inc. v. Siemens Energy, Inc.*, 2017 WL 11218943, at *5 (M.D. Fla. Sept. 29, 2017) ("To state a claim for fraud by omission in Florida, a duty to disclose

6

must exist.  Such a duty may arise due to a [special] relationship."); *Levine v. Wyeth Inc.*, 684 F. Supp. 2d 1338, 1347 (M.D. Fla. 2010) ("To succeed in a claim for negligent misrepresentation, the plaintiff must show the defendant owed it a duty…If no duty exists, the claim must fail.") (citing *ZP No. 54 Ltd. P'ship v. Fid. & Deposit Co. of Md.*, 917 So. 2d 368, 374 (Fla. 5th DCA 2005)); *Behrman v. Allstate Life Ins. Co.*, 388 F. Supp. 2d 1346, 1351 (S.D. Fla. 2005) (finding duty must exist for fraudulent and negligent misrepresentation claims) ("Under Florida law, omissions are not actionable as [] misrepresentations unless the party omitting the information owes a duty of disclosure to the party receiving the information."); *see also In re Winn-Dixie Stores, Inc. Sec. Litig.*, 531 F. Supp. 2d 1334, 1344 (M.D. Fla. 2007) ("A defendant's omission to state a material fact is proscribed only when the defendant had a duty to disclose." (internal quotation marks omitted)).  And it requires *intent* to induce reliance by the defendant as well as *actual* reliance by the party bringing the claim.  *See Humana, Inc. v. Castillo*, 728 So. 2d 261, 265 (Fla. 2d DCA 1999) ("Florida law imposes a reliance requirement in an omissions case, which cannot be satisfied by assumptions."); *see also id.* ("Florida law also requires a party asserting fraud to establish that but for the alleged misrepresentation or nondisclosure, the party would not have entered the transaction.").

No special relationship exists here.  CELEC and Astrobryxa never contracted with one another.  Rather, Astrobryxa was retained by Progen as its purported subcontractor. *See* DE 154 ¶ 2.   Nevertheless, Astrobryxa attempts to manufacture a duty owed by CELEC to Astrobryxa by pleading that CELEC "possessed superior and exclusive knowledge of subsurface conditions" and that "[b]y issuing the RFPs and making partial

disclosures, CELEC assumed a duty to disclose material facts" to Progen's subcontractor, Astrobryxa. *See* DE 154, Counterclaims ¶¶ 17–18. Not so. Absent a special relationship between CELEC and Astrobryxa, CELEC's superior knowledge alone (nor an alleged partial disclosure by CELEC to a different party (Progen)) is not enough to create a duty to disclose to *Astrobryxa*—for "[p]ossession of superior knowledge alone does not create a duty to disclose under Florida law." *DJ Lincoln Enters., Inc. v. Google, LLC*, 2021 WL 3079855, at *3 (S.D. Fla. July 21, 2021), *aff'd*, 2022 WL 203365 (11th Cir. Jan. 24, 2022); *see also Hummel v. Tamko Bldg. Prods., Inc.*, 2015 WL 12843907, at *5 (M.D. Fla. Nov. 6, 2015) ("[B]eing in a position of superiority does not rise to the level of a confidential, contractual, or fiduciary relationship necessary to support a fraudulent concealment claim." (internal quotation marks omitted)).

Unable to explain under Florida law how CELEC could owe Astrobryxa any duty, Astrobryxa alleges in conclusory fashion that "CELEC had a duty to disclose . . . based on Ecuadorian law." DE 154 ¶ 48. But Astrobryxa never identifies any specific Ecuadorian statute, doctrine, or regulation that purportedly creates such a duty between a government agency engaging in contract procurement and a later downstream subcontractor, nor does Astrobryxa explain why any such duty would run from CELEC to a subcontractor rather than to CELEC's contracting counterparty (Progen). Astrobryxa's conclusory reference to "Ecuadorian law" is thus insufficient to state a claim under Rule 12(b)(6) (much less one with the specificity required by Rule 9(b)).

