**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

CELEC EP,

    Plaintiff,

v.                                                                    Case No. 8:25-cv-3433-WFJ-SPF

PROGEN INDUSTRIES, LLC;
GENERTEK POWER CORP.;
GENERTEK POWER INDUSTRIES,
LLC; JOHN B. MANNING; W. WADE
MANNING; ANDREW S. WILLIAMSON;
ASTROBRYXA, S.A.; ASTROBRYXA, LLC;
AP INSPECTIONS LATINOAMERICA, S.A.;
A.P. INSPECTIONS LLC; H&S INDUSTRY, LLC;
TWO LIONS HOLDING, LLC; AOT HOLDINGS
AG; GESTORES INMOBILIARIOS
LIGHTBLUE, S.A.; and DOES 1-95,

    Defendants.

_____

PROGEN INDUSTRIES, LLC,

    Counter-Plaintiff,

v.

CELEC EP,

    Counter-Defendant;

_____/

**PROGEN DEFENDANTS' MOTION
<u>FOR JUDGMENT ON THE PLEADINGS</u>**

Pursuant to Federal Rule of Civil Procedure 12(c), Defendants Progen Industries, LLC ("Progen"), Genertek Power Corp., Genertek Power Industries, LLC, John B. Manning, W. Wade Manning, Andrew S. Williamson and Two Lions Holdings, LLC (collectively, the "Progen Defendants") move for judgment on the Amended Complaint ("Complaint")[1] [ECF No. 128] filed by Plaintiff CELEC EP ("CELEC" or "Plaintiff").

## PRELIMINARY STATEMENT

The Eleventh Circuit Court of Appeals has long warned litigants not to turn ordinary breach of contract claims into a federal RICO case --- which is exactly what CELEC has done here.[2] The rare proof of CELEC's improper purpose in bringing RICO and fraudulent transfer claims in this Court was recently confirmed by the "Subpoena Program" memorandum that CELEC's own Board Member published in Ecuador. See Exhibit A. CELEC's goal is to further tarnish the reputation of the Progen Defendants in CELEC's ongoing political posturing to blame Ecuador's energy crisis on a Florida company that simply contracted to provide and install generators to Ecuador[3]. Despite the careful word-smithing in

---

[1] All references to "Complaint" are references to the Amended Complaint filed at ECF No. 128.

[2] *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1208 (11th Cir. 2020); *Robert Suris Gen. Contractor Corp. v. New Metro. Fed. Sav. & Loan Ass'n*, 873 F.2d 1401, 1404, 1406 (11th Cir. 1989)

[3] As recently asserted in Progen's motion for a protective order from CELEC's discovery abuses [ECF No. 149], CELEC is exploiting American discovery mechanisms, not to

the complaint, Progen did deliver 46 generators per its contracts with CELEC and,

through subcontractors, constructed the civil works required to finalize the

remanufacture, installation and commissioning of the generators, until CELEC's

interference rendered further performance and completion impossible.

The proof of improper motivation here is joined by CELEC's failure to

sufficiently plead its claims. Based upon prevailing law in the Eleventh Circuit, this

Court should grant this motion for judgment on the pleadings for several reasons.

First, Florida's independent tort doctrine precludes Counts III (FDUTPA), IV

(conversion) and V (constructive trust) because Progen and CELEC had express

contracts for the sale and installation of goods.  Am. Compl. ¶¶ 31, 40 (hereinafter,

"Contracts"). Second, Plaintiff has failed to sufficiently plead many elements of its

federal and Florida RICO claim in Counts I and II, including (1) a RICO enterprise,

given that the alleged acts were all taken to perform under the Contracts; (2) a

pattern of racketeering activity with adequate continuity, since the alleged conduct

involves a single alleged scheme, a short time period, and a single alleged "victim;"

---

resolve the dispute, but to advance its political scapegoating campaign and criminal
prosecution of Ecuadorian citizens and officials in Ecuador. This litigation has always
been CELEC's attempt to deflect blame for its own failures: its troubled energy sector, its
interference with Progen's contract performance, its mismanagement of the Contracts, its
top management's admitted corruption in concert with Astrobryxa, and its wrongful
termination of two Contracts with Progen *after* Progen delivered forty-six generators to
Ecuador per the Contracts. Following orders of the Ecuadorian President himself, CELEC
brought this litigation to appease its constituents' frustrations with Ecuador's
government. *See*, e.g., Exhibit A to Motion for Protective Order [ECF No. 149-1], President
Daniel Noboa's post on X dated December 16, 2025.

and (3) RICO standing, including the absence of a concrete injury to business or property *in the United States*, since CELEC is only located in Ecuador and all work pursuant to the Contracts were directed to Ecuador or took place therein.

