# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

CELEC EP,

      Plaintiff,

v.                                                                          Case No. 8:25-cv-3433-WFJ-SPF

PROGEN INDUSTRIES, LLC;
GENERTEK POWER CORP.;
GENERTEK POWER INDUSTRIES,
LLC; JOHN B. MANNING; W. WADE
MANNING; ANDREW S. WILLIAMSON;
ASTROBRYXA, S.A.; ASTROBYXA, LLC;
AP INSPECTIONS LATINOAMERICA, S.A.;
A.P. INSPECTIONS LLC; H&S INDUSTRY, LLC;
TWO LIONS HOLDING, LLC; AOT HOLDINGS
AG; GESTORES INMOBILIARIOS
LIGHTBLUE, S.A.; and DOES 1-95,

      Defendants.

_____

PROGEN INDUSTRIES, LLC,

      Counter-Plaintiff,

v.

CELEC EP,

      Counter-Defendant;

_____/

## PROGEN DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER REGARDING NOTICE OF INTENT TO SERVE SUBPOENA ON NINE ADDITIONAL NON-PARTIES AND SUBPOENA PROGRAM

Defendants, Progen Industries, LLC ("Progen"), Genertek Power Corp., Genertek Power Industries, LLC, John B. Manning, W. Wade Manning, Andrew S. Williamson and Two Lions Holdings, LLC (collectively, the "Progen Defendants") respectfully submit this Reply in Support of their Motion for Protective Order [ECF 149] (the "Motion").

## INTRODUCTION

CELEC's Response [ECF 167] is plagued with misrepresentations to the Court.

1. **Misrepresentation no. 1:** CELEC argues this Motion is "nothing more than a recycled version of its prior failed motions for protective orders."

Circumstances have materially changed and continue to worsen since the Court denied Progen Defendants' prior motions for protective order.

First, CELEC's counsel's Financial Strategy Report confirmed CELEC's improper purpose behind its Subpoena Program.[1] Exhibit A. A CELEC Board member published a summary of the Subpoena Program findings on X, promising that they "will not stop" their "investigations" through American discovery. [ECF 149-3]. CELEC issues subpoenas to fuel a foreign investigation and political campaign - not to advance this case.

Second, CELEC's Subpoena Program escalated. CELEC has served 41 subpoenas in four months and has publicly promised "additional subpoena targets." Ex. A; *see* also ECF 149-3. This is no longer targeted discovery as the Court originally thought; it is systematic abuse of the American discovery process.

Third, there is no legitimate discovery rationale for the latest nine subpoenas. CELEC's newest targets, including a post-termination customer, a payroll provider, and unrelated lenders, have no involvement whatsoever in the disputed contracts.

---

[1] CELEC objects to Progen's use of "Subpoena Program", yet it was CELEC who branded its campaign a subpoena Program. Ex. A, page 1.

Fourth, Progen's business is being harmed. Progen's clients, service providers, and employees are being hauled into this proceeding, and questioning their relationship with Progen. This harm has intensified since CELEC's conduct has expanded unchecked.

2. **Misrepresentation No. 2**: CELEC repeats that it "has had ***no choice*** but to pursue alternate avenues of discovery" because Progen has "produced only a handful of documents."

First, CELEC served discovery requests on Progen Defendants on February 13, 2026. That same day—*in the same service email*—CELEC served a notice of intent to subpoena Regions Bank. Exhibit B. Before Progen Defendants' deadline to respond to CELEC's discovery requests arrived, CELEC had already subpoenaed four other entities. CELEC's excuse that it "has had no choice" but to serve 41 subpoenas is a deliberate misrepresentation designed to justify its abusive discovery campaign.

Second, Progen Defendants have complied with their production obligations. By the date CELEC filed its Response, Progen Defendants had produced over 1,500 documents. Progen Defendants communicated to CELEC that they would produce documents on a rolling basis; CELEC did not object. On August 4, 2026, Progen Defendants produced an additional 6,619 documents.[2]

Progen Defendants' production is complex and required a rolling production because: (1) CELEC's requests are overbroad, encompassing all documents related to two large-scale contracts carried out to near-completion—contracts for which technical, construction, and mechanical work was documented daily, generating thousands of responsive records; (2) Progen Defendants are coordinating production for seven

---

[2] Progen Defendants have expended substantial resources to comply with their discovery obligations. CELEC, by contrast, has not met its production obligations—despite representing otherwise to the Court. Progen has sent deficiency correspondence and met in good faith to resolve these shortcomings. Progen is awaiting CELEC's completion of its discovery obligations.

defendants whom CELEC joined (recklessly, *see* Progen's Answer [ECF 141, page 70] to this litigation; and (3) Progen Defendants are producing records prepared by Astrobryxa, whose principals used Progen's accounts beyond Progen's authorization and knowledge.

