**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| CELEC EP,<br><br>Plaintiff,<br>v.<br><br>PROGEN INDUSTRIES, LLC et al.,<br><br>Defendants. | No. 8:25-cv-03433-WFJ-SPF<br><br>Judge Jung |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**
**ASTROBRYXA, S.A.'S AMENDED COUNTERCLAIMS**

The Response [DE 175] confirms, rather than cures, the defects that CELEC's Motion to Dismiss [DE 162] (the "Motion") identified. Astrobryxa, S.A. ("Astrobryxa") does not dispute the facts fatal to its Counterclaims: Astrobryxa never contracted with CELEC, never bid on the Salitral or Quevedo projects, and was engaged only by its contractor, Progen. And Astrobryxa does not dispute that Counts V–VII rest on a single email that CELEC's counsel sent, during litigation, to unrepresented witnesses Astrobryxa itself listed in its Rule 26(a)(1) disclosures. Unable to contest those facts, Astrobryxa instead substitutes legal conclusions for factual allegations, invokes inapplicable authority, and contradicts its own pleading. But repackaging deficient claims in a response does not cure deficient pleadings. The Counterclaims should be dismissed.

**I. Counts V–VII fail as a matter of law.**

**A. CELEC's email contains no falsity.**

Astrobryxa expends four sentences in its Response on CELEC's argument that Counts V–VII must be dismissed because CELEC's email contains no falsity, insisting

falsity must be assumed on a motion to dismiss simply because Astrobryxa "alleges" so. *See* Response at 14. ***But merely alleging falsity in a conclusory manner is not enough to survive a Rule 12(b)(6) dismissal.*** Where a court finds that "a communication could not possibly have a defamatory . . . effect, the court is justified in dismissing the complaint for failure to state a cause of action." *Rubin v. U.S. News & World Report, Inc.*, 271 F.3d 1305, 1306 (11th Cir. 2001); *see, e.g.*, *Perez v. City of Key W., Fla.*, 823 F. Supp. 934 (M.D. Fla. 1993) (dismissing defamation claim on Rule 12(b)(6) motion upon finding that a plaintiff's conclusory allegation that statements were "false and defamatory" was legally insufficient); *Wardak v. Goolden*, 2020 WL 9718811, at *10 & n.8 (S.D. Fla. May 22, 2020) (same). Here, Astrobryxa's bare, conclusory invocation of "falsity" in the Counterclaims is contradicted by the email itself, *see* DE 154 ¶ 27 (Email)—"context" this Court may consider, *Wardak*, 2020 WL 9718811, at *10—which contains no defamatory statement.

**B. Astrobryxa's claimed damages lack causation, and Florida does not recognize defamation by republication.**

As CELEC explained in its Motion to Dismiss, *see* DE 162 at 20–22, the "damages" Astrobryxa alleges in Counts V–VII stem from third-party dissemination and republication of CELEC's email, **not** from any publication by CELEC itself. Astrobryxa cannot show that CELEC—by emailing an individual *Astrobryxa itself* identified in its initial disclosures—caused the harm it alleges, when its own Counterclaims attribute that harm to the media's coverage of the email. *See* DE 154 ¶¶ 38–39, 83, 86, 90 (Counterclaims). Defamation requires proof "that the Plaintiff suffered damages *as a result of* the publication" alleged. *Shaw v. R.J. Reynolds Tobacco Co.*, 818 F. Supp. 1539, 1541

(M.D. Fla. 1993), *aff'd* 15 F.3d 1097 (11th Cir. 1994). Yet, the "publication" Astrobryxa alleges resulted in harm was the media's, not CELEC's. *See* DE 154 ¶¶ 38–39, 83, 86, 90.

Critically, Florida does not recognize defamation premised on third-party republication, as this Court has held repeatedly. *See Pierson v. Orlando Reg'l Healthcare Sys., Inc.*, 2010 WL 1408391, at *12 n.16 (M.D. Fla. Apr. 6, 2010), *aff'd,* 451 Fed. App. 862 (11th Cir. 2012); *Markle v. Markle*, 2023 WL 2711341, at *7 (M.D. Fla. Mar. 30, 2023). The defect is one of substance, not of the label Astrobryxa attaches to its claim. *See* Response at 15 (Astrobryxa arguing CELEC's republication argument fails because Astrobryxa did not bring "defamation by republication" as a "freestanding cause of action"). Whether a claim is pleaded as a freestanding "defamation by republication" count or as a "defamation" claim whose only theory of publication and causation rests on a third party's republication is of no importance given this Court, "in construing a claim," looks beyond "the captions and labels in a complaint to the content and substance of the allegations." *Zurich Am. Ins. Co. v. S.-Owners Ins. Co.*, 248 F. Supp. 3d 1268, 1290 (M.D. Fla. 2017) (internal quotations marks omitted)).

