**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

CELEC EP,

Plaintiff,

v. Case No. 8:25-cv-3433-WFJ-SPF

PROGEN INDUSTRIES, LLC;
GENERTEK POWER CORP.;
GENERTEK POWER INDUSTRIES,
LLC; JOHN B. MANNING; W. WADE
MANNING; ANDREW S. WILLIAMSON;
ASTROBRYXA, S.A.; ASTROBYXA, LLC;
AP INSPECTIONS LATINOAMERICA, S.A.;
A.P. INSPECTIONS LLC; H&S INDUSTRY, LLC;
TWO LIONS HOLDING, LLC; AOT HOLDINGS
AG; GESTORES INMOBILIARIOS
LIGHTBLUE, S.A.; and DOES 1-95,

Defendants.
______________________________

PROGEN INDUSTRIES, LLC,

Counter-Plaintiff,

v.

CELEC EP,

Counter-Defendant;
______________________________/

**PROGEN DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

Defendants, Progen Industries, LLC ("Progen"), Genertek Power Corp., Genertek Power Industries, LLC, John B. Manning, W. Wade Manning, Andrew S. Williamson and Two Lions Holdings, LLC (collectively, the "Progen Defendants") submit this Reply in Support of their Motion for Judgment on the Pleadings [ECF 166] (the "Motion").

## INTRODUCTION

Every fact and issue here arises from two breached service contracts for the installation of two power plants in Ecuador. These Ecuadorian contracts envisioned disputes arising from them to be resolved in Ecuador. Despite having no presence or injury in the United States, CELEC elected to bring United States claims in Florida, and to focus the Court's attention on one element of the service contracts: whether the quality of generators that were to be installed by Progen in Ecuador comport with contract terms.

CELEC protests Progen's demonstration that this case logically follows such a question: either Progen performed and earned its payment, or it did not and the non-breaching party has a contract remedy. But CELEC asks the Court to leap past this logic entirely and conclude that the delivery of "old, used" generators under an engineering, procurement and construction contract must be the result of elaborate racketeering and fraud with injury occurring in a country where CELEC does not reside and where the contracts were neither performed nor negotiated. That is despite an Amended Complaint replete with breach allegations and only a misleading web of statements that attempt to construct (inaccurately) a vast RICO and fraud conspiracy.

Once the Court looks past CELEC's RICO packaging of its theories, what remains is a contract dispute between an Ecuadorian government entity whose (now fired and prosecuted) officials mismanaged the contracts for power plants *in Ecuador*, and Progen,

a Florida company that invested and lost millions to perform *in Ecuador*, only to be blocked from completing the work and now forced to defend baseless RICO allegations.

As argued in the Motion, this lawsuit is a poster child for application of the independent tort doctrine (Motion pp. 7-11), and the limitations Courts have placed on RICO claims. Although the Court must decide this motion on the pleadings, Plaintiff's misleading reference to deposition testimony ignores the testimony that explains the industry standard practice of taking parts from other generators to reassemble and upgrade the genset to a "zero hour" standard.[1] Although skillfully (and inaccurately) dressed up as RICO and tort claims, this Court should reject CELEC's artful framing of this dispute and determine that CELEC's claims as pled fail as a matter of law.

**ARGUMENT**

**I. No Domestic Injury**

With regard to the RICO claim, CELEC, a part of the Ecuadorian Government, only claims injury in the United States because it "was deprived [] of the opportunity to contract with reputable U.S.-based bidders who would have actually performed under the Quevedo and Salitral contracts." CELEC Response to Motion at 12 [ECF No. 189-5184] (hereinafter, "Response"). This word salad supports the conclusion that this case ***is*** about performance under the contracts, as argued below in the independent tort doctrine section. But it also has no basis in common sense – CELEC was never constrained as to who it could contract with – it ultimately terminated the Progen contracts (prematurely and wrongfully). In reality, all of the alleged monetary injury to CELEC, part of the

[1] And yes, it is true that the generator refurbishment process includes repainting! Which Plaintiff's counsel excitedly considers a fraudulent act.

