**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| CELEC EP,<br><br>Plaintiff,<br>v.<br><br>PROGEN INDUSTRIES, LLC, *et al.*,<br><br>Defendants. | No. 8:25-cv-03433-WFJ-SPF<br><br>Judge Jung |

**PLAINTIFF'S EMERGENCY MOTION TO COMPEL RULE 34 INSPECTION AND OVERRULE PROGEN'S OBJECTIONS**

Plaintiff CELEC EP ("CELEC"), through undersigned counsel and pursuant to Federal Rules of Civil Procedure 37(a), respectfully moves this Court for an Order compelling Defendant Progen Industries, LLC ("Progen") to permit the Rule 34(a)(2) inspection of its facilities to proceed on November 5, 2026 without the unilateral one-hour time limit Progen seeks to impose, and overruling Progen's objections on that point. CELEC seeks a reasonable opportunity to complete a limited, nonintrusive inspection—not an unrestricted or indefinite visit.

**Statement of Exigency (Local Rule 3.01(f))**

Pursuant to Local Rule 3.01(f), CELEC submits this motion as an emergency motion and states the nature of the exigency. **The inspection at the heart of this dispute is scheduled for November 5, 2026**. This inspection will allow CELEC's expert to assess Progen's equipment, infrastructure, and manufacturing capabilities and evaluate its capacity to manufacture the generators it represented it would supply under the Quevedo

and Salitral Contracts.[1] CELEC's expert has already arranged travel to Florida to conduct it. But as of this morning, November 3, 2026, Progen has confirmed that it will not permit the inspection to proceed unless CELEC accepts an arbitrary one-hour cap and that CELEC "will need to move to compel" if it wishes to proceed without that limit.

Because the inspection is set for November 5, 2026, **CELEC respectfully requests that the Court hear and rule on this Motion by November 4, 2026**, so that the inspection may proceed as scheduled without an arbitrary time limitation.

## Introduction

After extensive conferral and successive exchanges of a proposed inspection protocol, the parties have resolved every dispute concerning CELEC's inspection of Progen's facilities but one: Progen's insistence on a unilateral, one-hour cap on the time CELEC's expert may spend conducting it, regardless of what the inspection reasonably requires. That single condition is unreasonable and unsupported. Progen has offered no evidence—no affidavit, no particularized explanation, etc.—that an inspection of the length CELEC anticipates would impose any undue burden on its operations. Instead, Progen relies on a generalized assertion of "disruption to the workplace" and demands that CELEC agree in advance to a fixed cutoff for an inspection of facilities CELEC's expert has never seen. CELEC cannot responsibly agree to a hard time limit without knowing what is presently inside Progen's facilities—information it will not have until the inspection itself.

---

[1] The inspection also bears directly on CELEC's expert disclosure, the deadline for which is currently November 5, 2026 (and the subject of CELEC's pending, unopposed motion to extend, *see* D.E. 222).

CELEC has accepted substantial safeguards to minimize disruption to Progen's operations. The inspection will involve only one expert and one attorney, escorted by Progen's inspection team. It is limited to visual observation, still photography, and measurements of the facilities' exterior and interior operational areas. CELEC will not examine documents, question personnel, manipulate equipment, or enter administrative spaces. CELEC has also agreed to cooperate in good faith to complete the inspection as expeditiously and efficiently as reasonably practicable.

Those safeguards address the manner and scope of the inspection. Progen nevertheless demands an additional time restriction without identifying any specific operation that would be disrupted or explaining why an inspection lasting approximately two to three hours would impose an undue burden while a one-hour inspection would not.

CELEC is not demanding unlimited access to Progen's facilities. It is asking for the time reasonably necessary to complete the inspection it requested. A generalized concern about workplace disruption does not justify cutting that inspection short. For the law does not permit a responding party to dictate the terms of an otherwise proper Rule 34 inspection by decree. The manner, conditions, and timing of such an inspection rest with the Court, which exercises that authority only against a party's particularized showing of burden— a showing Progen has not made and cannot make.

