**THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| CELEC EP,<br><br>Plaintiff,<br>v.<br><br>PROGEN INDUSTRIES, LLC, *et al.*,<br><br>Defendants. | No. 8:25-cv-03433-WFJ-SPF<br><br>Judge Jung |

**PLAINTIFF'S MOTION TO COMPEL DEPOSITIONS, RESPONSES TO INTERROGATORIES, AND PRODUCTION**

Plaintiff CELEC EP ("CELEC"), through undersigned counsel and pursuant to Federal Rules of Civil Procedure 37(a), hereby moves this Court for an Order (i) compelling Progen to provide deposition dates for Shane Lawlor, Garrett Kyle and Andrew Williamson; (ii) compelling Progen to unredact key documents; (iii) compelling John Manning and Progen to provide full and complete responses to CELEC's interrogatories; (iv) compelling Andrew Williamson and Two Lions to respond to the Second Set of Interrogatories; and (v) compelling Progen to produce documents responsive to CELEC's requests for production of documents. In support thereof, CELEC states as follows:

## INTRODUCTION

Discovery to date has revealed substantial evidence supporting CELEC's allegations of fraud at the heart of this case. Progen's deficient and delayed production has left material questions unanswered, prompting CELEC to seek information through early depositions, interrogatories and third-party discovery. Indeed, Progen has

repeatedly sought to impede CELEC's efforts to develop the evidentiary record. It has moved on three occasions to block third-party discovery, arguing each time that such discovery is unnecessary because Progen itself will produce the relevant information. Progen now refuses to provide deposition dates for three key witnesses—Shane Lawlor, Garrett Kyle and Defendant Andrew Williamson. It has also failed to provide adequate interrogatory responses, comply with its document-discovery obligations, and remove redactions on critical information in its documents.

The five depositions that CELEC has taken to date—those of John Manning, Wade Manning, Karla Saud Calero (Astrobryxa's owner), Jose Manrique and Kerry White—have uncovered evidence directly bearing on the fraud allegations. CELEC was compelled to take these depositions relatively early in discovery and without the benefit of complete document productions because Defendants' delayed and deficient productions left CELEC with no other practical means of developing the factual record.

The deposition testimonies have been particularly revealing. John Manning, when questioned about WhatsApp messages he exchanged with Karla Saud, confirmed that the documents they were providing to CELEC to substantiate their experience "would land us in jail" and that "we are committing fraud if we say new engines." D.E. 190 Ex. B at 290:15-16; 293:20-22. Wade Manning testified that, at the direction of John Manning and Andrew Williamson, Progen removed the generators' original tags and replaced them with Progen tags to pass them off as new. D.E. 167, Ex. C at 128:8–130:22. When asked whether Progen had disclosed that the promised generators were old and refurbished instead of new, Wade answered, "The answer is emphatic no." *Id.* at 92:18–93:18. Non-

party witness Kerry White testified that he sold old and used generators to Progen, some of which are "20 years old now," and Progen repainted them to pass them off as new. Exhibit A (Kerry White Deposition Transcript) (attached) at 37:21-25 – 38:24, 39:20 – 40:23, 31:13-16, 43:20 – 44:17, 54:17 – 55:11. He further testified that the source of the generators included scrapyards in Turkey. Ex. A at 30:15-18. 44:1-17.

The documentary record confirms the same. Documents produced in discovery show Progen had no experience manufacturing generators or building power stations and thus defrauded CELEC into believing it had substantial power generation experience in similar projects. *See, e.g.,* Exhibit B (identifying Ecuador contracts as "largest contract to date" and showing other projects by Progen failed). Messages between John Manning and Jose Manrique, Astrobryxa's owner, discuss finding a "friendly verifier" for the sham inspections on the old and used generators, restricting videos and photographs during the inspections, and "hid[ing]…old spare parts" so CELEC's delegates would see "everything new." *See* Exhibit C. Progen's financial records also show how it embezzled CELEC's money. Progen's internal spending-tracking reports reflect only a fraction of the roughly $110 million CELEC paid was spent in connection with the generators. *See* Exhibit D (combined tracking sheets). Because Progen was not manufacturing anything, the cost of attempting to refurbish old, used generators and pass them off as new was minimal. *See id*. Meanwhile, CELEC's funds were diverted to other purposes, including, for example, the purchase of real estate for $4,545,000 bought in the name of a Williamson-controlled sub-entity, MyBox, Inc. *See* Exhibit E (Buyer's Closing Statement).

CELEC served its first requests for production on the Progen Defendants on February 13, 2026. After two minor productions in May and June, CELEC began pressing as early as June 29, 2026, for confirmation of when productions would be substantially complete. Exhibit F. Further, the Progen Defendants were not forthcoming to CELEC about the provenance of the emails contained in the first production. In particular, the "folder path" for the emails relating to account "hs@progen1.com" showed: "Astrobryxa Controlled Emails/Astrobryxa PGN Email/HS/." When asked about that email account, the Progen Defendants' counsel attempted to disclaim Progen's control of that email account and stated that Astrobryxa had "exclusive access to, and control over" it. Exhibit G. The Progen witnesses deposed to date have all confirmed that Progen established and apparently had access to the hs@progen1.com email account. D.E. 190 Ex. B at 215:19 – 216:7-20; D.E. 167 111:7-11,

After numerous follow ups, on August 6, 2026, Progen represented to CELEC that its production was substantially complete. Exhibit H. CELEC has since identified substantive deficiencies and sought to resolve them through meet-and-confer efforts. To date, Progen has not cured those deficiencies. CELEC also served interrogatories aimed at developing facts that were in question after Progen's deficient productions and that required further investigation following each deposition. Progen, however, refuses to provide proper responses.