8

### B.    Astrobryxa does not allege CELEC knew or should have known any statement or omission was false.

Counts I, II and III additionally fail because the claims contain no well-pled allegations that CELEC knew or should have known that any statement or omission regarding subsurface conditions was false.  Remember: CELEC is a government entity who was responding to a declared national energy emergency.  It therefore had every rational incentive to ensure that contractors and subcontractors could successfully complete the project.  Concealing material site conditions would have been directly contrary to CELEC's own interests to address its national energy crisis.  Yet that is exactly what Astrobryxa asks this Court to accept: that CELEC would act against Ecuador's national interest and its own institutional objectives in order to defraud an unknown, downstream alleged subcontractor with whom CELEC never communicated and whose very existence CELEC had no reason to know at the time of the RFP.

Fraudulent intent cannot be plausibly inferred when the alleged deception would have been contrary to the defendant's own interests.  *See Aspen Am. Ins. Co. v. Tasal, LLC*, 508 F. Supp. 3d 1179, 1184 (M.D. Fla. 2020) ("To properly allege an intent to induce reliance under Rule 9(b), the plaintiff must plead a factual basis that gives rise to a strong inference of fraudulent intent." (cleaned up)); *cf. Myers v. Provident Life & Accident Ins. Co.*, 564 F. Supp. 3d 1157, 1182 (M.D. Fla. 2021) ("In evaluating Rule 12(b)(6) motions to dismiss, courts may infer from the factual allegations in the complaint obvious alternative explanations, which suggest lawful conduct rather than the unlawful conduct the plaintiff

9

would ask the court to infer." (cleaned up)).  A fraudulent intent that is implausible on its face cannot survive a motion to dismiss.

### C.    Astrobryxa does not sufficiently allege reliance.

Counts I, II and III separately fail because Astrobryxa does not plausibly plead that (a) CELEC intended for Astrobryxa to rely on any of CELEC's statements or omissions, or (b) that Astrobryxa justifiably relied on such statements or omissions.

The defendant's intent to induce reliance by the plaintiff and the plaintiff's corresponding justifiable reliance on the statement or omission are necessary elements of the causes of action of fraudulent concealment and fraudulent omission.  *Dugas*, 101 F. Supp. 3d at 1253–1254 (fraudulent concealment); *Drilling Consultants*, 806 F. Supp. 2d at 1236 (fraudulent omission).

Astrobryxa generally alleges that CELEC knew that "bidders and their subcontractors would rely on the completeness and accuracy of the information provided in the RFP."  DE 154 ¶ 9.  But this kind of general allegation is insufficient to demonstrate CELEC intended *Astrobryxa*'s reliance.  Indeed, Astrobryxa does not plead any facts showing that CELEC knew Astrobryxa even existed at the RFP stage, or that CELEC knew Astrobryxa had any relationship with Progen—the party with whom CELEC was actually communicating during the contract process.  Nor does Astrobryxa plead facts demonstrating that CELEC intended Astrobryxa to rely on its communications with Progen, that CELEC ever communicated with Astrobryxa, or that CELEC directed any representation specifically to Astrobryxa.

10

Astrobryxa also fails to explain why it would be reasonable for a subcontractor to rely on statements made by a project owner to the general contractor that engaged it, rather than performing its own diligence or looking to its general contractor, Progen, for site information. Astrobryxa does not allege that it requested the geotechnical study, that it could not have investigated site conditions itself, that it was prevented from doing so, or that it actually changed its conduct based on any specific CELEC statement or omission made to Progen during the bidding process.

Justifiable reliance is also an essential element of a negligent misrepresentation claim. *See Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010). "[T]he case law in Florida is clear; absent evidence the plaintiff relied on the defendant's alleged misrepresentation to their detriment, there can be no negligent misrepresentation claim." *Benavides v. Tesla, Inc.*, 804 F. Supp. 3d 1242, 1310 (S.D. Fla. 2025). Further, only the party who directly relied on the misrepresentation can bring a negligent misrepresentation claim; a plaintiff who was not the relying party lacks the necessary relationship with the defendant. *See id.* at 1310–11; *see also, e.g.*, *id.* at 1311 ("[E]ven assuming McGee[, a non-party,] detrimentally relied on Tesla's misrepresentation, there is no record evidence that Tesla's alleged misrepresentation was conveyed [by McGee] to Plaintiffs or that Plaintiffs otherwise relied on any misrepresentation such that Tesla would owe a duty to Plaintiffs.").