Further, the claims against the individual defendants fail because CELEC has failed to sufficiently allege that piercing the corporate veil is appropriate here to support individual liability for John B. Manning, W. Wade Manning, or Andrew S. Williamson. Finally, the claims in Count VI under the Florida Uniform Fraudulent Transfer Act (FUFTA) fail for lack of pleading with specificity given that the funds at issue belonged to Progen under the Contracts. For any one of these many reasons, the Court should dismiss the claims.

## THE ALLEGATIONS IN THE AMENDED COMPLAINT CONFIRM THIS ACTION IS IN TRUTH A BREACH OF CONTRACT DISPUTE

This action arises out of two contracts between CELEC and Defendant Progen Industries, LLC ("Progen"): (a) the Quevedo Contract, for the supply and installation of 20 power generators, Am. Compl. ¶ 31, and (b) the Salitral Contract, for the supply and installation of 29 power generators Am. Compl. ¶ 40. While the Complaint alleges repeatedly that Progen did not deliver any "new" generators under the Contract, *id.*, ¶¶ 26, 27, 32, 33, 35, 41, 42, 44, the insertion of "new" is designed to mislead the Court into believing a fraud claim is stated, as the Complaint also admits based on the plain language of the Contracts that the generators were to be "zero hour," an industry term allowing for refurbished,

rebuilt generators that are not what a layperson understands to be "new." *Id.*, ¶¶31, 42; see Exhibits B and E to Complaint [ECF No. 128-2; 128-7]. The Complaint also admits that Progen in fact delivered generators to Ecuador. *Id.,* ¶¶ 54, 63, 64. The Complaint then summarizes what this dispute is about: CELEC alleges that Progen sent it "substandard, non-operational equipment." *Id.*, ¶ 65. Whether the generators Progen delivered to Ecuador met the specifications of the Contracts is a contract dispute that CELEC improperly has plead as a RICO conspiracy and other torts. CELEC should not be allowed to bypass the terms and remedies negotiated by the parties in the Contracts in case of a breach. CELEC's tort claims all derive from this underlying contract dispute and thus should be dismissed.

The Complaint also alleges that the Progen Defendants "stole" a large sum of money and had co-conspirators. In fact, the Complaint admits that the alleged co-conspirators, Astrobryxa S.A. and Astrobryxa, L.L.C., were subcontractors for the generator project. *Id.*, ¶¶ 48, 50, 63, 89(viii), 98(viii), 105(vii), 109(v), 122d.[4] The Complaint also admits that Progen established a bank account for the purpose of receiving funds from CELEC under the Contracts. *Id.*, ¶ 75. There is no dispute that the funds paid by CELEC to Progen were paid pursuant to Clause 7.2(a) of the Contracts upon CELEC officials' approval of Progen's completion of the first

---

[4] If any claims survive this Motion, there is a factual dispute about whether the  principals of the Astrobryxa entities, who had undisclosed familial ties *to CELEC officials*, acted as CELEC's agents to induce Progen to enter the Contracts, as asserted in Progen's Counterclaim.

contractual milestone. [ECF 141-1; ECF 141-2]. Nor is there any dispute that Progen used those funds – which it earned under the Contracts – to pay its subcontractors and fund its business.

Making payments to subcontractors with funds earned under the Contracts does not turn these parties into "co-conspirators" or a "criminal enterprise," nor are these payments "fraudulent transfers." And any funds paid to Progen by CELEC under the Contracts were not "converted" as alleged in the claim for conversion, as those funds belonged to Progen once paid by CELEC.  CELEC's challenge to ownership of those funds indubitably concerns a contract dispute over whether Progen performed under the Contracts, as it calls into question CELEC's own officials' decision to pay Progen for that performance.