Third, even assuming discovery noncompliance by Progen, CELEC had many available alternatives before choosing to harm Defendants through 41 non-party subpoenas. CELEC could have served a formal deficiency letter, initiated a meaningful meet-and-confer, filed a motion to compel, requested an informal discovery conference, or moved for a court-ordered production schedule. **CELEC pursued none**. Instead—as planned from the outset—it subpoenaed Progen Defendants' business relationships.

3. **Misrepresentation No. 3**. CELEC misrepresents: "Progen *does not deny* that it provided CELEC used, re-painted generators"

To misrepresent Progen's position, CELEC cites Progen's Answer to the Amended Complaint [ECF 141] at ¶ 52. But that Answer states: "Progen admits only that it obtained generators from Apollo Electric [...] Progen then refurbished and upgraded these generators and then delivered the contracted-for generators to Ecuador. **The rest of Paragraph 52 is denied.**" (emphasis added). [ECF 141, ¶ 52]. That CELEC would twist an unambiguous denial into a purported admission is not mere advocacy. It is a knowing misrepresentation to this Court.

While a Motion for Protective Order is not the appropriate forum to litigate the merits, CELEC's persistent misrepresentations compel Progen to reiterate: Progen delivered new surplus zero-hour generators as contracted for, and as CELEC expected to receive. *See* e.g. Exhibit C dated August 12, 2024 ("[Progen] assemble[s], like many other companies, generation units that are composed of a great many components").

4. **Misrepresentation No. 4**: CELEC mischaracterizes relevant discovery that it improperly inserts in a procedural motion.

CELEC requested a two-week extension to respond to the Motion (conveniently timed to fall after Wade Manning's deposition) then attached the entire deposition transcript and argued that Wade's "admissions are damning" in response to a procedural motion unrelated to Wade's deposition. CELEC jumped on the first opportunity to unnecessarily make the entire transcript public. Within 24 hours, the Ecuadorian government shared the transcript on social media to continue its political campaign. Exhibit D. CELEC used a discovery tool designed to advance this litigation, to satisfy not this Court, but the Ecuadorian media.

Further, CELEC mischaracterizes Wade's testimony. Wade testified that he was excluded from knowledge of the Contracts and had no awareness of the entities or documents central to CELEC's fraud allegations. Wade confirmed [ECF 167, Exhibit C]:

- "I have no knowledge of [John Manning's businesses'] inner workings" (*Id.* at 43);
- "I would have had [to have] been a vice president or some other [officer] . . . that knew the inner workings of the company, and I did not" (*Id.* at 44);
- "as far as decision[] making, policymaking, it's between those two"—referring exclusively to John Manning and Andrew Williamson (*Id.* at 45);
- "[o]nly when I received a subpoena. That's the first time I ever saw a contract." (*Id.* at 67)
- "We never saw the contracts. We never saw the agreements or what the discussions were or any emails or anything like that, so we were pretty much in the dark about it." (*Id.* at 72);
- "I had no knowledge of the contract, never saw one, or what the obligations were." (*Id.* at 151)
- Regarding Progen's experience certificates, Wade stated: "I have no knowledge." (*Id.* at 111)

CELEC was reckless in naming Wade as a Defendant as he plays no part in the claims in this litigation, reckless during Wade's deposition,[3] and opportunistic in filing the entire transcript in the public docket through a procedural motion for spectacle.

---

[3] CELEC's counsel, Daniel Pulecio, asked a series of irrelevant and inappropriate questions during Wade's deposition, including, "are you aware whether he has had extramarital relations?" (ECF 167, Exhibit C at 57); "[d]id Andrew Williamson have children separately out of wedlock?" (*Id.* at

CELEC also attached documents produced by Apollo Electric (one of the 41 subpoenaed non-parties) to its Response. CELEC devoted three short sentences to these documents, underscoring that they serve no purpose in resolving this Motion. Their inclusion was again, purely for spectacle. *See* Ex. D.