Though in the Response Astrobryxa claims it "does not seek to hold CELEC liable for statements made by third parties," the Counterclaims say otherwise. *See, e.g.*, DE 154 at ¶ 83 ("CELEC's email was ***disseminated to the public and was covered in the local news media and on social media***. The Spanish firm saw the media coverage, including coverage related to the email, and terminated the contract."); *id.* ¶ 86 ("[D]ue to ***local media coverage***

surrounding this litigation, other business partners of Astrobryxa learned about the email and terminated their partnerships."). Accordingly, Counts V–VII should be dismissed.

### C. Florida's litigation privilege bars Counts V–VII.

Astrobryxa's principal authority defeats it. In *Grippa*, the Eleventh Circuit reaffirmed that Florida's absolute privilege reaches far beyond the courtroom: it protects statements in "settings that are closely related to courtroom proceedings, including depositions, witness interviews, discovery, settlement discussions, and the like." 133 F.4th 1186, 1197 (11th Cir. 2025). In *Grippa*, the allegedly defamatory communications at issue were letters counsel sent to state officials asking them to investigate an alleged criminal enterprise—conduct the court found fell outside this privilege. Here, though, CELEC's counsel did the opposite of what *Grippa* condemned. He did not contact uninvolved strangers to gin up a new investigation; the *Grippa* letters were unprivileged precisely because the lawyer sent his complaint to uninvolved third parties with the hopes of launching a criminal investigation. In contrast, here, counsel contacted the unrepresented witnesses who *Astrobryxa itself disclosed* under Rule 26(a)(1). Contacting an opponent's disclosed and unrepresented witnesses about the claims in suit is quintessential discovery activity—"discovery" that *Grippa* places squarely within the absolute privilege.

Alternatively, at minimum the qualified privilege attaches to counsel's related, out-of-court statements, defeated only by "express malice." *DelMonico v. Traynor*, 116 So. 3d 1205 (Fla. 2013). Astrobryxa's malice allegations are entirely imaginative. *See* Response at 18 ("The message was not subtle: cooperate with CELEC or you (the witness) will hear

from us (the government). Reading the email objectively, CELEC's claim that the email merely sought to contact witnesses is disingenuous and pretextual."). Astrobryxa's characterization of standard litigation conduct as government threat is unsupported by the email's text. Conclusory assertions of malice, untethered to any specific factual allegations, do not defeat a privilege and do not survive Rule 12(b)(6).

## II. Counts I–III also fail.

### A. No duty to disclose to Astrobryxa existed.

Astrobryxa concedes it had no relationship with CELEC yet nevertheless argues CELEC owed Astrobryxa a duty of disclosure. *See* Response at 2–4. Not so. *See* Motion at 5–8 (discussing duty). Under the Restatement (Second) of Torts, liability for negligent misrepresentation extends only to "a limited group of persons for whose benefit and guidance the defendant *intended* to supply" (or omit) the information, and the defendant must have "intended the information [or omission] to influence" the plaintiff's transaction. *Morgan v. W.R. Grace & Co.–Conn.*, 779 So. 2d 503, 506 (Fla. 3d DCA 2000)). Put differently, liability is "limited not to the foreseeable class of persons who might rely on the representation [or omission thereof], but to those the defendant *actually intended* would rely on the information [or omission]." *Todorovich v. Accrediting Bureau of Health Educ. Schs., Inc.*, 2017 WL 7726705, at *4–5(S.D. Fla. July 24, 2017)).

Here, Astrobryxa pleads no facts in the Counterclaims that CELEC knew it existed at the RFP stage, directed any representation (or omission) to it, or intended its reliance. *See* DE 154. Astrobryxa's conclusory allegations are wholly insufficient to state a claim

for relief. *Id.* ¶¶ 54. Further, Astrobryxa's argument that CELEC later "assumed" a duty by a "voluntary partial disclosure," *see* Response at 4, has no legs, as Astrobryxa cites no relevant authority in support of that theory, nor is CELEC aware of any.