Ecuadorian Government, occurred in Ecuador, and the government of Ecuador is actively pursuing criminal actions domestically for those alleged harms suffered in Ecuador

In its Response, Plaintiff relies on the case of *Yegiazaryan v. Smagin*, 599 U.S. 533, 543-44 (2023), which directed lower courts to "look to the circumstances surrounding the alleged [RICO] injury to assess whether it arose in the United States. In this suit, that means looking to the nature of the alleged injury, the racketeering activity that directly caused it, and the injurious aims and effects of that activity." However, the *Yegiazaryan* case did not explain how lower courts were to interpret this new standard, and that case involved very different facts. Smagin, a Russia-based individual, had already obtained a large judgment in California against a California defendant (Yegiazaryan). The RICO lawsuit by Smagin accused Yegiazaryan of creating shell companies to hide his U.S. assets, intimidating a U.S. based witness, all to thwart collection of a California judgment. *Id.* at 545-46. By contrast here, the alleged monetary injury to CELEC manifested in Ecuador, relating to the alleged poor quality of the contracted for generators which CELEC had paid Progen to install. CELEC now seeks to claw back the contract payments it made to Progen. While CELEC asserts that alleged racketeering activity of the Progen Defendants were directed to Ecuador from Florida, those allegations do not override the fact that the dispute centered on the contractual obligation to construct and install generators for use in Ecuador. It is an unreasonable stretch to assert an injury was suffered by a foreign government ***in the United States*** on the construction of power plants abroad. Such a result would open any American company involved in a construction project abroad to RICO claims in the United States. That is exactly what the Supreme Court's RICO extraterritoriality jurisprudence is designed to prevent.

A recent decision from a court in the Middle District of Florida supports rejection of CELEC's theory of RICO injury in a case with much closer facts to CELEC's claims. In *Telematica Lefic, S.A. DE C.V. v. Socorro Marin*, 3:24-00290-WGY-SJH, 2026 WL 1864587, at *5-6 (M.D. Fla. June 20, 2026), the court noted that the Eleventh Circuit has not addressed *Yegiazaryan*, and proceeded to find that there was no domestic injury based on the following allegations:

> (1) the Defendants, while operating from the United States, fraudulently induced the Plaintiffs to wire funds from Mexico banks to United States banks;
> (2) the Defendants fraudulently promised goods for these payments to be supplied from the United States;
> (3) the Plaintiffs had United States contacts, including: the goods that passed through United States Customs, one plaintiff had business meetings with the Defendants in the United States, and a purportedly related corporation was opened in Florida in 2016.

*Telematica Lefic* involved a plaintiff based in Mexico asserting RICO and conversion claims that were based on contract performance. As to the RICO claim, the court concluded that "[r]ecognizing that the purported racketeering acts all occurred within the United States, in the context of all of the circumstances, the fact that no injury was ever incurred within the United States ultimately dooms this claim here." *Telematica Lefic, 2026 WL 1864587, at* *8. This Court should reach the same conclusion here, that even taking Plaintiff's allegations as true for purposes of this motion for judgment on the pleadings, CELEC has showed no injury to it that occurred in the United States.

## II. Independent Tort Doctrine Bars the Claims

CELEC argues in its Response that the independent tort doctrine does not apply because CELEC did not bring a breach of contract action. Response at 13. That is not a

legal basis to reject the independent tort doctrine, as allowing a plaintiff to bypass the doctrine by simply omitting such a claim would completely undermine the doctrine.[2]

The case law cited in the Response (pp. 13-14) is distinguishable. In *Pershing Indus., Inc. v. Est. of Sanz*, 740 So. 2d 1246, 1248 (Fla. 3d DCA 1999), the court's basis for reversing summary judgment for defendant was reference to decisions in which the conversion claim involved a defendant converting plaintiff's property to its own use and/or stealing money to which it was entrusted. In *Alex Hofrichter, P.A. v. Zuckerman & Venditti, P.A.*, 710 So.2d 127 (Fla. 3d DCA 1998), the "defendant has converted partnership funds to personal use." That is not the case here – every payment made by CELEC to Progen was paid pursuant to the parties' contract; the funds were earned by Progen; the money then belonged to Progen to pay to its suppliers, vendors, transportation services and financing obligations.[3]

The third case cited by CELEC proves Progen's point that there is no independent tort here. In *Escudero v. Hasbun*, 689 So.2d 1144, 1146 (Fla. 3d DCA 1997), the defendant asserted that he could not be liable for civil theft of a jointly owned CD after a divorce between the parties. The court ruled that because a subsequent agreement between the parties gave ownership of the CD to plaintiff, she could bring a civil theft claim. *Id.* The

[2] It is also important for the Court to understand that the traditional tort that is allowed in a contract situation is fraudulent inducement to enter the contract. Yet there is no such claim here, and the deadline to further amend the pleadings has passed.