CELEC has bent over backwards to accommodate Progen, conceding point after point to avoid burdening the Court with this dispute. With the inspection just two days

away, only Progen's arbitrary time cap remains. CELEC respectfully asks the Court to overrule it and permit its inspection to proceed on November 5, 2026, as scheduled.

## Background

1. On October 9, 2026, CELEC served its First Request for Inspection on Progen under Rule 34(a)(2) of the Federal Rules of Civil Procedure so that its expert may conduct an inspection of Progen's facilities in support of his expert report. *See* Exhibit A (CELEC's First Request for Inspection).

2. CELEC asked for the inspection of Progen's facilities to occur on October 22, 2026. However, on October 16, 2026, Progen shared that it was unavailable on this date, instead stating it would be available for the inspection on November 4,2026—just **one day** before CELEC's expert deadline. CELEC's expert was not available on November 4, 2026, so the parties agreed for the inspection to take place on **November 5, 2026**.

3. The inspection is to take place in two parts, both of which will occur on November 5, 2026. The first will occur at Progen Industries LLC's facility located at 600 Prairie Industrial Pkwy, Mulberry, FL 33860, at 10 a.m. E.T. The second will occur at Progen Industries LLC's property adjacent to aforementioned facility, located at 520 Prairie Industrial Pkwy, Mulberry, FL 33860. The second inspection will begin immediately upon the conclusion of the first inspection.

4. As CELEC's First Request for Inspection explains, "[e]ach inspection is expected to take approximately two to three hours." Exhibit A.

5. On October 27, 2026, Progen served its Answer to CELEC's Request for Inspection, *see* Exhibit B (Progen's Answer to CELEC's First Request for Inspection), raising multiple unreasonable objections and conditions to the inspection, including, for example:

a. That the "time [the inspection] allows is unreasonable." Ex. B at 2.

b. That the Request "does not identify" the expert. Ex. B at 3.

c. That the Inspector "may not take any photographs . . . inside the building during the inspection." Ex. B at 3.

d. That CELEC must "produce" copies of any measurements and notes taken during the inspection to Progen after the inspection. Ex. B at 3.

e. That all notes be prematurely designated as "Confidential" under the parties' confidentiality agreement. Ex. B at 3.

6. On October 19, 28, 29, 30, and November 2, counsel for CELEC and Progen met and conferred regarding the inspection and the accompanying parameters.

7. Progen represented that **it would not permit the inspection to proceed without a written inspection protocol in place**.

8. While the parties negotiated the written protocol, on October 29, 2026, CELEC moved on to amend the case management schedule, seeking a two-week extension of expert report deadlines so that CELEC's expert will have time to incorporate his findings during the inspection into his expert report. *See* D.E. 222. No party opposes CELEC's request for this modification of the case management schedule. The Court has not ruled on this Motion [DE 222] to-date.

9. In a good faith effort to resolve the parties' inspection dispute without involving the Court, CELEC agreed to provide the name and CV of its expert to Progen before the inspection as a courtesy—not as a matter of legal obligation. In turn, Progen agreed to permit CELEC's expert to take interior photographs of its manufacturing facilities. And the parties agreed that while Progen may seek CELEC's expert's notes through discovery, CELEC would not be obligated to turn them over to Progen as a condition for the inspection. CELEC did, however, agreed to provide all photographs its expert takes to Progen within seven (7) days of the inspection—again, not as a matter of legal obligation, but as a courtesy so that the parties could reach a compromise without involving the Court in this discovery dispute.

10. On Friday, October 30, 2026, Progen circulated a draft written protocol to CELEC. The very next day, on October 31, 2026, CELEC responded with its proposed edits. On November 1, 2026, Progen responded, accepting some edits while rejecting others. On November 2, 2026, CELEC responded that all of Progen's edits were acceptable to CELEC <u>except</u> for Progen's requirement that the inspection be limited to one hour. CELEC explained that it would not agree to a unilateral and arbitrary time limit on the inspection without knowing the specifics of what is currently inside Progen's facilities—which CELEC will not know until the inspection itself.

11. CELEC proposed alternative language to Progen's hard time limit, which Progen accepted—specifically, that the parties would "cooperate in good faith to conduct the inspection as expeditiously and efficiently as reasonably practicable in

order to minimize disruption to Progen's operations and to respect the parties' schedules." But Progen still would not agree to remove the hard time limit.