Moreover, Progen now refuses to provide deposition dates for Shane Lawlor, Garrett Kyle, and Andrew Williamson. It has conditioned dates for Shane Lawlor and Garrett Kyle on scheduling CELEC's corporate-representative depositions. The only

reason why the corporate-representative depositions have not been scheduled is because Progen delayed them by filing a frivolous motion to compel in-person attendance, which the Court denied; CELEC's four corporate representatives are now working to provide updated dates for their depositions. As for Andrew Williamson, Progen has provided no date certain for a deposition, stating only that he will sit as soon as his health permits. Mr. Williamson's counsel revealed issues with his health, for the first time, two weeks before his scheduled deposition. Progen recently advised CELEC that Andrew Williamson is expected to be available in February 2027, right before discovery closes. *See* D.E. 206.

The Progen Defendants' discovery misconduct must stop.

## LEGAL STANDARD

Under Rule 37(a), a party may move for an order compelling disclosure or discovery. This includes an Order compelling depositions, compelling answers to interrogatories submitting under Rule 33, and compelling production of documents as requested under Rule 34. *See* Fed. R. Civ. P. 37(a)(3)(iii)–(iv) (permitting motion to compel interrogatories answers and production of documents); Fed. R. Civ. P. 37 advisory committee's note (1970 Amendment) (permitting motion to compel deposition) ("Rule 37(a) provides relief to a party seeking discovery against one who, with or without stated objections, fails to afford the discovery sought. It has always fully served this function in relation to depositions . . . .").

## ARGUMENT

**1. The Court should enter an order compelling deposition dates for Shane Lawlor, Garrett Kyle, and Andrew Williamson.**

***Shane Lawlor and Garrett Kyle***. CELEC requested dates for Shane Lawlor's and Garrett Kyle's depositions on September 2. *See* Exhibit I. Both of them were identified by John Manning and Wade Manning in their depositions as the key Progen executives responsible for the contracts with CELEC. D.E. 190, Ex. B at 19:18-22, 149:18-22; D.E. 167, Ex. C at 47:5-6, 49:7-9. Moreover, they are related to the masterminds of the fraud – John Manning and Andrew Williamson. Lawlor is married to John Manning's daughter. D.E. 190, Ex. B at 19:13-22; D.E. 167, Ex. C at 58:15-24. Kyle is Andrew Williamson's son. D.E. 190, Ex. B at 86:14-17; D.E. 167, Ex. C at 161:17-19. Both Lawlor and Kyle also profited substantially from the fraud—payroll records show them receiving substantial paychecks and bonuses from CELEC's money. *See, e.g.,* D.E. 70, Ex. C (Regions Records Nov. 2024 – Jan. 2026); Exhibit J (Regions Records June 2024 – Nov. 2024); Exhibit K (Payroll Records).[1]

Progen responded that it would schedule their depositions *after* it was afforded the opportunity to depose CELEC's corporate representatives. That same day, CELEC advised that it would move to compel deposition dates if Progen refused to provide availability. CELEC advised on two additional occasions that it would seek relief from the Court if Progen continued to withhold dates. On October 6, Progen reaffirmed that it would schedule Lawlor's and Garrett's depositions only after CELEC's corporate representative depositions were scheduled. The next day, Progen again conditioned deposition dates on the scheduling of CELEC's corporate representatives' depositions.

[1] CELEC will be moving to file Exhibits J and K under seal because Progen has designated them as Confidential under the parties' confidentiality agreement.

Progen's misconduct is indefensible. CELEC offered its corporate representatives and provided their availability as early as September 21. Exhibit L. The only reason the scheduling of those depositions was not finalized is because Progen filed a frivolous motion to compel in-person attendance of those witnesses, which the Court denied on October 22. *See* D.E. 213.

Worse, Progen's refusal to provide deposition dates has no basis in the Federal Rules. Progen cannot make the scheduling of its witnesses contingent on the sequence of CELEC's depositions. That position also conflicts with Rule 26(d)(3), which permits discovery methods to be used in any sequence and provides that one party's discovery does not require another party to delay its own. Fed. R. Civ. P. 26(d)(3). These witnesses' have firsthand knowledge of information that is directly relevant to CELEC's allegations of fraud.

***Andrew Williamson***. CELEC has sought Defendant Williamson's deposition for more than three months. It requested dates on June 29, and noticed his deposition for August 19. Exhibit M. On August 5, Progen advised for the first time that Mr. Williamson could not proceed for health reasons. CELEC postponed the deposition, *see* Exhibit N, and has accommodated that concern and followed up repeatedly, but Progen has provided neither a date certain nor a concrete schedule for determining when he can testify. Instead, Progen has stated only that Mr. Williamson will sit when his health permits. To date, Progen has not provided *any* documentation of the condition on which the indefinite delay rests. Most recently, on October 21, Progen stated that Andrew Williamson is *expected* to be available in February 2027, after discovery closes. Exhibit O.