Here, Astrobryxa alleges that it relied on CELEC's RFP and site visit statements, [DE 154 ¶¶ 16, 19], but it also pleads that it was retained by *Progen*, not CELEC [id. ¶ 2]. The pleading does not plausibly explain why a subcontractor would independently rely

on CELEC—rather than on Progen, its contracting counterparty—when Progen was the party that engaged Astrobryxa and defined the scope of Astrobryxa's work.

For these reasons, Astrobryxa cannot satisfy the reliance elements of a fraudulent concealment, fraudulent omission or negligent misrepresentation claim.

### D.   Counts I–III are not pled with the requisite specificity, nor does Astrobryxa plead the materiality of the alleged omission.

Rule 9(b) "requires a complaint alleging a fraud claim to set forth: (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff, and; (4) what the defendant obtained as a consequence of the fraud." *In re Galectin Therapeutics, Inc. Secs. Litig.*, 843 F.3d 1257, 1269 (11th Cir. 2016); *see In re Brinker Data Incident Litig.*, 2020 WL 691848, at *23 (M.D. Fla. Jan. 27, 2020) (same); *see also Lamm v. State St. Bank & Tr.*, 749 F.3d 938, 951 (11th Cir. 2014) (finding "Rule 9(b)'s heightened pleading standard applies to negligent misrepresentation claims" under Florida state law); *cf.* Fed. R. Civ. P. 9(b).

The allegations underpinning Counts I–III fall well short of Rule 9(b)'s heightened pleading standard. Astrobryxa's fraudulent concealment claim rests on vague, group-pled references to CELEC "through its agents, employees, and/or representatives that worked at the plant," DE 154 ¶ 10, and to unspecified "pre-contract communications," *id.* ¶ 15— without ever identifying who at CELEC actually made or omitted each statement, what authority any such person had to bind CELEC, or when and where the alleged omissions

12

occurred. Nor does Astrobryxa specify which particular RFP documents contained (or omitted) the geotechnical information, when each omission occurred, when Astrobryxa subcontracted with Progen, how Astrobryxa learned of and relied upon each specific omission, or what CELEC purportedly obtained as a consequence of the alleged concealment. Astrobryxa's site-visit allegations fare no better: they are pleaded generally as "August 2024" without a specific date, attribute statements to unidentified "representatives that worked at the plant," and do not identify any Astrobryxa representative who allegedly heard and relied on the statements. *Id.* ¶¶ 10–11. These are precisely the details Rule 9(b) demands. *See Galectin*, 843 F.3d at 1269. Their absence is fatal. *See, e.g.*, *Garrett-Alfred v. Facebook, Inc.*, 540 F. Supp. 3d 1129, 1139 (M.D. Fla. 2021) (granting motion to dismiss fraudulent concealment claim for failure to satisfy Rule 9(b)).

Lastly, Astrobryxa does not adequately plead the materiality of the alleged omission. *See Dugas*, 101 F. Supp. 3d at 1253–1254 (fraudulent concealment requires material misrepresentation); *Drilling Consultants*, 806 F. Supp. 2d at 1236 (fraudulent omission requires omission of material fact); *Specialty Marine & Indus. Supplies*, 66 So. 3d at 309 (negligent misrepresentation requires misrepresentation of material fact). The Counterclaims allege in wholly conclusory fashion that "[t]he subsurface soil conditions were material to the constructability, cost, and schedule of the Salitral project," DE 154 ¶ 6, and that "CELEC was negligent in making these representations because it knew or should have known, based on its geotechnical study and prior site conditions, that the information was incomplete or inaccurate," *id.* ¶ 59. But Astrobryxa never pleads facts

13

explaining *why* the subsurface conditions were material to *Astrobryxa*'s decision-making (as opposed to Progen's, or CELEC's).

For each of these reasons, Counts I–III should be dismissed.