The Complaint is a textbook example of the Eleventh Circuit's admonition to litigants not to turn an ordinary contract dispute into a RICO fraud case.  Here, the true issues in dispute are whether Progen performed under the Contracts and received payments from CELEC as earned compensation for goods and services delivered under the Contracts; whether Progen made pre-contractual material misrepresentations or forged documents to obtain the Contracts; what role, if any, did the principals of the Astrobryxa entities, who had undisclosed familial ties *to CELEC officials* (Am. Compl. ¶ 49), have as CELEC's agents to induce Progen to enter the Contracts; and whether CELEC interfered with and sabotaged Progen's performance under the Contracts and scapegoated Progen for CELEC's own

failures. The Independent Tort Doctrine bars CELEC from litigating these issues as common-law fraud claims, while its RICO and FUFTA are insufficiently plead in the Complaint.

## LEGAL STANDARD

A motion for judgment on the pleadings under Rule 12(c) is governed by the same standard as a motion to dismiss under Rule 12(b)(6). The court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor, but it need not accept legal conclusions or formulaic recitations of the elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) require that a complaint contain sufficient factual matter to state a claim for relief that is plausible on its face. In the RICO context, the Eleventh Circuit has affirmed the granting of a Rule 12(c) motion where the plaintiff failed to plead RICO claims with the required level of specificity. *James v. Hunt*, 761 F. App'x 975 (11th Cir. 2018) upheld a district court's grant of judgment on the pleadings on RICO claims where the plaintiffs failed to plead the claims with the required specificity.

## ARGUMENT

### A.    THE INDEPENDENT TORT DOCTRINE BARS THE FDUTPA CLAIM, CONVERSION CLAIM AND CONSTRUCTIVE TRUST CLAIM

Florida's independent tort doctrine provides that, where parties are in contractual privity, a plaintiff may not recover in tort unless the tortious conduct

7

is independent of the breach of contract. The operative test under the independent tort doctrine is whether the plaintiff has alleged conduct that amounts to an independent tort — that is, conduct beyond and independent of the breach of contract, supported by facts separate and distinct from the breach, and resulting in damages that are independent, separate, and distinct from the contract damages. *HTP, Ltd. v. Lineas Aereas Costarricenses, S.A.*, 685 So. 2d 1238, 1239 (Fla. 1996); *Peebles v. Puig*, 223 So. 3d 1065, 1068-69 (Fla. 3rd DCA 2017). Here, CELEC has not included a claim for fraudulent inducement.

The allegations that support the FDUTPA claim in Count III are directly related to contract performance issues. For example, in Paragraph 105(iv), the alleged false act regarding use of EMD engines is determined by whether the Contracts required EMD engines, and if so, whether EMD engines were in the generators admittingly delivered to Ecuador or in the process of completion onsite in Ecuador. In Paragraph 105(v) regarding inspection reports, whether the generators "complied with the contract" is acknowledged to be the issue.

Even more telling is the next summary paragraph of the Complaint in which CELEC admits that the FDUTPA issue is whether Defendants misled "Plaintiff into believing that the equipment and services were both provided and met the specifications called for in the Quevedo and Salitral Contracts," and whether "Progen was both experienced and delivered equipment and services that satisfied the Quevedo and Salitral Contracts." Am. Compl., ¶106. In *Dawson v. Generac*

*Power Sys., Inc.,* 820 F. Supp. 3d 1306, 1331-32 (M.D. Fla. 2025), the court dismissed claims for negligent and fraudulent misrepresentation because they were not independent of limited warranty claims regarding the performance of the generators at issue. It concluded that the independent tort doctrine can still bar a FDUTPA claim in a contractual context if the claim merely restates the breach of contract. The court explained that "a breach of contract claim without significant allegations of unfair or deceptive conduct is insufficient to state a cause of action under FDUTPA." *Dawson*, 820 F.Supp. 3d at 1335-36, quoting *Hache v. Damon Corp.*, No. 8:07-cv-1248-T-30EAJ, 2008 WL 912434, at *2 (M.D. Fla. Apr. 1, 2008) (in turn citing the Florida Supreme Court in *PNR, Inc. v. Beacon Prop. Mgmt., Inc.,* 842 So.2d 773, 777 n. 2 (Fla.2003).