## I.    CELEC's subpoena targets lack targeted nexus to the case

"Discovery is limited to nonprivileged matters that are relevant to any party's claim or defenses." *Continuum on South Beach Condo. Ass'n, Inc. v. QBE Ins. Corp.*, 338 F.R.D. 668 (S.D. Fla. 2021). CELEC issued subpoenas to nine additional parties without any reasonable basis to believe they will yield relevant information. Its sole justification is that these entities appeared in Progen's Regions Bank records. Permitting subpoenas on the ground that a transaction occurred, and nothing more, allows abusive discovery unconstrained by any meaningful limitation. *See Mchale v. Crown Equipment Corporation*, Case No. 8:19-cv-707, 2020 WL 8224617 at *1 (M.D. Fla. Aug. 1, 2020) (Flynn, M.J.) ("[A]lthough broad, the scope of discovery is not without limits.").

Greenberg Traurig's own table of "principal recipients of outbound funds" from the Progen Defendants' Regions Bank accounts (Ex. A, pages 6-8) confirms as much. There is a mismatch between the "Top Recipients" and the entities subpoenaed. CELEC's method appears to consist solely of identifying who is located in the United States and therefore subject to American discovery. That is not a targeted litigation strategy, it is a fishing expedition. CELEC indiscriminately issues subpoenas hoping each proves as

---

55); "the vice president of project management at Progen is Andrew Williamson's out of wedlock child?" (*Id.* at 56); "Is it possible that Andrew Williamson's divorce with his wife is a sham aimed at defrauding creditors?" (*Id.* at 178).

fruitful as it believes the Apollo Electric subpoena did.[4] It apparently intends to continue until it has subpoenaed every party listed in every Defendant's bank records regardless of grounds to believe that that party was part of the alleged fraudulent scheme. *See* Ex. A.

With the latest nine subpoenas, CELEC again fired indiscriminately harassing Defendant's business relations, while striking nothing of relevance. The results speak for themselves: of the nine subpoenaed parties, seven objected or confirmed they had no responsive documents, and two produced documents relevant only to Astrobryxa.

II. **The Subpoena Program seeks information that is not proportionate to the needs of the case at this juncture of litigation**

Non-party subpoenas must be proportionate to the needs of the case. *Continuum,* 338 F.R.D. at 670 (considering "the importance of the proposed discovery in resolving issues" when granting a protective order). CELEC's Subpoena Program fails this standard because: (1) the information sought is impermissible prejudgment discovery, not important to the merits; (2) this case is a breach of contract dispute for which expansive discovery is unwarranted; and (3) CELEC already knows the answers to the questions it purports to investigate through its Subpoena Program because it created the issues itself.

First, CELEC admits that the purpose of its Subpoena Program is to identify the "ultimate disposition of funds" and "*what* the receiving entities did with the funds, or *what* assets those entities now hold." [ECF 167, Page 7]. This is nothing more than an asset discovery campaign; the type of inquiry that courts have held is impermissible before judgment. "Under most circumstances, […] a private plaintiff may not discover an opponent's assets until after a judgment against the opponent has been rendered." *F.T.C.*

---

4 Ironically, the Apollo Electric affidavit undermines CELEC's narrative: it confirms that Progen paid a large part of CELEC's payment to a vendor for the performance of the Contracts alone, thereby disproving any misappropriation allegations. Whether the equipment met the project requirements is a contractual issue.

*v. Turner*, 609 F.2d 743, 745 (5th Cir. 1980); *see also Auto-Owners Ins. Co. v. Southeast Floating Docks, Inc., 231 F.R.D. 426, 430 (M.D. Fla.)* ("Defendants argue that Plaintiff's discovery is […] in aid of execution of a judgment that has not yet been entered. The Court agrees that such discovery prior to the entry of judgment is improper.").