**B. Ecuadorian-law theories add nothing.**

Astrobryxa still identifies no Ecuadorian statute or doctrine creating a disclosure duty from an owner to a downstream subcontractor. *See* Response at 4–5. Its new reliance on Florida's Consultants' Competitive Negotiation Act (CCNA) is misplaced: the statute is a ***Florida*** public-procurement mechanism governing how ***Florida*** agencies select and negotiate with professional-services firms. It imposes no tort duty of disclosure running to a general contractor's subcontractor. Superficially equating "Ecuadorian law"—without any legal support—with the CCNA only underscores that no such duty exists.

**C. The pleading deficiencies the Motion identified remain.**

Because there is no duty, the Court need not reach reliance, intent, materiality, or Rule 9(b). Counts I–III each independently fails for the reasons stated in the Motion: Astrobryxa pleads no CELEC intent that *it* rely on, no CELEC-directed representation, and no facts explaining why a subcontractor would rely on statements to Progen rather than on Progen itself. Further, identifying speakers only by "role and location," Response at 6, does not satisfy Rule 9(b)'s demand for particularity.

**III. Count IV (FDUTPA), too, fails.**

Astrobryxa's argument that FDUTPA has no "directed-at" requirement, Response at 11, misses CELEC's point. For a FDUTPA claim, an alleged deceptive and/or unfair

practice must be injurious to consumers. *See PNR, Inc. v. Beacon Prop. Mgmt., Inc.*, 842 So. 2d 773, 777 (Fla. 2003). Even a non-consumer plaintiff "must allege an unfair or deceptive practice directed at [or injurious to] consumers." *Ounjian v. Globoforce, Inc.*, 89 F.4th 852 (11th Cir. 2023)). And, here, Astrobryxa's claim arises from a foreign government's emergency infrastructure procurement—a context that has nothing to do with consumers. Count IV fails on that threshold ground alone.

Separately, the count fails for the independent and dispositive reason that causation is too remote and speculative. *Stewart Agency, Inc. v. Arrigo Enters., Inc.*, 266 So. 3d 207, 213 (Fla. 4th DCA 2019) ("Causation [under FDUTPA] must be direct, rather than remote or speculative."). Astrobryxa's entire theory—that it "priced and performed based on incomplete information," Response at 12—says nothing about how a non-disclosure by CELEC to Progen during the RFP process would have changed Astrobryxa's conduct as a downstream subcontractor, or how a statement allegedly made to Astrobryxa during a site visit *after* Astrobryxa contracted with Progen could have impacted its prior conduct (in contracting with Progen). Astrobryxa's Response does not address, much less cure, the causal gaps identified in CELEC's Motion. *See* Motion at 15–16. The chain of inferences required to connect CELEC's alleged conduct to Astrobryxa's alleged harm is the kind of attenuated causation FDUTPA does not permit.

## CONCLUSION

For the foregoing reasons and those stated in the Motion [DE 162], CELEC requests that the Court dismiss Astrobryxa's Amended Counterclaims [DE 154] in their entirety, with prejudice, and grant such further relief as the Court deems just and proper.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 18, 2026, I electronically served **Plaintiff's Reply in Support of Its Motion to Dismiss Astrobryxa, S.A.'s Amended Counterclaims** on all counsel of record.

By: */s/ Meredith P. Yates*
Courtney M. Keller, Esquire
Florida Bar No. 28668
Meredith P. Yates, Esquire
Florida Bar No. 1058373

**GREENBERG TRAURIG, P.A.**
450 South Orange Avenue, Suite 650
Orlando, Florida 32801
Telephone: (407) 420-1000
Facsimile: (407) 420-5909
Email: kellerc@gtlaw.com
Meredith.yates@gtlaw.com
Nef-iws@gtlaw.com
ORLLitDock@gtlaw.com

Daniel Pulecio-Boek, Esquire
(admitted *pro hac vice*)
Michael Pusateri, Esquire
(admitted *pro hac vice*)

**GREENBERG TRAURIG, P.A.**
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
Telephone: (202) 331-3117
Email: pulecioboekd@gtlaw.com
pusaterim@gtlaw.com

*Counsel for Plaintiff*