[3] The description by Plaintiff of how Progen disbursed its earned contract payments shows the continued and intentional insertion of pejorative adjectives and adverbs used throughout the Amended Complaint and related briefings to prejudice Defendants in the eyes of the Court. The Response described Progen's quite normal process of paying its suppliers, vendors, transportation services and financing obligations as "systematically draining" its Regions Bank account. Progen paid its suppliers, vendors, transportation providers, and paid out profit to its individual owners despite CELEC's repeated delays in payments.

Court then pointed out when a civil theft claim is barred by the independent tort doctrine:[4]

> a civil theft claim will not lie where there is a contractual dispute over an uncertain or unspecified amount of money alleged to be owed and there is not an identifiable account or piece of property from which the money is to be paid. *See, e.g., Miles Plastering,* 573 So.2d at 931–32 (finding no civil theft action will lie for action brought by subcontractor on construction project against general contractor for payment of services rendered); *Rosen,* 486 So.2d at 625–26 (finding no civil theft or conversion occurred where court determined that case did not involve situation where a party intentionally received a specifically identifiable sum of money knowing that he had no right to take it and who refused to return it; nor was it a case where a party refused to pay over to the demanding party a specific fund capable of separate identification required to be deposited into a special account.

That the parties' Quevedo and Salitral contracts governed all payments and the payments were made pursuant to the parties' contracts is undisputed. All the payments received by Progen and now claimed by CELEC were contract payments. No payments were made nor actions taken by Progen that were outside the contract terms.

The contract specified when payments would be released. All payments were conditioned on inspections conducted by CELEC of equipment before shipment. CELEC alleges "AP Inspections Latinoamerica and A.P. Inspections LLC issued three reports dated September 14 and 15, 2024, falsely stating that Progen had successfully manufactured the 29 new power generators under the Salitral Contract and that those generators were apt for being delivered and installed." Am. Compl. ¶ 57. "Indeed, on September 30, 2024, shortly after the issuance of the three sham reports, CELEC wired $69,580,000 to Progen in the United States." *Id.,* ¶ 58.

---

4 While there is no civil theft claim in the Amended Complaint, the same analysis applies to the conversion and fraudulent transfer claims – the payments were contract payments from CELEC to Progen, earned by Progen under the contracts, and the funds belonged to Progen upon receipt with no obligation to keep separate from the rest of Progen's funds.

The contracts attached to the Amended Complaint [Quevedo Contract (Exhibit B to Am. Compl.) at ECF No. 128-2 at 61; Salitral Contract (Exhibit E to Am. Compl.) at ECF 128-7 at 71-72] required payment of 70% to Progen upon certain conditions and presentation of certain documentation after approval by CELEC representatives.[5]

*Telematica Lefic*, 2026 WL 1864587, at *11, also concluded that Florida's independent tort doctrine barred conversion claims. That court considered the argument that "[w]hile it is true that the Plaintiffs allege the specific dates and amounts associated with each transfer in the amended complaint, see Am. Compl. ¶¶ 19, 21, 24-25, 43, these listed amounts are not independently identifiable outside of the various contracts between the Plaintiffs and the Defendants, meaning that the specificity requirement has not been met, and the independent tort doctrine still applies. Further, a mere obligation to pay money may not be enforced by a conversion action." That is exactly what occurred and what is alleged here.

This Court should similarly closely review the allegations of the Amended Complaint and Progen's Answer and Affirmative Defenses, ignore CELEC's hyperbolic and pejorative statements,[6] and conclude that the tort claims are barred by the independent tort doctrine.