12. During a phone conversation on November 2, 2026, counsel for Progen suggested its team might by amenable to removing the time limit if CELEC would add a "purpose" clause to the inspection protocol. Put differently, if CELEC put in writing the purpose of its inspection, Progen suggested (but did not guarantee) that it would agree to remove the arbitrary time cap.

13. Accordingly, on November 2, 2026, counsel for CELEC sent a revised written protocol to Progen which added a "purpose" clause and explained CELEC's litigation strategy—its "why" behind the inspection. A copy of the most recent draft protocol sent to Progen is attached hereto as Exhibit C. CELEC maintains it should not have been obligated to add this "purpose" clause as a condition of the inspection, but it did so in good faith and as a gesture of goodwill so that the parties could finally finalize the inspection protocol—the protocol Progen demanded and conditioned the inspection upon.

14. A copy of CELEC and Progen's email correspondence is attached hereto as Exhibit D.

15. This morning, on November 3, 2026—just **two days before the inspection**—counsel for Progen shared that "Progen maintains its position that there must be a limit to the time provided for the inspection" and that if CELEC "wishes to proceed . . . it will need to move to compel." *See* Exhibit D.

16. Progen's position presents a false choice between a one-hour cutoff and an unlimited inspection. CELEC's Request already supplies an anticipated duration—approximately two to three hours per location—and CELEC has committed to completing the inspection efficiently and minimizing disruptions to Progen's operations. CELEC seeks a reasonable opportunity to finish the inspection, not permission to remain at Progen's facilities indefinitely.

17. CELEC's expert has already arranged travel to Florida for the November 5, 2026, inspection. CELEC advised Progen that it would seek appropriate fees and costs if the inspection does not proceed as scheduled. *See* Exhibit D.

18. With the inspection two days away and conferral exhausted, CELEC now seeks the Court's emergency intervention.

## **Standard**

Under Rule 37(a), a party may move for an order compelling discovery. This includes an order compelling an inspection under Rule 34 when a party "fails to permit inspection." Fed. R. Civ. P. 37(a)(3)(B)(iv). Motions to compel discovery under Rule 37(a) are committed to the sound discretion of the trial court. *See Commercial Union Ins. Co. v. Westrope*, 730 F.2d 729, 731 (11th Cir. 1984) (per curiam). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." *See* Fed. R. Civ. P. 26(b)(1).

"In accordance with Rule 26(b), '[a] court evaluating a request to permit entry under Rule 34 will consider the relevance of the inspection and balance the value of

the information sought with the burden of the proposed intrusion.'" *Abbott v. Am. Bankers Ins. Co. of Fla.*, No. 5:25-CV-567-ACC-PRL, 2026 WL 1537787, at *2 (M.D. Fla. June 1, 2026) (quoting *Alum Fund, LLC v. Greater Nevada Credit Union*, No. 2:23-cv-1159-JLB-KCD, 2024 WL 1907276, at *2 (M.D. Fla. May 1, 2024)). "The proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant. . . . Evidence is relevant if it has any tendency to make the existence of any fact or consequence more or less probable than it would be without the evidence." *Bemesderfer v. United Parcel Serv., Inc.*, No. 6:22-cv-270-PGB-EJK, 2023 WL 2810703, at *2 (M.D. Fla. Apr. 6, 2023) (citations and internal quotation marks omitted).

## <u>Argument</u>

### I. The Court should permit CELEC's inspection to proceed without an unreasonable and unsupported one-hour time limit.

The Court need not wade through the catalog of boilerplate objections in Progen's Answer to the First Request for Inspection. *See* <u>Exhibit B</u>. Through five rounds of conferral and extensive protocol negotiation, the parties have resolved all of them. The *sole* remaining dispute between the parties is Progen's demand for a one-hour cap on an inspection that CELEC's own Request estimates will take "approximately two to three hours." <u>Exhibit A</u>.