That delay prevents CELEC from pursuing any follow-up discovery his testimony may warrant before the fact discovery deadline.

Together, these three witnesses have firsthand knowledge of the fraud the Progen Defendants perpetrated against CELEC, and the embezzlement of CELEC's payments. Their testimony is critical to the issues in dispute and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). CELEC therefore respectfully requests that the Court compel deposition dates for Shane Lawlor, Garrett Kyle Williamson, and Andrew Williamson.

**2. The Court should enter an order compelling Progen to unredact key documents.**

***Contract History Summaries***. Two documents contained in Progen's document productions shed further evidence into Progen's utter lack of experience and related misrepresentations to CELEC about the same. Those documents are summaries of Progen's contract history. *See* Exhibit B. Progen unilaterally redacted most of the information in those documents. Those documents contain key information showing Progen did not have the power generation experience that it represented to CELEC to induce CELEC into paying it nearly $110 million. D.E. 128 at ¶¶ 2, 30, 56.[2]

***Payroll Records***. On June 10, 2026, CELEC subpoenaed non-party Kronos Saahr for employee payroll spreadsheets after CELEC identified substantial funds flowing from Progen's Regions Bank account into which CELEC had deposited funds to Kronos Saahr. Progen moved for a protective order concerning those records, but the Court

[2] Progen insists on producing documents with unilateral redactions of key information. In its latest production on October 26, it again included two documents that clearly contain relevant information with redactions: PROGEN-00089923 and PROGEN-00095442 (Confidential). *See* Exhibit P (non-confidential document attached).

denied its motion. D.E. 149; D.E. 184. Kronos Saahr made a partial production to CELEC but transmitted the key documents—spreadsheets identifying payroll recipients and amounts—to Progen, deferring to Progen to produce them to CELEC. Exhibit Q.

Progen then produced the Kronos Saahr spreadsheets unilaterally redacting employees' last names, addresses and Social Security numbers.[3] CELEC challenged the last name redactions, but Progen refused to remove the redaction. As a compromise, CELEC offered to limit its request to the last names of Defendants and their relatives. Progen again refused, choosing to unredact only the last names of Defendants Andrew Williamson and Wade Manning. *See* Exhibit O; Exhibit K.

It is clear Progen refuses to disclose the last names of Andrew Williamson's and John Manning's relatives because those names would reveal substantial funds were diverted to them under the guise of payroll. For example, the redacted spreadsheets show significant payments to individuals identified only as "Shane," "Garrett," "Joseph," "Jennifer," and "Laura." *See* Exhibit K. The unredacted spreadsheets would show these individuals are members of the Williamson, Manning, and Lawlor families. This information is critical to CELEC's effort to show its funds were not used for any project-related purpose but were instead pocketed by the Defendants and their family members.

Progen's unilateral redaction of information in key documents on the ground that it is irrelevant has no legal basis. A producing party "cannot unilaterally redact portions of otherwise discoverable, non-privileged documents based on its own belief that portions

[3] To be clear, CELEC neither opposes the redactions of SSNs and addresses, nor the treatment of the spreadsheets as Highly Confidential under the Protective Order.

of the documents are irrelevant." *Bonnell v. Carnival Corp., No.*, No. 13-22265-CIV, 2014 WL 10979823, at *4 (S.D. Fla. 2014). Relevance-based redactions are "heavily disfavored." *LSM Techs. PTY LTD v. Sy-Klone Co., LLC*, No. 3:22-CV-1019-BJD-MCR, 2023 WL 5934538, at * 5 (M.D. Fla. 2023).

**3. The Court should enter an order compelling John Manning and Progen to provide full and complete responses to CELEC's interrogatories.**

Rule 33 permits a party to serve an interrogatory that relates to any matter within the scope of Rule 26(b). Fed. R. Civ. P. 33(a)(2). A responding party has a duty to answer an interrogatory "reasonably, in good faith, and according to the meaning the plain language of the interrogatory would naturally import." *Giroux v. Kangamiut Contractors ApS*, No. 3:10-cv-35-J-37JBT, 2011 WL 3702422, at * 2 (M.D. Fla. 2011). In answering interrogatories, each interrogatory must be answered separately and fully in writing. Fed. R. Civ. P. 33(b)(3). An answer must be designed to "provide, rather than deny, information." *Id.* An evasive or incomplete answer or response must be treated as a failure to answer or respond. Fed. R. Civ. P. 37(a)(4). When a party fails to answer an interrogatory, the party seeking the discovery may move to compel the response. Fed. R. Civ. P. 37(a)(3)(B)(iii).

***John Manning and Progen***. John Manning's and Progen's responses (which are virtually identical) to CELEC's Second Set of Interrogatories, Exhibit R (combined), are evasive or incomplete, for the reasons set forth below:

- **Interrogatory No. 1:** This interrogatory asks Manning and Progen to identify, by specific Bates numbers, all documents and communications showing Progen's

budgets or other financial planning documents for the Quevedo and Salitral contracts, including budgets detailing how CELEC's funds would be used, and financial reports showing each related expenditure. Exhibit R at 3. Those records bear on how Progen planned to use the total $150 million, and actually used the nearly $110 million CELEC paid, including CELEC's allegation that Progen fraudulently transferred the funds to related individuals and entities. D.E. 128 at 36, 39. Manning and Progen object to the request as improper and burdensome, then lists ***eight*** Bates numbered documents but indicates the "list is not exhaustive." Ex. R at 5. That non-exhaustive list does not identify all responsive documents. Manning and Progen should provide a complete description of how CELEC's funds were intended to be used or were actually used, and should provide Bates numbered identification, or state that no additional responsive documents exist.