**II.    Count IV (FDUTPA) fails because Astrobryxa does not plausibly plead a deceptive practice directed at it, causation, or actual damages, nor does Astrobryxa satisfy Rule 9(b)'s pleading standard.**

To state a FDUTPA claim, a plaintiff must plead: (1) a deceptive act or unfair practice; (2) causation; and (3) actual damages. *See Baptist Hosp., Inc. v. Baker*, 84 So. 3d 1200, 1204 (Fla. 1st DCA 2012); *Kia Motors Am. Corp. v. Butler*, 985 So. 2d 1133, 1140 (Fla. 3d DCA 2008).

An "unfair practice" is "one that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003); *Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So. 3d 207, 209–10 (Fla. 4th DCA 2019) (same). "Deception," in turn, is "a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment." *PNR*, 842 So. 2d at 777; *Stewart*, 266 So. 3d at 209–210 (same). "Causation under FDUTPA must be direct, rather than remote or speculative." *Stewart*, 266 So. 3d at 213 (internal quotation marks omitted).

Here, Astrobryxa's FDUTPA claim is subject to dismissal because it does not plead an unfair or deceptive act directed at it. Consider: Astrobryxa's FDUTPA claim rests entirely on alleged omissions from CELEC's RFP and representations at a site visit.

14

But Astrobryxa was not a bidder or party to any contract with CELEC.  The Counterclaims do not allege whether Astrobryxa reviewed CELEC's RFP before agreeing to perform work for Progen, whether it directly participated in bidding, or whether CELEC intended its RFP disclosures to guide subcontractors, including Astrobryxa specifically.  Nor do the Counterclaims allege that any communications made by CELEC during the contract execution process were directed specifically at Astrobryxa as opposed to Progen.  *See* DE 154 ¶ 10.  Because Astrobryxa cannot establish that CELEC owed any disclosure duty to Astrobryxa (*see* Section I.A. *supra*), the alleged omission cannot plausibly constitute an unfair or deceptive practice directed at Astrobryxa.

Even if Astrobryxa had pleaded a deceptive act directed at it, its claim would still fail because causation is remote and speculative rather than direct.  "Causation under FDUTPA must be direct, rather than remote or speculative." *Stewart*, 266 So. 3d at 213.  Astrobryxa's pleading leaps directly from "omitted geotechnical report" to "Astrobryxa incurred extra costs"  without pleading any of the intermediate facts that FDUTPA causation requires.  Missing from the Counterclaims are allegations that: (i) Progen would have refused to enter the Salitral contract with CELEC had the supposed geotechnical information been disclosed; (ii) Progen would have negotiated different pricing or scope with CELEC had it known of the alleged subsurface conditions; (iii) Astrobryxa would have refused the subcontract with Progen had it known of the alleged subsurface conditions; (iv) Astrobryxa would have negotiated different pricing or scope with Progen; (v) that Astrobryxa would have affirmatively terminated its subcontract with Progen; or

15

(vi) CELEC would have awarded the contract to a different bidder. Without pleading any of these intermediate causal steps, Astrobryxa asks the Court to infer that a disclosure by CELEC to Progen would inevitably have translated into changed conduct by Astrobryxa—an inference the pleading does not support.

Finally, the "actual damages" element is not met. In its Counterclaims, Astrobryxa seeks recovery for "substantial economic damages, including increased costs and uncompensated work." DE 154 ¶ 67. But those are consequential contract damages, not FDUTPA "actual damages," which are generally measured by the difference in value between what was promised and what was received. *See Eclipse Med., Inc. v. Am. Hydro–Surgical*, 235 F.3d 1344 (11th Cir. 2000) ("Florida courts specifically reject the recovery of consequential damages under FDUTPA."); *Dorestin v. Hollywood Imports, Inc.,* 45 So.3d 819, 824–25 (Fla. 4th DCA 2010) ("[FDUTPA] does not allow the recovery of other damages, such as consequential damages."); *Rodriguez v. Recovery Performance & Marine, LLC,* 38 So.3d 178, 180 (Fla. 3d DCA 2010) ("[U]nder FDUTPA, the term 'actual damages' does not include special or consequential damages."); *see also Tri-Cnty. Plumbing Servs., Inc. v. Brown*, 921 So. 2d 20, 22 (Fla. Dist. Ct. App. 2006) (explaining how to calculate "actual damages"). Because Astrobryxa seeks only consequential damages arising from its subcontract with Progen, and does not (and cannot) plead the type of benefit-of-the-bargain damages FDUTPA recognizes, Count IV fails for this independent reason as well.