With regard to the conversion claim, the independent tort doctrine requires that a conversion claim go beyond, and be independent of, a failure to comply with the contract. *Drogueria Betances, LLC v. Forward Shipping Miami, Inc.*, No. 21-60453-CIV, 2021 WL 6841535, at *2 (S.D. Fla. Apr. 30, 2021); *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055-56 (Fla. 3rd DCA 2008). Courts in the Eleventh Circuit have consistently held that a conversion action is not an appropriate way to vindicate a claim that essentially alleges breach of contract *Kanen v. BBQ Holdings, Inc.*, No. 23-CV-62173-DMM, 2024 WL 5508197, at *11 (S.D. Fla. Nov. 8, 2024).

The critical test for conversion in a goods delivery contract context is whether the plaintiff can allege an affirmative, intentional act of misappropriating specific, identifiable property for the defendant's own use — as opposed to a mere failure to deliver or pay. In *Drogueria Betances* — a case directly on point involving a contract for delivery of goods (N95 masks) — the court dismissed both a fraudulent misrepresentation claim and a conversion claim under the independent tort doctrine. 2021 WL 6841535, at *2. The court found that the claims and damages arose from the same conduct as the breach of contract: the seller accepted payment and failed to deliver the goods. *Id*. The court held that the seller's alleged misrepresentations simply led the buyer to continue performing its contractual obligation, and that this was not separate and distinct from the breach itself. *Id*.

Similarly, in *Seven Seas Int'l, LLC v. Frigopesca, C.A.*, 616 F. Supp. 3d 1323, 1329-1330 (S.D. Fla. 2022), the court held that a failure to honor contractual obligations does not give rise to a conversion claim unless there is a specific obligation to keep intact or deliver the specific money in question. The court denied default judgment on the conversion claim where the plaintiff's claim was predicated on the defendant's failure to reimburse consistent with the contract. *Id*.

In this action, CELEC has identified no other property allegedly converted other than the very same funds it paid to Progen under the Contracts.  Whether CELEC has any right to those funds is intertwined with whether Progen performed under the Contracts (or was prevented by CELEC from completing its

10

performance).  Since CELEC admits that the generators are in a warehouse in Ecuador that it can access, Am. Compl. ¶ 65, CELEC cannot bring a conversion claim for funds it paid to Progen under the Contracts.

The same arguments apply to the Constructive Trust claim in Count V.  Like the conversion claim, this claim is also predicated on whether the generators delivered to CELEC satisfied the obligations to deliver zero-hour generators under the Contracts.  There are no non-contractual independent acts that support this claim.

CELEC itself has now raised the Independent Tort Doctrine as its Twenty-Second Affirmative Defense [ECF No. 161].  Notably, CELEC has also raised the "failure to exhaust required dispute resolution procedures" as its Twentieth Defense.  As mentioned above, it is crystal clear from the Subpoena Program memo that CELEC intentionally brought tort claims, particularly RICO claims (see next section), to avoid the contractual requirements of arbitration in Ecuador (see Clause 16 of the Contracts regarding "Dispute Resolution" that requires that disputes arising under the Contracts be resolved following Ecuadorian procedural norms,[5] ECF 141-1; ECF 141-2).  Only by bringing these tort claims could CELEC and its counsel engage in abusive and far reaching third party discovery that would not be available had it only filed breach of contract claims.  That CELEC itself is

---

[5] By deliberately structuring its claims to evade that requirement, CELEC has waived its right to enforce that provision.

11

defending the Counterclaim with the very provisions that defeat its own claims should be galling to the integrity of the American court system.

Based upon Florida's Independent Tort Doctrine, the Court should therefore grant judgment on the pleadings as to Counts III, IV and V of the Amended Complaint.