Greenberg Traurig's own account of the Subpoena Program removes any remaining doubt. Ex. A. Over a year before trial, CELEC is deploying its Subpoena Program (including a subpoena to Garrett Williamson about his personal residence) to identify assets "that may be available to satisfy a future judgment." *Id.* at 11. CELEC plans to consider "prejudgment remedies […] *as the tracing record matures*" (emphasis added) as well as "additional asset discovery" "to assess realistic recovery scenarios." *Id.* at 12-13. This is not merits-based discovery; it is an impermissible prejudgment collection effort mapping out assets for a judgment that does not exist. This Court should not permit it.

Second, CELEC recasts a breach of contract dispute as RICO and tort claims to obtain extensive discovery. As Progen Defendants explained in their recent Motion for Judgment on the Pleadings [ECF 166], the funds CELEC characterizes as "drained" were in fact earned compensation paid to Progen under the Contracts. Progen used those funds to pay subcontractors for performance of the Contracts. It is CELEC's improper RICO framing—not any legitimate discovery need—that serves as the pretext for these sweeping subpoenas into Progen's business relationships.

Third, CELEC's own conduct caused the financial conditions it now claims require investigation through subpoenas. [*see* ECF 167, page 7]. CELEC's delays in performing under the Contracts and making payments caused Progen's financial difficulties—no additional subpoenas are needed to answer that question. CELEC should not be permitted

to weaponize the crisis it created as justification for subpoenas that inflict further financial stress on Progen Defendants.

## III.    Discovery is obtainable from less burdensome sources

CELEC's Subpoenas are "obtainable from some other source that is more convenient, less burdensome, or less expensive." *Continuum,* 338 F.R.D. at 670. Every category of documents CELEC seeks is obtainable from Defendants. The contracts-related documents sought would necessarily involve a Defendant to be relevant and are therefore in Defendants' possession. The payment records sought reflect transactions "made to or received from" a Defendant—records available, by definition, from that Defendant. And the ownership and management records sought, which CELEC claims are relevant to whether a Defendant plays a role in the subpoenaed entities, would likewise be within Defendants' possession if such a role exists.

The same is true of the additional requests to Garrett Williamson. Garrett's employment records, proof of legitimate compensation, and his communications with Defendants all reside with the Defendants—yet CELEC has chosen to harass Garrett for them. CELEC offers no explanation for why it cannot obtain these documents through party discovery. The remaining requests to Garrett are irrelevant and invasive. As stated in his objections, Garrett's personal tax filings and home purchase records have no bearing on any claim or defense in this case other than for purposes of collecting a judgment that does not exist.

## CONCLUSION

CELEC's Subpoena Program serves its foreign investigation, political campaign, and impermissible prejudgment asset discovery —not the resolution of this case. Progen Defendants respectfully request that the Court grant the Motion for Protective Order.

Dated: August 10, 2026[5]

Respectfully submitted,

*/s/ Adolfo E. Jiménez*
Adolfo E. Jiménez
Florida Bar No. 869295
Email: Adolfo.Jimenez@hklaw.com
Gabriella A. Lanzas
Florida Bar No. 1059806
Email: Gabriella.Lanzas@hklaw.com
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799

and

Jason H. Baruch
Florida Bar No. 10280
Jason.baruch@hklaw.com
Anne Colbert
Florida Bar No. 1026226
anne.colbert@hklaw.com
Adam Poe
Florida Bar No.
allison.powers@hklaw.com
HOLLAND & KNIGHT LLP
100 N. Tampa Street, Suite 4100
Tampa, FL 33602
Telephone: (813) 227-8500
Facsimile: (813) 229-0134 (fax)

*Attorneys for Defendants Progen Industries,
LLC; Genertek Power Corp.; Genertek Power
Industries, LLC; John B. Manning; W. Wade
Manning; Andrew S. Williamson; and Two
Lions Holdings, LLC.*

---

[5] Progen Defendants timely filed this Reply in support of the Motion on August 6, 2026 [ECF 170]. On August 7, 2026, the Court entered an Order striking the Reply [ECF 171]. The Court granted Progen Defendants' Motion for Reconsideration of the Order Striking Reply [ECF 172] on August 10, 2026. Pursuant to the Court's Order granting Progen Defendants' Motion for Reconsideration [ECF 173], Progen Defendants refile this Reply on this date.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 10, 2026, I electronically served Progen Defendants' Reply in Support of Motion for Protective Order on all counsel of record.

_/s/Adolfo E. Jiménez_
Adolfo E. Jiménez