---

5 CELEC's translation of the Quevedo contract Clause 7.2: "Payment terms: Payment, corresponding to one hundred (100% percent of the contract value, shall be made under the following conditions: a) Seventy (70%) percent of the contract value shall be paid by bank transfer abroad to the contractor, upon presentation of the packing list, the inspection report, and factory approval by the Emergency Technical Committee and/or the verifier delegated by CELEC EP for all electrical groups." See ECF No. DE 128-2 at 61. CELEC's translation of the Salitral contract's Clause 7.2 is nearly identical with minor textual differences. *See* ECF No. 128-7 at 71-72.

6 The reference in the Response at page 3 to Defendant John Manning giving counsel the finger is an example of CELEC's ongoing campaign to disparage Progen. John Manning became agitated after he was provoked by counsel asking him for at least the second time, "Do you think this is funny?" Counsel did the same tactic at Defendant Wade Manning's

## III. Additional Arguments in the Motion Still Apply

Space limitations for this reply, as well as the sweeping mischaracterizations in the Amended Complaint and the Response to describe normal business activity by the Progen Defendants, limit the arguments that can be made here. The Progen Defendants reaffirm their arguments that the claims fail to sufficiently allege: i) a RICO enterprise; (ii) a pattern of racketeering activity with adequate continuity; (iii) liability of individual defendants, and (iv) the FUFTA claims because the contract payments were payments earned and thus owned by Progen upon payment by CELEC.

## CONCLUSION

As demonstrated above, every fact and issue here arises from two engineering, procurement and construction contracts that were substantially performed in Ecuador and allegedly breached in Ecuador, leaving two power plants unfinished there. CELEC has pled a breach of contract case artfully dressed in RICO claims, and its Response (including its improper reliance on exhibited invoices for procurement of the generators) only reinforces that CELEC is asking the Court to decide whether Progen delivered what it represented it was capable of delivering and promised under the contracts. Progen urges this Court to reject CELEC's unfounded leap from breach to fraud, and to recognize that any injury CELEC may have suffered occurred in Ecuador, not the United States. These grounds are sufficient to grant judgment on the pleadings as to all claims.

---

deposition. The intent was to intimidate and provoke the witnesses, as is CELEC's campaign in Ecuador to disparage Defendants, which has been referenced in prior submission to the Court. In addition, the Response at page 19 makes reference to what the individual defendants may have done with funds earned through these contracts – those arguments are irrelevant allegations made for the purpose of stigmatizing legitimate businesspersons, followed the scorched earth approach of Plaintiff and its counsel to this contract dispute.

Dated: September 11, 2026

Respectfully submitted,

*/s/ Adolfo E. Jiménez*
Adolfo E. Jiménez
Florida Bar No. 869295
Email: Adolfo.Jimenez@hklaw.com
Gabriella A. Lanzas
Florida Bar No. 1059806
Email: Gabriella.Lanzas@hklaw.com
HOLLAND & KNIGHT LLP
701 Brickell Avenue, Suite 3300
Miami, Florida 33131
Telephone: (305) 374-8500
Facsimile: (305) 789-7799

Philip E. Rothschild
Florida Bar No. 88536
Email: phil.rothschild@hklaw.com
HOLLAND & KNIGHT LLP
515 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301
Telephone: (954) 525-1000

and

Jason H. Baruch
Florida Bar No. 10280
Jason.baruch@hklaw.com
Anne Colbert
Florida Bar No. 1026226
anne.colbert@hklaw.com
HOLLAND & KNIGHT LLP
100 N. Tampa Street, Suite 4100
Tampa, FL 33602
Telephone: (813) 227-8500
Facsimile: (813) 229-0134 (fax)

*Attorneys for Defendants Progen Industries, LLC; Genertek Power Corp.; Genertek Power Industries, LLC; John B. Manning; W. Wade Manning; Andrew S. Williamson; and Two Lions Holdings, LLC.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 11, 2026, I electronically filed Progen Defendants' Reply in Support of Motion for Judgment on the Pleadings through the court's CM/ECF system, which caused an electronic copy of the forgoing to be served on all counsel of record.

*/s/Adolfo E. Jiménez*
Adolfo E. Jiménez