CELEC bears only the initial burden of showing the inspection is relevant,*Bemesderfer*, 2023 WL 2810703, at *2, and Progen does not seriously dispute the inspection's relevance; Progen has agreed the inspection may proceed. The

inspection is relevant as it will allow CELEC's expert to assess Progen's supposed equipment, infrastructure, and manufacturing capabilities and evaluate its capacity to manufacture the generators it would supply under the Quevedo and Salitral Contracts.

The only question that remains is on what terms the inspection may proceed, and on that question, the burden belongs to Progen.

But Progen has not carried—and *cannot* carry—that burden. Progen offers nothing more than a generalized assertion that a time limit is "important given the disruption to the workplace from the inspection." Exhibit D. But Progen does not identify the affected operations, describe the anticipated disruption, or explain why allowing approximately two to three hours rather than one hour at each location would create an undue burden. Nothing in the cited correspondence substantiates its proposed cutoff. *See* Exhibit D.

This is precisely the kind of conclusory, unsupported objection this District regularly rejects. A party resisting discovery on burden grounds "must present evidence, such as an affidavit, showing that it would be unduly burdensome," and unsupported objections are overruled. *See Allstate Ins. Co. v. Auto Glass Am., LLC*, No. 6:18-cv-2184-Orl-41LRH, 2020 WL 6882166, at *3 (M.D. Fla. Oct. 16, 2020) ("A party seeking to avoid discovery based on undue burden must present evidence, such as an affidavit, showing that it would be unduly burdensome to comply with the discovery request at issue." (citations omitted)); *see, e.g.*, *Disney Enters., Inc. v. Secret Dis Grp. LLC*, No. 6:22-CV-2417-RBD-LHP, 2024 WL 621598, at *5 (M.D. Fla. Feb. 14, 2024) (same).

Here, Progen has submitted no affidavit, identified no specific operation that one additional hour of inspection would disrupt, and offered no detailed explanation as to the nature and extent of the claimed burden. Its "disruption to the workplace" refrain is the kind of vague, generalized, and boilerplate assertion that this Court "does not consider." *See Asphalt Paving Sys., Inc. v. General Combustion Corp.*, No. 6:15-cv-49-Orl-41TBS, 2016 WL 3167712, at *2 (M.D. Fla. June 7, 2016) ("The Court does not consider frivolous, conclusory, general, or boilerplate objections." (citation omitted)).

Importantly, Progen's registration as Foreign Limited Liability Company in the State of Florida is currently revoked and the entity is deemed "Inactive." *See* Exhibit E (Foreign LLC Registration). Thus, it is unclear exactly what business operations CELEC would be "disrupting" during the inspection.

The cap is also arbitrary on its own terms. CELEC cannot responsibly agree to a fixed cutoff without knowing the specifics of what is currently inside Progen's facilities, which CELEC will not know until the inspection itself. CELEC's expert has not yet seen the facilities and cannot reliably determine in advance how much time will be needed to observe, photograph, and measure the relevant operational areas. A time limit untethered to any assessment of what the inspection will actually require is the definition of arbitrary.

In sum, CELEC has not sought an open-ended intrusion: it has committed to conduct the inspection "as expeditious[ly] and efficient[ly] as possible so as to minimize any disruptions to [Progen's] business operations," and has proposed protocol language requiring both parties to cooperate in good faith toward exactly that

end. *See* Exhibits C and D. Progen's insistence on a hard cap for the inspection in the face of CELEC's good-faith commitment—especially where CELEC's counsel has conveyed it is "optimistic the inspection will take less than an hour," *see* Exhibit D—is unreasonable.

Additionally, the sequence of Progen and CELEC's conferral on this issue is itself both troubling and telling. After Progen's counsel suggested on November 2 that Progen might be amenable to removing the time limit if CELEC added a "purpose" clause, CELEC promptly did so. Yet this morning, on November 3, Progen reiterated its demand for a hard cap and directed CELEC to move to compel. Whatever Progen's subjective intent, the effect was to leave CELEC with less than two days to seek relief, despite CELEC's repeated efforts to reach agreement and its acceptance of substantial inspection safeguards. Progen's last-minute insistence—after CELEC addressed the concern Progen had identified—underscores why the unsupported time cap should not be permitted to stand. Progen has used time to its advantage to strongarm CELEC into conditions that are unreasonable at the eleventh hour so that CELEC is forced to choose between agreeing to the unreasonable condition or seeking emergency relief. The Court should not permit Progen to exploit the approaching inspection date to impose a restriction it has not supported with a particularized showing of burden.