- **Interrogatory No. 3:** This interrogatory asks Manning and Progen to describe the nature of Progen's relationship with entities to which Progen transferred CELEC's funds – Five Star Leasing, RayK Holdings, Swift Funding and UHOH LLC – and identify all supporting documents by Bates number. *Id.* at 7. This information bears on the flow of CELEC's funds to Progen-affiliated parties. D.E. 128 at 41-48.
    - **Five Star Leasing.** Manning and Progen state that Progen purchased "some" generators from this company and provides a non-exhaustive list of documents identified by Bates number. Ex. R at 7-8. Manning and Progen have since clarified that Five Star sold Progen five units for the Quevedo

Contract but fails to identify by serial number each unit or to identify all responsive documents by Bates number (and refuses to amend the interrogatory to include this additional information). Ex. R at 8; *see* Exhibit O (email correspondence). Manning and Progen must provide a complete response identifying each unit, identifying all responsive supporting documents by Bates number, and answering the interrogatory in full.

- **RayK Holdings.** Manning and Progen states that RayK financed Progen's purchase of engines but does not identify which engines, or for which contract or anything related to Progen's payments to RayK. Ex. R at 8; Ex. O. Manning and Progen should identify with serial numbers of each engine that RayK financed, the contract those engines relate to and the related payments, and the supporting documents by Bates number.
- **Swift Funding.** Manning and Progen refuse to respond whether Swift Funding had any connection with the contracts or to explain why Swift Funding received CELEC's funds, and simply describes Swift Funding as a bridge-financing company. Ex. R at 9. They should describe what relationship (if any) this company and its financing had with the contracts at issue and identify all supporting documents by Bates number.
- **UHOH LLC.** Manning and Progen state that UHOH, LLC sold real property to MyBox, Inc., with MyBox later obtaining a loan secured by a mortgage on the property (admitting that the loan proceeds flowed to Progen). Ex. R at 9. CELEC believes its funds were used for this purchase.

Manning and Progen clarified that skid work and other metal fabrication were supposedly produced at the UHOH building but represented they did not know what bank made the loan to MyBox and that the interrogatory does not ask for the bank's identity. Manning and Progen have not identified by Bates number the documents supporting the loan and transfer of proceeds, or fully explained the amounts, payments, and connection to the contracts. They should provide that information and identify the supporting documents.

- **Interrogatory No. 4:** This interrogatory asks Manning and Progen to describe how each expenditure on the Chase and American Express cards reflected in Progen's Regions Bank account records was connected to the Quevedo and Salitral contracts. *Id.* at 9-10. The card expenditures bear directly on CELEC's allegation that Progen used CELEC's funds to bankroll Progen-related individuals and other defendants. D.E. 128 at 41-48. During the meet and confer, CELEC clarified that the interrogatory refers to the Chase and American Express accounts paid through the Regions Bank account. Manning and Progen stood on their objection that the interrogatory is overly burdensome and answered only that he incurred no contract-related expenditures on his personal cards, while failing to state whether he considers the American Express and Chase cards at issue his personal credit cards. Manning and Progen should clearly state whether the Chase and American Express card that were being funded with the Regions Bank account were used for contract-related expenditures or for personal expenses.

- **Interrogatories Nos. 5 and 6**: These interrogatories inquire about cash withdrawals from Progen's Regions Bank account and about payments to purchase personal real estate property for Defendant Andrew Williamson. Ex. R at 10-12. The responses falsely disclaim any knowledge. The Regions Bank records show an October 3, 2024 withdrawal for $3.1 million. *See* Ex. J at 263. And a few days earlier, on September 30, 2024, Progen sent $30,000 to the escrow agent for the purchase of the Canterwood property. *Id.* at 27. Progen and Manning should be compelled to respond without evading how Progen used CELEC's funds for large withdrawals and to bankroll lavish personal expenses for Progen's principals.
- **Interrogatory No. 7:** This interrogatory asks Manning and Progen to identify, by Bates number, all documents and communications showing or reflecting testing of any generators subject to the contracts. Ex. R at 12. Testing records are relevant to CELEC's allegation that Progen procured old, used, non-functional generators and repainted them to pass as new. D.E. 128 at 15-18, 39. Manning and Progen object to the interrogatory as improper, unduly burdensome, vague and overbroad. Ex. R at 12-13. They stated that Progen conducted "megger testing" on alternators and later identified a handful of Bates numbered documents. *Id.*; Ex. O. Manning and Progen should identify *all* documents reflecting testing or state no others exist.
- **Interrogatories Nos. 8 and 9:** These interrogatories ask Manning and Progen to identify, by Bates number, all documents that show the companies that sold each of the engines for the generators in the Salitral and Quevedo contracts, including