Even if Astrobryxa has pled the elements of a FDUTPA claim—it has not pled them with the particularity required by Rule 9(b). *See Pop v. LuliFama.com LLC*, 145 F.4th

16

1285, 1293 (11th Cir. 2025) (holding "FDUTPA claims that sound in fraud must comply with Rule 9(b)"); *see also In re Galectin Therapeutics, Inc. Secs. Litig.*, 843 F.3d at 1269 (delineating Rule 9(b)'s requirements for claims sounding in fraud); *cf.* Fed. R. Civ. P. 9(b). Specifically, Astrobryxa does not allege with particularity precisely what statements or omissions CELEC made that were deceptive or unfair; the specific time and place each such statement was made; who at CELEC made the statement(s); the specific content of such statements; how, exactly, the statements misled Astrobryxa; and what exactly CELEC obtained as a consequence. *See In re Galectin Therapeutics, Inc. Secs. Litig.*, 843 F.3d at 1269.

For all of the above reasons, Count IV should be dismissed.

**III.    Counts V–VII fail because they derive from a single email that contains no actionable false statement, is privileged, and cannot support multiple overlapping tort claims.**

Counts V through VII (Defamation, Business/Commercial Disparagement, and Tortious Interference) are all derivative of a single email sent by CELEC's counsel to witnesses identified in Astrobryxa's own Rule 26(a)(1) initial disclosures.[2]  That email— sent in the course of active litigation—contains no false statement of fact about Astrobryxa, is protected by various privileges, and cannot support three separate tort claims under Florida's single-action rule.  Astrobryxa's Counterclaims inflate the plain text of the email, extract meaning that is not there, and rely on conclusory allegations of malice, publication, and harm.

---

[2] Note that this email sent by counsel was *also* the basis of Astrobryxa's Motion for a Protective Order, *see* DE 73 at 2, which this Court denied, *see* DEs 111, 115.

The essential elements of Counts V–VII are as follows:

- **Defamation** (Count V) requires: (1) publication; (2) falsity; (3) actor's knowledge or reckless disregard as to falsity (or negligence as to a private figure); (4) actual damages; and (5) a defamatory statement. *Sloan v. Shatner*, 2017 WL 3332232, at *2 (M.D. Fla. Aug. 3, 2017); *Jews For Jesus, Inc. v. Rapp*, 997 So. 2d 1098, 1105–06 (Fla. 2008).

- **Commercial disparagement** (Count VI) requires: (1) a falsehood; (2) published or communicated to a third party; (3) where the defendant knows or reasonably should have known that it will likely result in inducing others not to deal with the plaintiff; (4) the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff; and (5) special damages proximately caused as a result of the published falsehood. *Akai Custom Guns, LLC v. KKM Precision, Inc.*, 707 F. Supp. 3d 1273, 1300 (S.D. Fla. 2023); *Bothmann v. Harrington*, 458 So. 2d 1163, 1168 (Fla. 3d DCA 1984).

- **Tortious interference** (Count VII) requires: (1) the existence of a business relationship; (2) knowledge of the relationship on the part of the defendant; (3) an intentional and unjustified interference with the relationship by the defendant; and (4) damage to the plaintiff as a result of the breach of the relationship. *Ethan Allen, Inc. v. Georgetown Manor, Inc.*, 647 So. 2d 812, 814–15 (Fla. 1994).

Each of these claims fails for multiple independent reasons.

18

## A.    The email contains no false statement.

The email that serves as the basis of these claims states: "We are considering fraudulent transfer claims against anyone who received funds in connection with the fraud against CELEC." *Id.* ¶ 28.  While the email refers to "the fraud against CELEC" in the abstract, it is consistent with CELEC's publicly-available operative Amended Complaint, which sues all Defendants, including Astrobryxa, for deception and fraud.

As alleged in the Amended Complaint, Progen, Astrobryxa and their co-conspirators have brazenly stolen from Ecuador over $100 million dollars. There is <u>no</u> <u>falsity</u> in the email.  The "fraud against CELEC" is described in detail, and supported with documentation, in the original complaint and the Amended Complaint.