## B.   Federal and State RICO Claims Do Not Allege All Required Elements

CELEC has failed to sufficiently plead many elements of its federal and Florida RICO claim in Counts I and II, including (1) a RICO enterprise, given that the alleged acts were all taken to perform under the Contracts; (2) a pattern of racketeering activity with adequate continuity, since the alleged conduct involves a single alleged scheme, a short time period, and a single alleged "victim;" and (3) RICO standing, including the absence of a concrete injury to business or property *in the United States*, since CELEC is only located in Ecuador and all work pursuant to the Contracts were directed to Ecuador or took place therein with the Contracts calling for the application of Ecuadorian law.[6]

---

[6]  The Eleventh Circuit Court of Appeals has stated that federal RICO claims and Florida RICO claims are interpreted the same. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250, 1263-64 (11th Cir. 2004) (internal citations omitted) ("We have explained that interpretation of Florida's RICO law is informed by case law interpreting the federal RICO statute … on which Chapter 772 is patterned. Because Florida courts often look to the Federal RICO decisions for guidance in interpreting and applying the act, the analysis we apply to the plaintiffs' federal RICO claims is equally applicable to their state RICO claims." *See also All Care Nursing Serv., Inc. v. High Tech Staffing Servs., Inc.*, 135 F.3d 740, 745 (11th Cir.1998) ("Florida's RICO statutes have consistently been interpreted using federal RICO claim cases.").

### 1.  CELEC's "Enterprise" Allegations Fail to Allege a Common Purpose and an Ongoing Organization Functioning As a Continuous Unit

The Complaint only identifies the Astrobryxa entities as subcontractors and says little about the other members of the alleged RICO "enterprise." The Complaint fails to plausibly allege that the enterprise's participants shared a common purpose to engage in a particular *criminal* course of conduct. In *Cisneros v. Petland, Inc.*, 972 F.3d 1204, 1211-1212 (11th Cir. 2020), the Eleventh Circuit held that an abstract common purpose — such as a generally shared interest in making money — is insufficient. Rather, where the participants' ultimate purpose is to make money, the plaintiff must plausibly allege that the participants shared the purpose of enriching themselves through a particular criminal course of conduct. In *Cisneros*, the court found that allegations describing an ordinary franchise business model did not support a common fraudulent purpose, and that a third-party service company's dual role of helping customers and helping pet stores improve profits did not plausibly suggest a shared purpose to defraud. *Id.,* at 1212-13.

Here, the alleged enterprise involves a contractor and its subcontractors who submitted a winning bid and a contract to deliver generators to Ecuador – which it did.  The dispute here is about the performance of those generators and Progen's performance under the contract. The allegations fall short of alleging anything other than a regular contractor-subcontractor relationship.

13

Nor are there allegations that the alleged enterprise had any kind of structure. *Boyle v. United States*, 556 U.S. 938, 945-46 (2009). There are no allegations at all about the individual defendants (see section C below). And no allegations about what the other alleged corporate entities did as part of the alleged "enterprise," let alone a structure beyond an every day contractor-subcontractor relationship. This Court should dismiss the federal RICO claim because CELEC has failed to allege any structure or organization and instead simply lists a variety of defendants and asserts, without any plausible factual basis, that they constituted an enterprise asserting allegations "upon information and belief."

2. Lack of Pattern of Racketeering Activity - The Continuity-Plus-Relationship Test

A required element of a RICO claim is a "pattern of racketeering activity." This requires at least two predicate acts that are both related to each other and amount to, or threaten the likelihood of, continued criminal activity. *H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 109 S. Ct. 2893, 106 L. Ed. 2d 195 (1989). The Eleventh Circuit recognizes two forms of continuity: closed-ended and open-ended. *Jackson v. BellSouth Telecommunications*, 372 F.3d 1250 (11th Cir. 2004). Closed-ended continuity is established by proving a series of related predicate acts extending over a substantial period of time. *Magnifico v. Villanueva*, 783 F. Supp. 2d 1217, 1227 (S.D. Fla. 2011). Courts in the Eleventh Circuit have consistently held that period is measured in years, not weeks to establish closed-ended continuity.