## II. Emergency relief is warranted because the inspection is two days away.

The relief CELEC seeks is time-sensitive. The inspection is scheduled for November 5, 2026, and CELEC's expert has already arranged travel to Florida to conduct it. Progen made clear on the morning of November 3, 2026, that it will not

permit the inspection to proceed without the time cap and that CELEC "will need to move to compel" to proceed otherwise. *See* Exhibit D. CELEC has done so as quickly as possible. The inspection also feeds directly into CELEC's expert disclosure, the deadline for which is currently November 5, 2026 and the subject of CELEC's pending, unopposed motion to extend [D.E. 222], on which the Court has not yet ruled.

Absent a ruling before November 5, 2026, CELEC will be forced either to forgo an inspection to which it is entitled or to conduct it under an arbitrary constraint that may prevent its expert from gathering the information his report requires. CELEC therefore respectfully requests a ruling **by November 4, 2026.**

**III. CELEC is entitled to its reasonable expenses and fees in seeking this relief.**

If the Court grants this Motion, Rule 37(a)(5)(A) requires—after an opportunity to be heard—an award of CELEC's reasonable expenses incurred in making it, including attorneys' fees, unless CELEC filed the Motion before making a good-faith effort to resolve the dispute, Progen's position was substantially justified, or other circumstances would make an award unjust. *See* Fed. R. Civ. P. 37(a)(5)(A). None of those exceptions applies here. CELEC repeatedly conferred, accepted substantial inspection safeguards, proposed language to minimize disruption, and added a purpose clause after Progen suggested that doing so might resolve the dispute. Progen nevertheless maintained its unsupported one-hour cap and directed CELEC to move to compel. CELEC therefore requests an award of its reasonable expenses, including attorneys' fees, incurred in bringing this Motion.

## Conclusion

Progen cannot make a limited inspection ineffective by imposing a cutoff unsupported by any particularized showing of burden. CELEC has accepted substantial safeguards and committed to minimizing disruption; it asks only for the time reasonably necessary to complete the inspection. The Court should reject Progen's arbitrary cap and allow the inspection to proceed as scheduled.

WHEREFORE, CELEC respectfully requests the Court to enter an Order before November 5, 2026, (a) compelling Progen to permit the Rule 34(a)(2) inspection of the properties located at 600 and 520 Prairie Industrial Pkwy, Mulberry, Florida to proceed on November 5, 2026, without the unilateral one-hour time limitation Progen seeks to impose; (b) overruling Progen's objection to the time allowed for the inspection; (c) awarding CELEC its reasonable expenses, including attorneys' fees, incurred in making this Motion pursuant to Rule 37(a)(5)(A) , and (d) granting such further relief as the Court deems just and proper.

**<u>Certificate of Conferral</u>**

Undersigned counsel certifies that she has conferred extensively with counsel for Progen regarding the relief sought herein, and Progen opposes the relief sought herein.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 3, 2026, I electronically filed **Plaintiff's Emergency Motion to Compel Inspection and Overrule Progen's Objections** with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

By: */s/ Meredith P. Yates*
Courtney M. Keller, Esquire
Florida Bar No. 28668
Meredith P. Yates, Esquire
Florida Bar No. 1058373

**GREENBERG TRAURIG, P.A.**
450 South Orange Avenue, Suite 650
Orlando, Florida 32801
Telephone: (407) 420-1000
Facsimile: (407) 420-5909
Email: kellerc@gtlaw.com
Meredith.yates@gtlaw.com
Nef-iws@gtlaw.com
ORLLitDock@gtlaw.com

Daniel Pulecio-Boek, Esquire
(admitted *pro hac vice*)
Michael Pusateri, Esquire
(admitted *pro hac vice*)

**GREENBERG TRAURIG, P.A.**
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
Telephone: (202) 331-3117
Email: pulecioboekd@gtlaw.com
pusaterim@gtlaw.com

*Counsel for Plaintiff*