payments of those generators. Ex. R at 13, 14. Manning and Progen's response lists some companies and identifies a handful of documents. *Id.* at 14. The source, condition, and cost of the engines bear on CELEC's allegations concerning the age and condition of the generators. *See* D.E. 128 at 15. With Manning and Progen's deficient answer, CELEC cannot determine which vendor supplied the engine for each generator, which contract the generator was intended for, or the purchase price and payments. Moreover, the quantities reflected in the slim Bates-numbered materials Manning and Progen identified total 89 engines—well above the 49 generators required by the two contracts—and Manning has not explained what that total represents or reconciled it with the contract quantities. Manning and Progen's response also conspicuously omit any reference to Wattstock (a company owned by Jay Manning), which appears to have been the source of at least some generators. *See* Exhibit S; *see also* WattStock (Nov. 2, 2026, 10:03 PM, https://www.wattstock.com/our-team. They should identify the supplier of each engine, the contract for which that unit was intended, price, payment, and supporting Bates-numbered documents.

- **Interrogatory No 10:** This interrogatory asks Manning and Progen to describe in detail and identify with Bates numbers the documents showing how Progen was supposedly going to deliver to CELEC generators running on heavy fuel oil, as Progen had promised. Ex. R at 15. Because Progen promised to manufacture and deliver new generators running on heavy fuel oil, CELEC was never aware that Progen was "converting" old and used generators to run on heavy fuel. Tellingly,

the interrogatory response is silent on describing (let alone identifying by Bates) any documents or communications through which Progen disclosed to CELEC that it would "convert" old and used generators to run on the fuel that CELEC required. Manning and Progen should describe with specificity how Progen was going to "convert" old and used generators to run on heavy fuel, how and when this was disclosed to CELEC (or confirm it was never disclosed), and identify specific Bates for this response.

***Progen***. Progen's responses to interrogatories 1(B)–(D) of CELEC's Third Set of Interrogatories, Exhibit T, are likewise evasive or incomplete. This interrogatory asks Progen to identify, by specific Bates number, all documents showing a business relationship with the named entities—Lakeland Electric, Megawatt Power Holdings, Pacific Gas & Electric and Discovery Silver, or to state that no responsive documents exist as to that entity. Ex. T at 4. These are the entities that Progen falsely stated it had performed similar projects for in the contract bids. *See* D.E. 128 at 38-39. Whether any document substantiates the claimed relationships, or whether Progen must concede none exists, goes to the heart of that allegation. Progen objects that the interrogatory is improper, overbroad and states that each subpart counts against the interrogatory limit. Ex. T. at 4-5. Progen then provides a narrative history for these entities but does not identify documents by Bates number or state that none exist. *Id.* at 5-6. That omission matters because the record indicates the claimed experience never existed and the experience certificates were fabricated.

Karla Saud testified as much during her deposition. *See* Exhibit U.[4] She testified that Progen "never ever finished a single project," and that all of the experience materials, "including the . . . photos of the plants[,] were sent by" Progen. Ex. U 136:7-9, 133:15-17. When asked whether "John Manning instructed an Ecuadorian lawyer called Alberto Paredes to prepare those [forged] documents, those certificates," she answered, "Yes, correct." *Id.* at 146:18-24. She attributed the preparation and submission of the forged documents to attorney Paredes and Manning, testifying, "Alberto Paredes instructed by and with the consent of John Manning, ended up doing all of that . . . All the papers were submitted by the attorney and himself." *Id.* at 153:1-4.

This has also been corroborated through WhatsApp chats produced by Progen. For example, Progen produced the chat transmitting Megawatt, PG&E, Lakeland Electric and Discovery Silver forged certificates, Exhibit V, as well as the chat in which John Manning acknowledged the forgery of these certificates and authorized Karla Saud to submit them Exhibit W. If Progen has documents showing a genuine relationship with these entities, it must identify them by Bates number, and if none exist, it must say so.

Lastly, Progen's overarching objection that these interrogatories are a document identification and production request improperly embedded in an interrogatory request is misplaced. Progen's objection conflates identification – proper under Rule 33 – with production of business records under Rule 34. In *Developmental Techs.*, *LLC* the Court

[4] Defendant Astrobryxa initially designated the transcript of Karla Saud as Confidential; however, during a meet and confer phone conversation on October 30, 2026, counsel for Astrobryxa stated Astrobryxa did not oppose to the transcript being filed on the public docket as an exhibit to this Motion.

ordered responses to interrogatories that expressly demanded the opponent "identify by Bates number all documents" reflecting the matters at issue and "specifically identify all facts, including identification by Bates number of all documents" supporting its claims and contentions. *Developmental Techs., LLC v. Valmont Indus., Inc.*, No. 8:14-CV-2796-T-35JSS, 2016 WL 1271566, at * 4 (M.D. Fla. 2016). *See also S. Miami Holdings, LLC v. F.D.I.C.*, No. 10-22032-CIV, 2011 WL 1212252, at *1 (S.D. Fla. Mar. 31, 2011) (ordering the responding party to "provide the Bates numbers" to complete its identification of all documents supporting its damages contentions).

***Andrew Williamson and Two Lions Holdings LLC.*** Due to Andrew Williamson's aforementioned health issues, he has refused to provide a response to CELEC's Second Set of Interrogatories addressed to him and to Two Lions Holdings, LLC (which he controls), and he has refused to provide a date certain by which he will respond. *See* Exhibit X; Exhibit Y; Exhibit Z. A defendant cannot indefinitely delay discovery due to health concerns. The Court should order Williamson and Two Lions to answer CELEC's interrogatories in full by a date certain.