## B.    The email is protected by the fair report privilege.

Even if the email could be read to include a false statement (which it can't), it would still be a substantially fair and true report of what CELEC alleged publicly in its initial Complaint [DE 1] (and what it currently alleges in its operative Amended Complaint [DE 128]).  Florida's "fair report privilege" protects such statements. *See Folta v. New York Times Co.*, 2019 WL 1486776, at *4 (N.D. Fla. Feb. 27, 2019) ("The fair report privilege is broad.  It requires only that the publication be 'substantially' correct in its representation[s] . . . ."); *see, e.g.*, *Rasmussen v. Collier Cnty. Pub. Co.*, 946 So. 2d 567, 571 (Fla. 2d DCA 2006) (holding "fair report privilege" protects publication of public records so long as report is "reasonably accurate and fair"); *B & D Nutritional Ingredients, Inc. v. Unique Bio Ingredients, LLC*, 2017 WL 8751751, at *3 (S.D. Fla. Jan. 25, 2017) (holding

19

press release that "state[d] that [a] lawsuit was filed" and which "identifie[d] the parties and the claims in the Complaint" was not defamatory).

Here, the email at issue merely refers to allegations that CELEC had *already* publicly asserted in its initial Complaint on the docket in this action [*see* D.E. 1], and is a fair report of the Complaint. It therefore cannot form the basis of a defamation or disparagement claim.

### C.    Republication cannot serve as a basis for defamation under Florida law.

Astrobryxa's theory also fails because it seeks to hold CELEC liable for "republishing" allegations already in the operative Complaint at the time [*see* D.E. 1]—a theory Florida courts have consistently rejected. In *Rodriguez v. Lewis*, No. 24-cv-80983, 2026 WL 156780 (S.D. Fla. Jan 1, 2026), the district court for the Southern District of Florida granted judgment on the pleadings and dismissed with prejudice a count styled as "defamation by republication," holding it was "unconvinced that a defamation by republication theory of liability currently exists in Florida." The court there cited a consistent line of decisions by <u>this</u> Court, including *Pierson v. Orlando Reg'l Healthcare Sys., Inc.* (M.D. Fla. 2010), *Markle v. Markle* (M.D. Fla. 2023), and *Stinnett v. Delta Air Lines, Inc.* (M.D. Fla. 2023) which have all concluded that Florida does not recognize a cause of action for defamation by third-party republication.

To the extent Astrobryxa seeks liability against CELEC for its counsel putting in email what its Complaint already said [*see* D.E. 1] (and to the extent it seeks liability for the *media*'s republication of the email, *see infra* II.D), Counts V–VII should be dismissed.

**D.    Astrobryxa's alleged harm was proximately caused by third-party dissemination, not any publication by CELEC.**

Astrobryxa's own pleading admits that the harm it complains of in Counts V–VII was caused not by CELEC's counsel's transmission of the email to witnesses, but by third-party media dissemination of that email.  Astrobryxa alleges:

- "Following dissemination of CELEC's statements, *including through media and public channels*, the Spanish firm became aware of the allegations. . . . The Spanish firm terminated its contract with Astrobryxa as a result of the negative publicity." DE 154 ¶¶ 38–39 (emphasis added).

- "CELEC's email was *disseminated to the public and was covered in the local news media and on social media*. The Spanish firm saw the media coverage, including coverage related to the email, and terminated the contract."  *Id.* ¶ 83 (emphasis added).

- "[D]ue to *local media coverage* surrounding this litigation, other business partners of Astrobryxa learned about the email and terminated their partnerships."  *Id.* ¶ 86 (emphasis added).

- "The Spanish firm stated that the termination of the contract was due to the *negative media coverage related to the email*."  *Id.* ¶ 90 (emphasis added).

CELEC did <u>not</u> publish the email to the media.  Astrobryxa does not allege CELEC published the email to the media.  Rather, according to Astrobryxa's own pleading, CELEC's counsel sent the email to individuals identified in Astrobryxa's initial disclosures as it is permitted to do, and *those* individuals allegedly disseminated it to the media.  Astrobryxa's alleged injuries derive from that downstream, third-party dissemination [*see id.* ¶¶ 38–39, 83, 86, 90]—not from any act of CELEC.