In *Cisneros*, 972 F.3d at 1216, the court found that three predicate acts occurring over an eleven-day period did not come close to extending over a substantial period of time, noting that the court had previously held that nine months is not a substantial enough timeframe. Moreover, where all predicate acts arise from a single transaction, they cannot constitute a pattern of racketeering activity. *Id.* Here, CELEC cannot state a claim because its allegations pertain to two Contracts performed over a short period of time and essentially involved a single transaction.

Importantly, where the RICO allegations concern only a single alleged scheme with a discrete goal and a single victim, courts in the Eleventh Circuit have refused to find a closed-ended pattern of racketeering even when the scheme took place over a longer period of time. *Norfolk S. Ry. Co. v. Boatright R.R. Prods., Inc.*, No. 2:17-CV-01787-AKK, 2018 WL 2299249 (N.D. Ala. May 21, 2018) (collecting cases). In *Jackson*, 372 F.3d at 1266, the Eleventh Circuit found that a single scheme with a discrete goal failed to establish closed-ended continuity, noting that the alleged activity was not designed to perpetrate racketeering with respect to a series of cases and that the narrow scope and limited time frame of the alleged racketeering activity were fatal to the claim.

CELEC also cannot show open-ended continuity, as it requires a showing that the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future, or that the predicate acts are part of an ongoing entity's regular way of doing business. *Chesapeake Employers' Ins. Co. v.*

15

*Eades*, 77 F. Supp. 3d 1241 (N.D. Ga. 2015). Where the alleged enterprise has ceased to exist or the alleged scheme had a built-in ending point, as with the contractual relationship at issue here, open-ended continuity cannot be established. In *Artsen v. Harte*, 792 F. Supp. 3d 1358 (S.D. Fla. 2025), the court dismissed a RICO claim where the plaintiff failed to allege facts establishing open-ended continuity, finding that the alleged scheme did not threaten repetition in the future.  This Court should reach the same conclusion that the Complaint fails to state the required element of a pattern of racketeering activity that could continue.

### 3.  CELEC Has No Domestic Injury

RICO standing requires that CELEC, a part of the Ecuadorian Government, has sustained a concrete injury to business or property *in the United States*. CELEC cannot show this standing because it is only located in Ecuador and all work pursuant to the Contracts were directed to Ecuador.  The Supreme Court has held that a civil RICO plaintiff must allege a domestic injury because the statute's private right of action does not apply extraterritorially, even if its prohibition on racketeering does. *RJR Nabisco v. European Cmty.*, 579 U.S. 325, 346 (2016) ("A private RICO plaintiff therefore must allege and prove a domestic injury to its business or property.").  In the cited case, European states sued a cigarette manufacturer under RICO for pattern of racketeering activity.  Their complaint was dismissed for lack of an injury in the United States.

The same result should happen here.  Although the Complaint attempts to

16

manufacture a domestic injury in Paragraphs 92 to 96, those paragraphs rest on the theory that because CELEC contracted with Progen, CELEC could not contract with anyone else in the United States. But even that convoluted theory ultimately impacts CELEC in Ecuador, not in the United States. Nothing prevented CELEC from contracting with more than one American company if it so chose.

## C.    The Claims Against Individual Defendants John B. Manning, W. Wade Manning, or Andrew S. Williamson Fail Because They Only Acted In Corporate Capacities

CELEC has also failed to plead why the three named individuals are liable for any of the claims asserted. There are no allegations of any action taken by either of these three persons to support piercing the corporate veil to impose individual liability for any of the claims. In *Molinos Valle Del Ciabo, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011), the court stated that:

> it is black letter law in Florida that to disregard this corporate fiction and hold the corporation's owners liable—to "pierce the corporate veil"—the plaintiff must prove that:
>
> (1) the shareholder dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation;
>
> (2) the corporate form must have been used fraudulently or for an improper purpose; and
>
> (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

17

None of these elements is present in the Amended Complaint.  Nor are there any allegations that the corporations involved were formed for illegal, fraudulent, or other unjust purposes.  *Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So.2d 1114, 1119-20 (Fla. 1984) ("The rule is that the corporate veil will not be pierced, either at law or in equity, unless it be shown that the corporation was organized or used to mislead creditors or to perpetrate a fraud upon them" (quoting *Riley v. Fatt*, 47 So.2d 769, 773 (Fla.1950)).