Accordingly, CELEC respectfully requests the Court enter an Order (i) compelling John Manning to provide complete answers to Interrogatories Nos. 1, 3(a), (c), (e), and (g), 4, 7, 8, 9 and 10, (ii) compelling Progen to provide complete answers to Interrogatories Nos. 1(B), (C), and (D), and (iii) compelling Andrew Williamson and Two Lions to respond to the interrogatories directed to them.

**4. The Court should compel the Progen Defendants to produce documents responsive to CELEC's requests for production.**

The Progen Defendants have not produced the categories of documents identified below that are responsive to CELEC's First Request for Production ("RFP") (consolidated RFPs to Progen Defendants attached hereto as Exhibit AA). To the extent the Progen Defendants contend they have produced these documents, they have refused to identify them by bates labels. If the Progen Defendants have determined no responsive documents exist, they have failed to amend their discovery responses to say so.

The table below identifies each category of documents that is missing from the Progen Defendants' productions, the RFP or RFPs to which it is responsive, and why the documents are relevant to CELEC's claims:

| **Category of Documents** | **RFP No Responsive to Category of Documents** | **Relevance and Need for Documents** |
|---|---|---|
| 1. Documents showing any testing of any kind performed on the generators. | RFPs 1, 14, 15, 19, 20 — *see, e.g.*, RFP 1: "All documents relating to the . . . inspection, testing, acceptance, operation, maintenance, and performance of generators"; *see also* RFP 19: "All documents relating to the inspection, testing, evaluation, or verification of generators supplied or intended to be supplied under the Quevedo and Salitral contracts." (Ex. AA at 8, 11-12) | Progen represented it would manufacture, deliver and install new generators meeting specified requirements, but the Progen's units were used and non-functional. *See, e.g.*, D.E. 190 Ex. B at 190:13 – 191:7, 291:5-12, 293:15-25; D.E. 167, Ex. C at 89:2-10, 93:11-18, 123:6-18, 127:6-9,156:14-23, 160:19-24, 261:7-13.<br><br>Testing records are needed to show that Progen never intended to deliver new and functional generators. |
| 2. Documents concerning Progen's alleged disclosure to CELEC that the generator sets were to be new surplus or zero-hour generator sets. | RFPs 1, 2, 3, 29— *see, e.g.*, RFP No. 1: documents relating to the "procurement, purchase, manufacture … inspection, testing [and] acceptance" of generators for the contracts;<br>RFP 29: "All documents relating to the engines installed in generators supplied or | Despite dozens of emails, text messages and other documents showing that Progen represented it would manufacture and deliver new generators, Progen's defense is that CELEC agreed to pay $150 million for old and used generators that Progen would refurbish to be "new surplus" |

| Category of Documents | RFP No Responsive to Category of Documents | Relevance and Need for Documents |
|---|---|---|
| | intended to be supplied . . . and documents regarding the source, type, or condition of the engines" (Ex. AA at 8, 14) | or "zero-hour." *See, e.g.*, D.E. 190 Ex. B at 184:4-10, 190:22 – 191:13, 291:5-12, 293:20-24, 178:4-20, 195:9-23.<br><br>These documents are needed to test Progen's defense. |
| 3. Documents, emails and text messages concerning Progen's alleged disclosure to CELEC of the budget for the Contracts. | RFPs 11, 27 — *see, e.g.*, RFP 11: "All documents provided to CELEC or any other entity in connection with the bidding, solicitation, or award" of the contracts"; RFP 27: documents provided "in connection with obtaining, bidding for, or being awarded" the contracts. (Ex. AA at 10, 14)<br><br>RFPs 6, 10 — *see, e.g.*, RFP 6: communications relating to "payments, wire transfers, or any financial transactions made or received in connection with" the contracts; RFP 10: communications relating to the "use, disposition, or current location of funds received under the contracts" (Ex. AA at 9, 10) | Defendant John Manning testified that Progen disclosed to CELEC how Progen would spend CELEC's $150 million in refurbishing old and used generators (instead of manufacturing and installing new generators). D.E. 190 Ex. B at 184:4-16, 178:4-20, 195:24– 196:16, 198:22 – 199:18.<br><br>These documents are needed to test Mr. Manning's testimony and to show that the Progen Defendants misappropriated and/or embezzled CELEC's funds. *See, e.g.*, D.E. 190 Ex. B at 204:20-24, 208:16-24. |
| 4. Emails and text messages regarding budgets, details, or analysis prepared by Astrobryxa (and a project subcontractor, FYI) describing the intended use of the $40 million that Progen would pay them. | RFPs 6, 10, 26 — *see, e.g.*, RFP 6: communications relating to "payments, wire transfers, or any financial transactions made or received in connection with" the contracts; RFP 10: communications "with CELEC or any other entity in connection with the bidding, solicitation, or award" of the contracts; RFP 26: communications concerning "the involvement, role, or activities of subcontractors, affiliates, or designated project | Defendant John Manning testified that Defendant Astrobryxa, Progen's subcontractor for building the power stations in Ecuador that would host the generators, provided detailed budgets to Progen showing how Astrobryxa (and its subcontractors) would spend the $40 million that Progen was going to pay them from CELEC's $150 million. D.E. 190 Ex. B at 198:3-5, 210:16-211:9, 212:10-15, 211:21- |