Astrobryxa's causation theory is fatally attenuated, defeating Counts V–VII.  *See Shaw v. R.J. Reynolds Tobacco Co.*, 818 F. Supp. 1539, 1541 (M.D. Fla. 1993), *aff'd sub nom.*

*Shaw v. Reynolds Tobacco Co.*, 15 F.3d 1097 (11th Cir. 1994) (explaining defamation requires "that the Plaintiff suffered damages *as a result of* the publication" alleged (emphasis added)).

### E.    Florida's litigation privilege bars Counts V–VII.

Florida's litigation privilege also mandates dismissal of Counts V–VII.  That absolute privilege "provid[es] legal immunity for actions that occur in judicial proceedings." *Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 383 (Fla. 2007); *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994) (holding "absolute immunity must be afforded to any act occurring during the course of a judicial proceeding, regardless of whether the act involves a defamatory statement or other tortious behavior . . . so long as the act has some relation to the proceeding").

"[F]or an absolute privilege to exist, the question is not whether the statement was compelled or under oath; the question is merely whether the statement was made 'in connection with' or 'in the course of' an existing judicial proceeding." *Stucchio v. Tincher*, 726 So. 2d 372, 374 (Fla. 5th DCA 1999).  Importantly, here, "Florida's litigation privilege applies to the state-law claims adjudicated in federal court." *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1275 (11th Cir. 2004).  And the privilege applies broadly to depositions, witness interviews, discovery, and settlement discussions. *See id.* at 1274–77; *Anderson v. Shands*, 570 So. 2d 1121, 1122 (Fla. 1st DCA 1990); *Stucchio*, 726 So. 2d 374.

The email at issue was sent in connection with pending litigation to unrepresented

witnesses identified in Astrobryxa's own Rule 26(a)(1) initial disclosures. Reaching out to witnesses identified in an opposing party's initial disclosures is standard discovery practice. *See, e.g.*, *Braxton Techs., LLC v. Ernandes*, No. 6:09-cv-804, 2010 WL 11623673 (M.D. Fla. Apr. 22, 2010) (email sent during pending litigation and inherently related to judicial proceeding fell squarely within litigation privilege); *Gonzalez v. Porter*, 669 F. Supp. 3d 1234 (S.D. Fla. 2023) (privilege applies where alleged misconduct occurred "during the course of some formal judicial proceeding — including the formal discovery process"); *Burnett v. Davidoff*, No. 25-CV-21342, 2025 WL 2105772, at *4 (S.D. Fla. July 28, 2025) (discovery conduct protected); *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1303 (11th Cir. 2003) (same).

Here, the email at issue is directly related to CELEC's prosecution of this action; it references potential fraudulent transfer claims arising from the same facts pleaded in the original complaint. Indeed, the Amended Complaint added numerous fraudulent transfer claims. That is the paradigm example of a communication "in the course of" and "related to" a judicial proceeding.

Astrobryxa's conclusory assertions to the contrary—that the email was sent "outside the confines of formal judicial proceedings" and "outside the boundaries of this litigation," *see* DE 154 ¶¶ 31, 42—have no basis in fact and are precisely the kind of general legal conclusions the Court need not accept. *See Zuccarelli v. Barfield*, 165 So. 3d 830, 831 (Fla. 4th DCA 2015) (explaining whether an absolute privilege applies is a "pure question of law"). The Court should dismiss Counts V–VII as barred by the litigation privilege.