There is no alleged basis for the three individuals to be included as named defendants in every count except Count V.  The Court should correct this overreach – clearly done for ulterior motive purposes as shown by the Subpoena Program memo – by dismissing these individuals from all claims in the Amended Complaint.

## D.    FUFTA Claims Fail Because This is Just a Contract Dispute

Finally, the claims in Count VI under the FUFTA fail for two reasons.  First, there is no dispute that the funds at issue are those paid by CELEC to Progen under the Contracts. That is the allegation – these are not monies being held by Progen for any particular purpose – these are the funds admitted by CELEC to have been paid by CELEC to Progen under the Contracts.  Am. Compl. ¶¶ 118, 120. "To prevail on a fraudulent transfer claim, a creditor must demonstrate (1) there was a creditor to be defrauded, (2) a debtor intending fraud, and (3) a conveyance—i.e., a "transfer"—of property which could have been applicable to the payment of the

debt due." *Isaiah v. JPMorgan Chase Bank*, 960 F.3d 1296, 1302 (11th Cir. 2020). Unlike many of the FUFTA cases, this action does not involve a Ponzi scheme or other fraud scheme – this case involves claims of inadequate contractual performance by delivery of non-compliant power generators.

Second, FUFTA expressly requires that the transfer be made by a debtor. A complaint that fails to allege facts establishing the defendant's status as a debtor liable on a claim to the plaintiff fails to state a claim. *Seacoast Constr., Inc. v. JPMorgan Chase Bank, N.A.*, No. 20-20491-CIV, 2020 WL 5547871, at *4 (S.D. Fla. Mar. 31, 2020) *Newman v. William L. Gunlicks Irrevocable Tr.*, 897 F. Supp. 2d 1270, 1276 (M.D. Fla. 2012). Here, CELEC states in a conclusory fashion that Progen is a debtor of CELEC. Am. Compl. ¶ 119. This superficial pleading was specifically rejected in *Seacoast Constr.*, 2020 WL 5547871, at * 4-5 (involving intercepted wire transfer where victimized plaintiff sued bank that allowed transfer). CELEC will likely argue that FUFTA's definitions of creditor and debtor are broad and that the complaint adequately alleges a right to payment. Courts have held, however, that the terms creditor and debtor must be given meaningful content and cannot be rendered effectively meaningless by vague allegations. *Newman*, 897 F. Supp. 2d at 1276. To accept CELEC's argument here, would mean a FUFTA claim could be made in every breach of contract action in which the performing party transferred money to its subcontractors – *actions which happen in nearly every commercial contract.*

## CONCLUSION

For all of the reasons expressed above, the Court should grant Defendants' Motion for Judgment on the Pleadings and dismiss each claim in the Amended Complaint.

WHEREFORE, the Progen Defendants respectfully request that this Court grant judgment on the pleadings, and dismiss all the claims in the Amended Complaint.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), this section is not required for a motion for judgment on the pleadings.

Dated: July 28, 2026

Respectfully submitted,

/s/ Adolfo E. Jiménez
Adolfo E. Jiménez
Florida Bar No. 869295
Email: Adolfo.Jimenez@hklaw.com
Gabriella A. Lanzas
Florida Bar No. 1059806
Email: Gabriella.Lanzas@hklaw.com
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799

and

Jason H. Baruch
Florida Bar No. 10280

Jason.baruch@hklaw.com
Anne Colbert
Florida Bar No. 1026226
anne.colbert@hklaw.com
Adam Poe
Florida Bar No.
allison.powers@hklaw.com
HOLLAND & KNIGHT LLP
100 N. Tampa Street, Suite 4100
Tampa, FL 33602
Telephone: (813) 227-8500
Facsimile: (813) 229-0134 (fax)


*Attorneys for Defendants Progen Industries, LLC; Genertek Power Corp.; Genertek Power Industries, LLC; John B. Manning; W. Wade Manning; Andrew S. Williamson; and Two Lions Holdings, LLC.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 28, 2026, I electronically served Progen

Defendants' Motion for Judgment on the Pleadings on all counsel of record.


/s/Adolfo E. Jiménez
Adolfo E. Jiménez