| **Category of Documents** | **RFP No Responsive to Category of Documents** | **Relevance and Need for Documents** |
|---|---|---|
| | contractors, including Astrobryxa S.A." (Ex. AA at 9-10, 13) | 212:4. 239:11-24, 123:24–124:1.<br><br>These documents are needed to test Mr. Manning's testimony and to show that the Progen Defendants misappropriated and/or embezzled CELEC's funds. |
| 5. Emails and text messages regarding H&S's details or itemizations for spending $8 million of CELEC's funds. | RFPs 6, 10, 26 — *see, e.g.*, RFP 10: "All communications . . . relating to the use, disposition, or current location of funds received under the contracts, including . . . records showing how the funds were allocated or spent"; RFP 26 applies if the communications concern H&S's role or activities as an entity involved in the projects. (Ex. AA at 10-11, 13) | Progen wired $8 million of the funds it received from CELEC to Defendant H&S, an affiliate of Astrobryxa. D.E. 190 Ex. B at 236:21 –238:15, 129:24 – 130:13, 238:3-5, 239:11-16. Defendant John Manning testified that he believed H&S provided budgets to Progen showing how it would spend the funds it received from Progen. D.E. 190 Ex. B at 237:11-20, 239:4 – 240:19.<br><br>These documents are needed to test Mr. Manning's testimony and to show that the Progen Defendants misappropriated and/or embezzled CELEC's funds. |
| 6. Emails and text messages regarding subcontractor bidding or selection processes run by Karla Saud, Jose Manrique or Astrobryxa and the companies selected. | RFPs 13, 26, 28 — *see, e.g.*, RFP 13: "[communications] with subcontractors, affiliates, or third parties relating to experience documentation, certifications, or qualifications submitted or relied upon for the award"; RFP No. 26 covers communications concerning "the involvement, role, or activities of subcontractors, affiliates, or designated project contractors"; RFP 28: "relating to the preparation, submission, or use of any documents provided to CELEC or any other entity in | CELEC alleges that Astrobryxa, had no experience building power stations, and notwithstanding, Progen agreed to pay them $40 million. D.E. 190 Ex. B at 210:16 – 211:9, 239:17-24.<br><br>To try to defend Progen's decision to provide $40 million of CELEC's funds to a company with zero experience, Defendant John Manning testified that Astrobryxa would rely on subcontractors and that it ran professional processes to select such subcontractors. D.E. 190 |

| Category of Documents | RFP No Responsive to Category of Documents | Relevance and Need for Documents |
|---|---|---|
| | connection with obtaining, bidding for" (Ex. AA at 10-11, 13-14) | Ex. B at 272:9-24, 273:3-10, 273:18 – 274:7.<br><br>These documents are necessary to test Mr. Manning's testimony and to show that Progen never intended to deliver and install any generators, which is why it chose a company with zero relevant experience as its subcontractor. |
| 7. Documents, emails and text messages regarding John Manning or his associated companies building the Lakeland Electric facility. | RFPs 12, 13, 27, 28 — *see, e.g.*, RFP 13 third-party communications relating to "experience documentation, certifications, or qualifications submitted or relied upon for the award"; RFP 27: "documents provided to CELEC . . . in connection with obtaining, bidding for, or being awarded the . . . contracts, including . . . experience certifications." (Ex. AA at 10-11, 14) | As John Manning's text messages with Karla Saud confirm, the Defendants forged a document to falsely show that Progen had built a powerplant for Lakeland. Ex. V and Ex. W; D.E. 190 Ex. B at 353:23 – 354:18. The Defendants provided that document to CELEC to fraudulently induce CELEC into believe they had the requisite experience. D.E. 190 Ex. B at 346:17-25. The City of Lakeland has confirmed Progen has done no work for Lakeland. *See* D.E. 128, Ex. K.<br><br>John Manning admitted the document was a forgery but testified that Defendant Genertek had in fact built a powerplant for Lakeland Electric. D.E. 190 Ex. B at 354:5-10, 323:4-14, 324:1-13.<br><br>These documents are necessary to test Mr. Manning's testimony and to show that Progen lied to CELEC about its experience. |
| 8. Email correspondence and text messages with the "lender" reportedly | RFPs 9, 10 — *see, e.g.*, RFP 9: "documents relating to the use, disposition, or current location of funds received under the | Some of the documents in Progen's productions reference a "lender" that was supposedly providing financing to Progen |