## F.    Florida's single-action rule bars duplicative counts.

Even if any of Counts V–VII survived (which they shouldn't), they cannot all coexist. Florida's single publication/single action rule prohibits multiple causes of action arising from a single publication. *See Callaway Land & Cattle Co. v. Banyon Lakes C. Corp.*, 831 So. 2d 204, 208 (Fla. 4th DCA 2002) ("In Florida, a single publication gives rise to a single cause of action. The various injuries resulting from it are merely items of damage arising from the same wrong."); *see also Stone v. Shafran*, 641 F. Supp. 3d 1344, 1366 (S.D. Fla. 2022); *Cherdak v. Cottone*, No. 2:22-CV-634-SPC-NPM, 2023 WL 2044608, at *7 (M.D. Fla. Feb. 16, 2023). The rule is "designed to prevent plaintiffs from circumventing a valid defense to defamation by recasting essentially the same facts into several causes of action all meant to compensate for the same harm." *Callaway*, 831 So. 2d at 208. The Florida Second District Court of Appeal recently reaffirmed this principle, holding that the rule "precludes the recasting of defamation claims as additional, distinct causes of action in tort if all of the claims arise from same defamatory publication." *Mishiyev v. Davis*, 402 So. 3d 443 (Fla. 2d DCA 2025).

All three of Astrobryxa's claims arise from the same email and the same alleged harm. Astrobryxa cannot maintain three separate torts for a single alleged publication.

## G.    Additional pleading deficiencies warrant dismissal of Counts V–VII.

Counts V–VII also suffer from a number of additional defects that independently warrant dismissal:

- **No copies of alleged communications to "business relations."** Astrobryxa alleges CELEC's email was communicated to "business partners and potential

24

customers." DE 154 ¶ 35.  But it does not attach or plead the content of any such communications.  The only communication identified in the pleading is the email quoted in Paragraph 27, which was sent to an individual relative of Astrobryxa's principal, not a business relation.

- **Attempt to attribute counsel's conduct to client.**  The Counterclaims are premised entirely on the conduct of CELEC's counsel, not CELEC itself.  Astrobryxa's conclusory allegation that counsel acted as CELEC's "agent,"*id.* ¶ 79, is insufficient to attribute counsel's litigation conduct to CELEC.

- **No plausibly pleaded malice.** Astrobryxa's assertions of malice are conclusory.

- **No knowledge of business relationships.** For Count VII, Astrobryxa pleads only that CELEC "likely knew" of Astrobryxa's business relationships.  DE 154 ¶ 88.  That does not plead the knowledge element of tortious interference.

- **No intentional and unjustified interference.** Contacting witnesses identified in an opposing party's initial disclosures is not unjustified—it is standard discovery conduct.

- **No allegations of "when."** The Counterclaims do not plead when the alleged statements were made or when Astrobryxa subcontracted with Progen.

For each of the foregoing reasons, Counts V–VII should be dismissed.

## CONCLUSION

Astrobryxa's Counterclaims are a transparent attempt to convert two entirely separate disputes—a subcontract dispute with Progen, and a litigation-conduct dispute arising from a single email sent by CELEC's counsel to witnesses identified in Astrobryxa's own initial disclosures—into tort claims against CELEC.  Neither dispute states a viable claim.  For all of the foregoing reasons, CELEC respectfully requests that the Court enter an order (i) dismissing Astrobryxa's Counterclaims [DE 154] in their entirety pursuant to Federal Rule of Civil Procedure 12(b)(6), with prejudice, and (ii) granting such other and further relief as the Court deems just and proper.

25

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on July 21, 2026, I electronically filed the foregoing **Plaintiff CELEC EP'S Motion to Dismiss Astrobryxa, S.A.'s Counterclaims** through the Court's CM/ECF system which will send an electronic copy to all counsel of record.

By: /s/ *Courtney M. Keller*
Courtney M. Keller, Esquire
Florida Bar No. 28668
Meredith P. Yates, Esquire
Florida Bar No. 1058373

**GREENBERG TRAURIG, P.A.**
450 South Orange Avenue, Suite 650
Orlando, Florida 32801
Telephone: (407) 420-1000
Facsimile: (407) 420-5909
Email:    kellerc@gtlaw.com
          Meredith.yates@gtlaw.com
          Nef-iws@gtlaw.com
          ORLLitDock@gtlaw.com

Daniel Pulecio-Beck, Esquire
(admitted *pro hac vice*)
Michael Pusateri, Esquire
(admitted *pro hac vice*)

**GREENBERG TRAURIG, P.A.**
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
Telephone: (202) 331-3117
Email:    pulecioboekd@gtlaw.com
          pusaterim@gtlaw.com

*Counsel for Plaintiff*

26