| Category of Documents | RFP No Responsive to Category of Documents | Relevance and Need for Documents |
|---|---|---|
| considering financing the projects. | contracts"; RFP 6: communications "relating to payments, wire transfers, or any financial transactions"; RFP 10 covers communications on those same subjects (Ex. AA at 10) | in connection with the CELEC projects. *See, e.g.*, Exhibit AB; Exhibit AC.[5]<br><br>Progen, however, never disclosed to CELEC the existence of a lender or anyone else providing financing to Progen, especially since CELEC was paying the staggering sum of $150 million for Progen to manufacture and install new generators.<br><br>These documents are relevant to establish that Progen misrepresented to CELEC how Progen intended to use CELEC's funds. |
| 9. Email correspondence and text messages with Lakeland Electric, PG&E, and Discovery Silver. | RFPs 12, 13, 28 — *see, e.g.*, RFP 13: communications with "third parties relating to experience documentation, certifications, or qualifications submitted or relied upon for the award"; RFP 12: "experience certifications . . . and any documents alleged or determined to be forged or misrepresented" (Ex. AA at 10, 11, 14) | Progen falsely represented to CELEC that it had experience manufacturing and installing new generators in projects with Lakeland, PG&E and Discovery Silver. D.E. 128 ¶¶ 30, 38–39, 68, 72.<br><br>These documents are relevant to show that Progen lied to CELEC about its experience. |
| 10. The PowerPoint presentation, brochures,and/or other materials delivered to CELEC in the April and May 2024 meetings. | RFPs 1, 11, 27 — *see, e.g.*, RFP 11: "All documents provided to CELEC . . . in connection with the bidding, solicitation, or award of the Quevedo or Salitral contracts"; RFP 27: documents provided "in connection with obtaining, bidding for, or being awarded" (Ex. AA at 8, 10, 14) | Defendant John Manning and co-conspirator Karla Saud (owner of Defendant Astrobryxa) testified to meetings in April and May 2024 where Progen made representations to Ecuadorian officials regarding its manufacturing capabilities and experience. D.E. 190 Ex. B at 161:1-25, 162:1-8, 161:22-25, 162:18-22, 115:1-8, 107:6-12, 130:17-22, 133:18-24, 190:16-21; Ex. U at 130:5-23. |

[5] CELEC will move to file these exhibits under seal as Progen has designated these documents as Confidential.

| Category of Documents | RFP No Responsive to Category of Documents | Relevance and Need for Documents |
|---|---|---|
| | | The materials that Progen delivered to officials during those meetings are relevant to show that Progen lied about its capabilities and experience. |

Progen's objection that the disputed categories fall outside CELEC's RFPs is unfounded. The RFPs expressly seek documents and communications concerning generator procurement, inspection, testing, and performance; bidding and award; contract payments and the use or disposition of CELEC's funds; and project subcontractors' and affiliates' roles. The disputed categories fall within the RFP when tied to those categories of documents, as the chart explains.

Progen also contends that its production includes responsive documents but refuses to identify where documents for the disputed categories appear. As discussed above, Progen has likewise failed to provide full and complete interrogatory answers identifying responsive documents by Bates number. Progen cannot refuse that identification in its interrogatory answers while also leaving CELEC to guess whether the disputed categories were produced. If Progen contends it produced the documents, it should identify the Bates numbers. If it has not produced responsive documents, it should produce them; and if none exist, it should say so expressly.

The requested discovery is also proportional to the needs of this case. *See* Fed. R. Civ. P. 26(b)(1). The dispute concerns substantial contract payments and allegations that funds were transferred among the defendants and other entities. The records sought are

important to determining what Progen represented, what equipment it obtained and prepared, and how the contract funds were used. CELEC raised these deficiencies with Progen and sought to resolve them without court intervention. Because the documents remain unproduced, CELEC respectfully requests the Court to enter an order compelling Progen to complete its production.

## CONCLUSION

WHEREFORE, CELEC respectfully requests that the Court enter an Order (i) compelling Progen to provide deposition dates for Shane Lawlor, Garrett Kyle and Andrew Williamson; (ii) compelling Progen to unredact key documents; (iii) compelling John Manning, Progen; to provide full and complete responses to CELEC's interrogatories; (iv) Andrew Williamson, and Two Lions to respond to the Second Set of Interrogatories; and (iv) compelling Progen to produce documents responsive to CELEC's requests for production of documents; and granting such other and further relief as the Court deems just and proper.

## Certificate of Conferral

Undersigned counsel certifies that on October 7 and 19 and November 2 and 3, 2026, counsel for CELEC conferred with the counsel for the Progen Defendants regarding the relief sought herein, and the Progen Defendants oppose the relief sought herein.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 3, 2026, I electronically filed the foregoing **Plaintiff's Motion to Compel Deposition Dates and Production of Third-Party Discovery** through the Court's CM/ECF system which will send an electronic copy to all counsel of record.

By: */s/ Courtney M. Keller*
Courtney M. Keller, Esquire
Florida Bar No. 28668
Meredith P. Yates, Esquire
Florida Bar No. 1058373

**GREENBERG TRAURIG, P.A.**
450 South Orange Avenue, Suite 650
Orlando, Florida 32801
Telephone: (407) 420-1000
Facsimile: (407) 420-5909
Email: kellerc@gtlaw.com
Meredith.yates@gtlaw.com
Nef-iws@gtlaw.com
ORLLitDock@gtlaw.com

Daniel Pulecio-Beck, Esquire
(admitted *pro hac vice*)
Michael Pusateri, Esquire
(admitted *pro hac vice*)

**GREENBERG TRAURIG, P.A.**
2101 L Street, N.W., Suite 1000
Washington, D.C. 20037
Telephone: (202) 331-3117
Email: pulecioboekd@gtlaw.com
pusaterim@gtlaw.com

*Counsel for Plaintiff*